1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

CURTIS LEE ERVIN,

          Petitioner,

    v.

RON DAVIS, Warden, California State
Prison at San Quentin,

          Respondent.

Case No. 00-CV-01228-LHK

**ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT
ON CLAIMS 14–15 AND 17–18**

Re: Dkt. No. 213

## I.  INTRODUCTION

       Respondent filed a motion for summary judgment with respect to all 37 claims contained in Petitioner's amended petition for a writ of habeas corpus.  Petitioner opposes Respondent's motion and requests an evidentiary hearing on 15 claims.  This Order addresses Petitioner's claims 14–15 and 17–18.  Petitioner does not request an evidentiary hearing as to these four claims.  For the reasons discussed below, Respondent's motion with respect to these claims is GRA NTED. The remainder of Petitioner's claims shall be addressed in subsequent Orders.

## II.  BACKGROUND

       The background and procedural history of this case are discussed in detail in this Court's Order of December 11, 2015, (ECF Doc. No. 271) and shall not be repeated herein except for the

United States District Court
Northern District of California

1  recapitulation below.

2      Petitioner was convicted in the Superior Court of Alameda County of first degree murder

3  with the special circumstance finding of murder for financial gain for the November 7, 1986

4  killing of Carlene McDonald.  Evidence at Petitioner's trial established that Robert McDonald, the

5  victim's former husband, hired Petitioner and Arestes Robinson, to kill Carlene for $2,500.00.

6  Petitioner's acquaintance, Armond Jack, drove Petitioner and Robinson to the victim's apartment

7  in El Sobrante on the night of the murder.  Petitioner and Robinson then abducted Carlene.  Using

8  Carlene's vehicle, Petitioner and Robinson took Carlene to Tilden Park and stabbed Carlene to

9  death and left her body.  The men were armed with a BB gun that looked like a .45 caliber pistol

10  as well as the knife used to kill Carlene.  A patrol officer found Carlene's body the next afternoon.

11      Petitioner admitted various incriminating aspects of the crime to David Willis, Zane

12  Sinnott, Gwyn Willis, and the investigating officer, Sergeant Dana Weaver.  According to these

13  witnesses, Petitioner admitted that he and Robinson confronted Carlene, pointed the BB gun at

14  her, forced her into her car and drove her to Tilden Park, where Petitioner stabbed her to death

15  while Robinson held her.  The prosecutor also introduced the prior testimony of Robinson's

16  girlfriend, Gail Johnson, who stated that Robinson admitted participating in the murder.

17      Robinson, McDonald and Petitioner were tried together.  Petitioner made no claims of

18  innocence, but sought to impeach or discredit the testimony of prosecution witnesses Jack, Sinnott

19  and David Willis.  Additionally, Dr. Fred Rosenthal, a psychiatrist, testified that cocaine

20  consumption may have impaired Petitioner's thought processes.

21      During the penalty phase, the prosecution introduced evidence of Petitioner's prior bank

22  robbery conviction and some minor jail disciplinary problems.  The prosecutor also introduced

23  evidence of uncharged assaults involving Robinson as perpetrator.  Petitioner introduced

24  mitigating evidence regarding his character, employment, family, drug use, religious involvement

25  and musical skills.  Codefendants McDonald and Robinson also introduced mitigating evidence.

26      The jury returned death verdicts for Petitioner and McDonald, but chose life imprisonment

27  without parole for Robinson.

28

Case No. 00-CV-01228-LHK
ORDER GRANTING SUMMARY JUDGMENT ON CLAIMS 14–15 AND 17–18

United States District Court
Northern District of California

1    **III.  PROCEDURAL HISTORY**

2        On January 6, 2000, the California Supreme Court affirmed Petitioner's conviction and

3    sentence.  *People v. Ervin*, 22 Cal. 4th 48, 66 (2000).  On November 12, 2002, Petitioner filed a

4    petition for a writ of habeas corpus with this Court.  (ECF Doc. No. 32)  The Court stayed the

5    federal habeas proceedings so that Petitioner could return to state court to exhaust his claims.

6    (ECF Doc. No. 46)

7        On September 7, 2007, following the completion of exhaustion proceedings, Petitioner

8    filed an amended petition for a writ of habeas corpus raising thirty-seven claims.  (ECF Doc. No.

9    97)  On March 7, 2008, Respondent filed a response to the amended petition.  (ECF Doc. No. 110)

10   Petitioner filed a traverse on November 13, 2008.  (ECF Doc. No. 133)

11       After the completion of discovery proceedings, Respondent filed a motion for summary

12   judgment on February 14, 2012.  (ECF Doc. No. 213)  On January 8, 2013, Petitioner filed an

13   opposition to respondent's motion for summary judgment and a request for an evidentiary hearing.

14   (ECF Doc. No. 249)  Respondent filed a reply on May 10, 2013.  (ECF Doc. No. 259)  Petitioner

15   filed a reply to Respondent's opposition to Petitioner's request for an evidentiary hearing on

16   August 16, 2013.  (ECF Doc. No. 266)

17       The case was transferred to the undersigned judge on January 7, 2015.  (ECF Doc. No.

18   268)  On December 11, 2015, this Court granted summary judgment on claims 1–5 and requested

19   the submission of affidavits in relation to claim 6.  (ECF Doc. No. 271)

20   **IV.  STANDARD OF REVIEW**

21       **A.   THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT ("AEDPA")**

22       Because Petitioner filed his original petition in 2002, well after AEDPA's effective date of

23   April 24, 1996, the standards of AEDPA apply to this case.  *See Woodford v. Garceau*, 538 U.S.

24   202, 206 (2003).  Pursuant to AEDPA, a district court may not grant a writ of habeas corpus with

25   respect to any claim that was adjudicated on the merits in state court unless the state court's

26   adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

27   unreasonable application of, clearly established Federal law, as determined by the Supreme Court

28

3

of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In determining whether a petitioner is entitled to relief under this provision, a federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

The "contrary to" and "unreasonable application" prongs of section 2254(d)(1) have separate and distinct meanings. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000). A state court's decision is "contrary to" clearly established U.S. Supreme Court law if that decision fails to apply the correct controlling authority or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result. *Id.* at 412–13. A decision is an "unreasonable application" of U.S. Supreme Court law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Importantly, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). A state court's determination that a claim lacks merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Holdings of the U.S. Supreme Court at the time of the state court decision are the only definitive source of clearly established federal law under section 2254(d)(1). *See Williams*, 529 U.S. at 412; *see also Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam) ("AEDPA permits habeas relief only if a state court's decision is 'contrary to, or involved an unreasonable application of, clearly established Federal law' as determined by this Court, not by the courts of appeals."). While a federal court may "look to circuit precedent to ascertain whether [the circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam), "[c]ircuit precedent cannot refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced," *Lopez*, 135 S. Ct. at 4 (internal quotation marks omitted).

Case No. 00-CV-01228-LHK
ORDER GRANTING SUMMARY JUDGMENT ON CLAIMS 14–15 AND 17–18

United States District Court
Northern District of California

United States District Court
Northern District of California

1    To find under section 2254(d)(2) that a state court's decision was based on "an

2  unreasonable determination of the facts," a federal court "must be convinced that an appellate

3  panel, applying the normal standards of appellate review, could not reasonably conclude that the

4  finding is supported by the record before the state court." *Hurles v. Ryan*, 752 F.3d 768, 778 (9th

5  Cir. 2014) (internal quotation marks omitted), *cert. denied*, 135 S. Ct. 710 (2014).  In other words,

6  "a state-court factual determination is not unreasonable merely because the federal habeas court

7  would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15

8  (2013) (internal quotation marks omitted).  That said, "where the state courts plainly

9  misapprehend or misstate the record in making their findings, and the misapprehension goes to a

10  material factual issue that is central to petitioner's claim, that misapprehension can fatally

11  undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor*

12  *v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

13    In the event that a federal court "determine[s], considering only the evidence before the

14  state court, that the adjudication of a claim on the merits resulted in a decision contrary to or

15  involving an unreasonable application of clearly established federal law, or that the state court's

16  decision was based on an unreasonable determination of the facts," the federal court evaluates the

17  petitioner's constitutional claim "de novo." *Hurles*, 752 F.3d at 778.  If constitutional error is

18  found, however, habeas relief is warranted only if that error "had substantial and injurious effect

19  or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

20  Under this standard, petitioners "may obtain plenary review of their constitutional claims, but they

21  are not entitled to habeas relief based on trial error unless they can establish that it resulted in

22  'actual prejudice.'" *Brecht*, 507 U.S. at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449

23  (1986)); *accord Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015).

24    **B.  SUMMARY JUDGMENT**

25    Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

26  inferences in the light most favorable to the nonmoving party, there are no genuine disputes of

27  material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see*

28

5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Bald assertions that genuine issues of material fact exist," however, "are insufficient." *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

## V. DISCUSSION

### A. Claim 14

Petitioner alleges that the trial court violated his constitutional rights by failing to sever his penalty phase trial from that of co-defendants McDonald and Robinson. Petitioner argues that the mitigating evidence offered in support of his co-defendants eclipsed evidence favorable to him.

After the penalty phase commenced, but before any mitigating evidence was presented, Petitioner moved to sever his case from McDonald's because his role in Carlene's murder was more direct than McDonald's. The trial court denied this motion. After evidence of McDonald's participation in various activities involving sports, music, and religion was introduced, Petitioner, joined by Robinson, renewed his severance motion. The trial court denied this motion and found that instructions requiring separate penalty determinations should suffice to eliminate any possible prejudice resulting from the joint trial. Petitioner now argues that mitigating evidence of good character and social standing introduced in support of McDonald eclipsed evidence favorable to him. He alleges that McDonald was viewed by the jury as an accomplice, while Petitioner was characterized as a principal whose culpability was greater than McDonald's. Petitioner further

Case No. 00-CV-01228-LHK
ORDER GRANTING SUMMARY JUDGMENT ON CLAIMS 14–15 AND 17–18

1    argues that the fact that Robinson was given life without parole despite copious evidence of a

2    violent past demonstrates that in comparison, the jury viewed Petitioner to be more culpable.

3    Respondent contends that the California Supreme Court reasonably denied Petitioner's claim.

4         The California Supreme Court denied petitioner's claim on direct appeal as follows:

> Defendant contends that the court's failure to sever prejudiced his
> right to the jury's "individualized consideration" of his character and
> record in deciding the penalty issue. He argues that under the
> evidence presented at the joint trial, McDonald was arguably simply
> an "accomplice" whose culpability in the jury's eyes was probably
> greatly overshadowed by defendant's role as a cold-blooded hired
> killer. According to defendant, under the evidence, the jury could
> only compare him unfavorably to McDonald. We note, of course,
> that the supposed "comparison" failed to benefit McDonald, who
> also received a death verdict.
>
> Similarly, defendant observes that the jury evidently found
> Robinson less culpable than it found him, a conclusion supported by
> its verdict of life imprisonment without possibility of parole for
> Robinson. Defendant opines that, despite Robinson's "record of
> violence," the jury focused on the facts that defendant planned the
> murder and Robinson was brought into the scheme at the last
> minute. Defendant speculates that, had the trials been severed, the
> jury would have been less likely to compare his culpability with that
> of his codefendants. Defendant suggests the trial court had
> reasonable alternatives to a joint trial, including trying his case first
> so that his jury would not be "tainted" by the mitigating evidence
> introduced on behalf of the other defendants.
>
> We need not address the Attorney General's argument that
> defendant's motion to sever the penalty trial was untimely, as the
> court clearly acted within its broad discretion in denying the motion
> on the merits. As we previously observed (ante, at p. 69) in
> reviewing defendant's similar guilt phase contention, in light of the
> statutory preference for joint trials (see § 1098), severance remains
> largely within the trial court's discretion. No abuse appears here.
>
> We see nothing in the record suggesting the jury assigned undue
> culpability to defendant after hearing his codefendants' mitigating
> evidence. Defendant had ample opportunity to present, and did
> present, testimony and argument regarding his own good character
> and rehabilitation. The prosecutor made it clear to the jury that
> McDonald's role as "mastermind" of his ex-wife's murder fully
> justified imposing a death sentence on him. The fact that the jury
> returned a death verdict for McDonald shows it was not unduly
> impressed by the array of mitigating evidence introduced on his
> behalf. Robinson's lesser verdict can only reflect the jury's careful
> consideration of the respective culpability of the three codefendants.

*Ervin*, 22 Cal. 4th at 95-96.

Case No. 00-CV-01228-LHK
ORDER GRANTING SUMMARY JUDGMENT ON CLAIMS 14–15 AND 17–18

United States District Court
Northern District of California

1    On habeas, a federal court's review of a state court's denial of a severance motion is not

2    governed by state laws relating to severance.  *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir.

3    1997) ("We do not depend on the state law governing severance in state trials").  Nor is it

4    governed by federal rules addressing severance in federal trials.  *Id.*; *see Collins v. Runnels*, 603

5    F.3d 1127, 1131-32 (9th Cir. 2010) (finding that United States Supreme Court decisions

6    addressing severance under federal rules do not apply to analysis of whether joinder in state courts

7    was constitutional).  Rather, its inquiry is limited to the petitioner's right to a fair trial under the

8    United States Constitution.  *Grisby*, 130 F.3d at 370.  To prevail, a petitioner must demonstrate

9    that the state court's joinder or denial of his severance motion resulted in prejudice great enough to

10   render his trial fundamentally unfair.  *Id.*

11        Petitioner fails to establish that the trial court's joinder rendered his trial fundamentally

12   unfair.  Petitioner presented ample evidence regarding his good character and argued that twenty-

13   five mitigating factors applied to him.  Reporter's Transcript ("RT") 12602.  The prosecutor, in

14   turn, characterized McDonald as the "mastermind" of Carlene's murder, RT 12498, and as a

15   remorseless and despicable man whose friends and family, with the exception of his daughter,

16   failed to ask the jury to spare his life, RT 12502, 12506–08.  The fact that the jury returned a

17   verdict of death for McDonald shows that it was not impressed by the evidence of his civic

18   involvement and social stature.  Furthermore, the verdict of life without parole returned for

19   Robinson demonstrates that each of the defendants received individualized consideration from the

20   jury.  Nothing in the record demonstrates that Petitioner suffered prejudice as a result of the joint

21   penalty phase trial.

22        Petitioner fails to demonstrate that the California Supreme Court's denial of his claim was

23   unreasonable.  Summary judgment on claim 14 is granted.

24   **B.  Claim 15**

25        Petitioner alleges that the trial court violated his constitutional rights during the penalty

26   phase trial by allowing the prosecutor to introduce, in the form of rebuttal evidence, irrelevant and

27   prejudicial evidence that was used as a non-statutory aggravating factor by the prosecutor.  At the

28

Case No. 00-CV-01228-LHK
ORDER GRANTING SUMMARY JUDGMENT ON CLAIMS 14–15 AND 17–18

United States District Court
Northern District of California

penalty phase trial, Petitioner offered the testimony of an Alameda County jail deputy to the effect

that he had worked efficiently and satisfactorily as an inmate trustee for several months.  In

rebuttal, over the defense's objection, the trial court allowed the prosecution to introduce evidence

that Petitioner's jail privileges had been suspended for a 10-day period and that a jail deputy had

found a bag of a homemade alcoholic beverage ("pruno") behind Petitioner's bunk.  Petitioner

contends that because the evidence introduced by the prosecution in rebuttal was outside the scope

of whether he was a good worker, it was irrelevant and inadmissible, and prejudiced his mitigation

case because it was used by the prosecution to argue that Petitioner would be a disciplinary risk in

a prison setting in the future.  Respondent contends that the California Supreme Court reasonably

denied this claim.

On direct appeal, the California Supreme Court addressed this claim as follows:

> Defendant next contends the court erred in allowing the prosecutor
> to introduce, in the form of rebuttal evidence, defendant's 10-day
> suspension of his jail privileges in 1987 and his further infraction for
> possessing an unlawful alcoholic beverage in 1991. We find no
> prejudicial error.
>
> This evidence was admitted to rebut defendant's evidence showing
> his good conduct in county jail while awaiting trial. Defendant had
> elicited testimony from an Alameda County jail deputy to the effect
> that defendant worked efficiently and satisfactorily as an inmate
> trustee for several months. On rebuttal, and over defense objection,
> the court permitted the prosecution to introduce jail records
> indicating defendant suffered a 10-day suspension of jail privileges,
> without reference to the reason for the suspension.
>
> Additionally, the prosecution called a jail deputy to relate that he
> found a plastic bag containing "pruno" (a homemade alcoholic
> beverage) behind defendant's bunk. The prosecutor later briefly
> referred to this rebuttal evidence in arguing that defendant posed a
> possible disciplinary risk if a life sentence were imposed.
>
> Relying on the "satisfactory work performance" testimony he had
> elicited earlier, defense counsel in surrebuttal argument took the
> position that defendant was not a disciplinary problem. Defendant
> now asserts the jail record that memorialized his 10-day suspension
> was inadmissible hearsay offered to prove his underlying conduct.
> (See *People v. Wheeler* (1992) 4 Cal.4th 284, 298-300 [14
> Cal.Rptr.2d 418, 841 P.2d 938].) But, as we have seen, the record
> admitted into evidence here was silent regarding the cause for
> defendant's suspension. It was not admitted to show his underlying
> conduct but only that he suffered a suspension of privileges.

9

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Accordingly, the record was properly admitted as a business or
2    official record. (Evid. Code, §§ 1270, 1271; see *People v. Ray*
     (1996) 13 Cal.4th 313, 369 [52 Cal.Rptr.2d 296, 914 P.2d 846]
     (conc. opn. of George, C. J.).)

3    Defendant contends that neither the suspension record nor the
4    "pruno" incident was properly admitted to rebut evidence of his
     satisfactory work performance while in jail. (See *People v. Ramirez*
5    (1990) 50 Cal.3d 1158, 1193 [270 Cal.Rptr. 286, 791 P.2d 965];
     *People v. Rodriguez* (1986) 42 Cal.3d 730, 791-792, and fn. 24 [230
6    Cal.Rptr. 667, 726 P.2d 113].) We disagree. Defendant offered
     evidence of his work performance to convince the jury that he could
7    function satisfactorily as a prisoner. The prosecutor's rebuttal
     evidence was directly relevant to cast doubt on that premise.

8    *Ervin*, 22 Cal. 4th at 96–97.

9        A state court's evidentiary ruling is not subject to federal habeas review unless a specific

10   constitutional guarantee is violated or the error is of such magnitude that the result is a denial of

11   the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031

12   (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986).

13   The United States Supreme Court "has not yet made a clear ruling that admission of irrelevant or

14   overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of

15   the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's

16   admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit

17   precedent but not contrary to, or an unreasonable application of, clearly established United States

18   Supreme Court precedent  under § 2254(d)); *see also Zapien v. Martel*, 805 F.3d 862, 869 (9th

19   Cir. 2015) (because there is no United States Supreme Court case establishing the fundamental

20   unfairness of admitting multiple hearsay testimony, *Holley* bars any such claim on federal habeas

21   review).  Here, absent such "clearly established Federal law," the Court cannot conclude that the

22   state court's ruling was an "unreasonable application" thereof.  *See Carey v. Musladin*, 549 U.S.

23   70, 77 (2006) ("Given the lack of holdings from this Court . . . it cannot be said that the state court

24   'unreasonabl[y] appli[ed] clearly established Federal law.'").

25       Petitioner fails to demonstrate that the California Supreme Court's denial of his claim was

26   contrary to or an unreasonable application of clearly established federal law.  Summary judgment

27   on claim 15 is granted.

28
                                                                    10
     Case No. 00-CV-01228-LHK
     ORDER GRANTING SUMMARY JUDGMENT ON CLAIMS 14–15 AND 17–18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## C.  Claim 17

Petitioner alleges that the trial court violated his constitutional rights by failing to give special instructions permitting the jury to consider his history of alcohol and drug addiction, and whether this addiction contributed to his criminal conduct.  Respondent contends that the California Supreme Court reasonably denied this claim.

On direct appeal, the California Supreme Court addressed this claim as follows:

> Defendant contends the court erred in refusing to give special instructions permitting the penalty jury to consider his history of alcohol and drug addiction, and whether this addiction contributed to his criminal conduct. The court did instruct that the jury could consider the defendant's lack of capacity to appreciate the criminality of his conduct, or conform to the law, due to mental disease or defect or the effects of intoxication. (See § 190.3, factor (h).) Additionally, the court instructed the jury to consider "any other circumstance which extenuates the gravity of the crime, even though it is not a legal excuse for the crime, and any sympathetic or other aspect of the defendant's character or record that the defendant offers as a basis" for mitigation. (See § 190.3, factor (k); *People v. Easley* (1983) 34 Cal.3d 858, 878, fn. 10 [196 Cal.Rptr. 309, 671 P.2d 813].) Moreover, the court also stated that "[i]f a mitigating circumstance or an aspect of a defendant's background or his character ... arouses sympathy or compassion, such as to persuade you that death is not the appropriate penalty, you may act in response thereto ...."
>
> Defendant contends the instructions given were inadequate to permit the jury to consider his substance abuse disorder. We disagree. The court's instructions clearly told the jury it could consider any mitigating, sympathetic, or extenuating circumstance, including defendant's substance abuse disorder. (See *People v. Ray*, supra, 13 Cal.4th at p. 359 [factor (k) catchall provision broad enough to include defendant's mental condition].)

*Ervin*, 22 Cal. 4th at 97–98.

A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding.  *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).  The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment.  *See id.*

"The significance of the omission of . . . an instruction may be evaluated by comparison with the instructions that were given."  *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001)

Case No. 00-CV-01228-LHK
ORDER GRANTING SUMMARY JUDGMENT ON CLAIMS 14–15 AND 17–18

1   (quoting *Henderson v. Kibbe*, 431 U.S. 145, 156 (1977)).  Moreover, "'[i]t is not reversible error

2   to reject a defendant's proposed instruction on his theory of the case if other instructions, in their

3   entirety, adequately cover that defense theory. '"  *United States v. Del Muro*, 87 F.3d 1078, 1081

4   (9th Cir. 1996) (quoting *United States v. Dees*, 34 F.3d 838, 842 (9th Cir. 1994)).  The omission of

5   an instruction is less likely to be prejudicial than a misstatement of the law.  *Henderson*, 431 U.S.

6   at 155.  Thus, a habeas petitioner whose claim involves a failure to give a particular instruction

7   bears an "especially heavy burden."  *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997)

8   (quoting *Henderson*, 431 U.S. at 155).

9        Petitioner fails to establish that the trial court's omission of his requested jury instructions

10  resulted in a violation of due process.  *See Murtishaw*, 255 F.3d at 971 (question on habeas is

11  whether ailing or omitted instruction so infected entire trial that resulting conviction violates due

12  process).  A review of the record reveals that the instructions given by the trial court covered the

13  gist of Petitioner's requested special instructions regarding his alcohol and drug addictions.  The

14  court instructed that in determining penalty, the jury could consider "whether or not at the time of

15  the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform

16  his conduct to the requirements of law was impaired as a result of mental disease or defect or the

17  effects of intoxication."  Clerk's Transcript ("CT") 1221.  The trial court also instructed the jury to

18  consider "any other circumstance which extenuates the gravity of the crime even though it is not a

19  legal excuse for the crime [and any sympathetic or other aspect of the defendant's character or

20  record [that the defendant offers] as a basis for a sentence less than death, whether or not related to

21  the offense for which he is on trial . . . .]"  *Id.*  Finally, the trial court stated that "[i]f a mitigating

22  circumstance or an aspect of defendant's background or his character, as shown by the evidence,

23  or your observation of the defendant, arouses sympathy or compassion such as to persuade you

24  that death is not the appropriate penalty, you may act in response thereto and impose a punishment

25  of life without the possibility of parole on that basis."  CT 1203.  The record thus supports the

26  California Supreme Court's finding that the trial court's instructions adequately permitted the jury

27  to consider Petitioner's substance abuse disorder.  *Ervin*, 22 Cal. 4th at 98.

28

Case No. 00-CV-01228-LHK
ORDER GRANTING SUMMARY JUDGMENT ON CLAIMS 14–15 AND 17–18

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Petitioner fails to demonstrate that the California Supreme Court's denial of his claim was

2   unreasonable.  Summary judgment on claim 17 is granted.

3   **D.   Claim 18**

4   Petitioner alleges that the trial court violated his constitutional rights when it overruled

5   Petitioner's objection to Robinson's counsel's assertion during the penalty phase trial that

6   Robinson was under Petitioner's substantial domination.  Petitioner's counsel objected on the

7   grounds that the comment was not supported by the evidence, but the trial court ruled that the

8   statement was within the scope of permissible argument.  Respondent argues that the California

9   Supreme Court reasonably rejected this claim.

10   On direct appeal, the California Supreme Court denied this claim as follows:

11   Defendant next argues the court improperly overruled his objection
     to codefendant Robinson's closing argument to the effect that
12   Robinson was under the "substantial domination" of defendant, who
     "badgered" him into participating in the crime. The trial court ruled
13   the argument was "within the scope of permissible argument" and
     observed that the jury would decide whether it was sufficiently
14   supported by the evidence. We uphold that ruling.

15   The evidence showed that Robinson was a person of low
     intelligence who (1) functioned as a 12-year-old child, (2) joined in
16   the plot to kidnap Carlene McDonald at the last minute, (3) was
     nodding off from heroin use just before the abduction, and (4) was
17   kept awake by defendant. Contrary to defendant, we think this
     evidence could support an inference, and permit the argument, that
18   he was the more dominant personality and induced Robinson to join
     the plot.
19
     In any event, it is not reasonably possible that Robinson's counsel's
20   mere argument to this effect could have affected the verdict. The
     jurors were aware from the court's instructions that attorneys'
21   statements made during the trial are not evidence, and that the jury
     must decide all questions of fact in the case from the evidence and
22   from no other source.

23   *Ervin*, 22 Cal. 4th at 98.

24   Citing *Darden v. Wainwright*, 477 U.S. 168 (1986), Petitioner contends that Robinson's

25   counsel, by arguing that Robinson was under Petitioner's domination, improperly acted as a

26   second prosecutor.  In *Darden*, the United States Supreme Court held that a defendant's due

27   process rights were violated when a prosecutor's misconduct renders a trial "fundamentally

28
13

1   unfair." *Id*. at 181.  The *Darden* Court determined that the prosecutor's closing argument which

2   (1) attempted to place some blame for defendant's crime on the conduct of the Division of

3   Corrections, (2) stated that death would be the only guarantee against defendant's future violence

4   and (3) referred to defendant as an animal, did not deprive the defendant of a fair trial in view of

5   the facts that the statements were to some extent invited by defendant's closing argument and that

6   heavy evidence weighed against the defendant.  *Id*. at 179–182.  Nothing in *Darden* supports

7   Petitioner's suggestion that Robinson's counsel's comment rendered Petitioner's trial

8   fundamentally unfair.

9          Moreover, the California Supreme Court reasonably determined that Robinson's counsel's

10  arguments were supported by the record.  *Ervin*, 22 Cal. 4th at 98.  Robinson's counsel stated that

11  Dr. White testified that Robinson functioned as a 12-year-old, RT 12630–31, and that Armond

12  Jack testified that prior to the murder, Robinson was high on heroin, RT 12629.  The jurors were

13  also instructed that the arguments of counsel were not evidence and that that their decision must be

14  based on the evidence alone.  CT 1205.  The California Supreme Court thus reasonably concluded

15  that Robinson's counsel's argument was supported by the evidence and could not have improperly

16  affected the verdict.  *Ervin*, 22 Cal. 4th at 98.

17         Petitioner fails to demonstrate that the California Supreme Court's denial of his claim was

18  unreasonable.  Summary judgment on claim 18 is granted.

19  **VI.  CONCLUSION**

20         For the reasons above, summary judgment on claims 14–15 and 17–18 is GRANTED.

21  **IT IS SO ORDERED.**

22  Dated:  March 28, 2016

23  _____

24  LUCY H. KOH
    United States District Judge

25

26

27

28

Case No. 00-CV-01228-LHK
ORDER GRANTING SUMMARY JUDGMENT ON CLAIMS 14–15 AND 17–18

United States District Court
Northern District of California