1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CURTIS LEE ERVIN,

               Petitioner,

     v.

RON DAVIS, Warden, California State
Prison at San Quentin,

               Respondent.

Case No. 00-CV-01228-LHK

**ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT
ON CLAIMS 7-13**

Re: Dkt. No. 213

     In 1991, Petitioner Curtis Lee Ervin ("Petitioner") was convicted of the murder of Carlene McDonald and sentenced to death. On September 7, 2007, Petitioner filed an amended petition for a writ of habeas corpus before this Court, which included 37 claims in total. ECF No. 97 ("Habeas Pet."). Before the Court is Respondent's motion for summary judgment as to all 37 claims in Petitioner's amended habeas petition. ECF No. 213 ("Mot."). Petitioner opposes Respondent's motion and requests an evidentiary hearing on 15 of Petitioner's 37 claims.

     This Order addresses claims 7–13 in Petitioner's amended habeas petition, which pertain to guilt phase issues. Petitioner requests an evidentiary hearing on claims 7–10. For the reasons discussed below, Respondent's motion for summary judgment as to claims 7–13 is GRANTED,

United States District Court
Northern District of California

1  and Petitioner's request for an evidentiary hearing on claims 7–10 is DENIED.

## I.   BACKGROUND

### A.  Factual Background[1]

On February 21, 1991, a jury convicted Petitioner of first degree murder with the special circumstance finding of murder for financial gain.  Evidence presented at Petitioner's trial established that Robert McDonald ("McDonald"), the former spouse of Carlene McDonald ("Carlene"), had hired Petitioner and Arestes Robinson ("Robinson"), to kill Carlene for $2,500.

At trial, Armond Jack ("Jack") testified that he had driven with Petitioner to meet McDonald to negotiate the price for killing Carlene.  Jack also testified that he had driven Petitioner and Robinson to Carlene's apartment on November 7, 1986, the night of the murder.  While Petitioner, Robinson, and Jack were driving to Carlene's apartment, Petitioner asked for and received a knife from Robinson.  With the assistance of a BB gun, Petitioner and Robinson kidnapped Carlene, and using Carlene's vehicle, took Carlene to Tilden Park, where Petitioner stabbed Carlene to death with Robinson's assistance.  A patrol officer found Carlene's body the following afternoon.

Petitioner and Robinson met with McDonald the day after Carlene's murder and presented McDonald with Carlene's driver's license as proof of the murder.  McDonald paid Petitioner $2,500, which Petitioner shared with Robinson and others to purchase cocaine.  A few weeks after Carlene's murder, McDonald paid Petitioner an additional $1,700.  Sharon Williams ("Williams"), Petitioner's girlfriend, testified that Petitioner gave her a watch and ring later identified as belonging to Carlene.

In addition to the physical evidence linking Petitioner to Carlene's murder, Petitioner also admitted various incriminating aspects of the crime to David Willis ("Willis"), Zane Sinnott ("Sinnott"), and the investigating police officer, Sergeant Dana Weaver ("Weaver").  According to

---

[1] The following facts are drawn from the California Supreme Court's opinion on Petitioner's direct appeal.  *People v. Ervin*, 990 P.2d 506, 513–14 (Cal. 2000); *cf. Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

1    these witnesses, Petitioner admitted that he and Robinson had confronted Carlene, pointed the BB

2    gun at her, forced her into her car, and driven her to Tilden Park.  Petitioner further admitted to

3    stabbing Carlene to death at Tilden Park while Robinson held her.  The prosecution also

4    introduced testimony from Robinson's girlfriend, Gail Johnson ("Johnson"), who stated that

5    Robinson had admitted to participating in Carlene's murder.

6          Robinson, McDonald, and Petitioner were tried together.  Petitioner made no claims of

7    innocence, but sought to impeach the testimony of prosecution witnesses Jack, Sinnott, and Willis.

8    In addition, Dr. Fred Rosenthal ("Rosenthal"), a psychiatrist, testified that Petitioner's cocaine

9    consumption might have impaired Petitioner's thought process.  The jury found Petitioner's

10   defenses unavailing and convicted Petitioner of first degree murder.  During the penalty phase of

11   Petitioner's trial, the prosecution introduced evidence of a prior bank robbery conviction and some

12   jail disciplinary problems.  Petitioner introduced mitigating evidence regarding his character,

13   employment, family, drug use, religious involvement, and musical skills.  McDonald and

14   Robinson also introduced mitigating evidence.  The jury returned death verdicts for Petitioner and

15   McDonald, but chose life imprisonment without parole for Robinson.

16   **B.  Procedural History**

17         On January 6, 2000, the California Supreme Court affirmed Petitioner's conviction and

18   sentence on direct appeal.  *People v. Ervin*, 990 P.2d 506, 537 (Cal. 2000).  The United States

19   Supreme Court denied certiorari on October 2, 2000.  *Ervin v. California*, 531 U.S. 842 (2000).

20   On November 12, 2002, Petitioner filed a federal habeas petition before this Court.  ECF No. 32.

21   On January 22, 2003, Petitioner filed a corrected federal habeas petition.  ECF No. 45.  That same

22   day, the Court stayed all federal habeas proceedings so that Petitioner could exhaust his claims in

23   state court.  Petitioner filed a state habeas petition on October 1, 2003, and on December 14, 2005,

24   the California Supreme Court denied Petitioner's state habeas petition.

25         Following the California Supreme Court's decision, Petitioner filed an amended federal

26   habeas petition.  ECF No. 97.  Respondent filed a response on March 7, 2008, ECF No. 110, and

27   Petitioner filed a traverse on November 13, 2008.  ECF No. 133.

28
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

United States District Court
Northern District of California

1    On February 14, 2012, Respondent filed the instant motion for summary judgment.  On

2  January 8, 2013, Petitioner filed an opposition and a request for an evidentiary hearing.  ECF No.

3  249 ("Opp'n").  Respondent filed a reply on May 10, 2013, which included an opposition to

4  Petitioner's request for an evidentiary hearing. ECF No. 259 ("Resp. Reply").  On August 16,

5  2013, Petitioner filed a reply to Respondent's opposition to Petitioner's request for an evidentiary

6  hearing.  ECF No. 266 ("Pet. Reply").  Petitioner's reply specified that Petitioner sought an

7  evidentiary hearing on claims 7–10, 20, 26–29, and 32–34.  *Id.* at 5.

8    On January 7, 2015, the instant action was reassigned from U.S. District Judge Claudia

9  Wilken to the undersigned Judge.  ECF No. 268.  On March 16, 2015, the Court stayed

10  Petitioner's penalty phase claims pending the Ninth Circuit's decision of an appeal filed in *Jones*

11  *v. Chappell*, 31 F. Supp. 3d 1050 (C.D. Cal. 2014).   ECF No. 269.  The Ninth Circuit decided

12  *Jones* on November 12, 2015, and determined that the district court had erred in finding

13  California's post-conviction system of review in violation of the Eighth Amendment.  *Jones v.*

14  *Davis*, 806 F.3d 538 (9th Cir. 2015).  In the wake of the Ninth Circuit's decision in *Jones*, all of

15  Petitioner's claims are now ripe for review.

16    On December 11, 2015, this Court issued an order granting Respondent's motion for

17  summary judgment as to claims 1–5.  ECF No. 271.  On March 28, 2016, this Court issued an

18  order granting Respondent's motion for summary judgment as to claims 14–15 and 17–18.  ECF

19  No. 281.  Petitioner's remaining claims shall be addressed in subsequent Orders.

20  **II.    LEGAL STANDARD**

21     **A.  Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2254(d))**

22    Because Petitioner filed his original federal habeas petition in 2002, the Anti-Terrorism

23  and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action.  *See Woodford*

24  *v. Garceau*, 538 U.S. 202, 210 (2003) (holding that AEDPA applies whenever a federal habeas

25  petition is filed after April 24, 1996).  Pursuant to AEDPA, a federal court may grant habeas relief

26  on a claim adjudicated on the merits in state court only if the state court's adjudication "(1)

27  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

28

4

established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

### 1. Contrary To or Unreasonable Application of Clearly Established Federal Law

As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs have separate and distinct meanings.  *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.").  A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts."  *Id*. at 412–13.  A state court's decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  A state court's determination that a claim lacks merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness."  *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Holdings of the U.S. Supreme Court at the time of the state court decision are the sole determinant of clearly established federal law.  *Williams*, 529 U.S. at 412.  Although a district court may "look to circuit precedent to ascertain whether [the circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam), "[c]ircuit precedent cannot refine or sharpen a general principle of [U.S.] Supreme Court jurisprudence into a specific legal rule," *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam) (internal quotation marks omitted).

### 2. Unreasonable Determination of the Facts

In order to find that a state court's decision was based on "an unreasonable determination

of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (internal quotation marks omitted).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  That said, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or § 2254(d)(2), a federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  In the event that a federal court "determine[s], considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts," the federal court evaluates the petitioner's claim *de novo*.  *Hurles*, 752 F.3d at 778.  If error is found, habeas relief is warranted if that error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  Petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

## B.  Federal Evidentiary Hearing (28 U.S.C. § 2254(e))

Under *Cullen v. Pinholster*, habeas review under AEDPA "is limited to the record that was before the state court that adjudicated the claim on the merits."  563 U.S. at 180–81.  The Ninth Circuit has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on claims adjudicated on the merits in state court.  *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir.

6

2013); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court has declined to decide whether a district court may ever choose to hold an evidentiary hearing *before* it determines that § 2254(d) has been satisfied . . . an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief.") (internal quotation marks and citation omitted).

### C. Summary Judgment

Summary judgment is appropriate if, when viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Whereas the party opposing summary judgment will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

### III.   DISCUSSION

#### A. Claim 7

The seventh claim in Petitioner's amended habeas petition contends that "[t]he use of Armond Jack as a witness in the People's case denied Petitioner due process of law, his right to confront and cross-examine the witness against him, and his right to a capital proceeding based

7

United States District Court
Northern District of California

1  upon reliable evidence, as . . . guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments

2  to the United States Constitution."  Habeas Pet. at 119.

3        Petitioner's claim was considered and rejected on the merits by the California Supreme

4  Court on direct appeal.  *Ervin*, 990 P.2d at 522–24.  As the California Supreme Court summarized,

5  "Jack was initially granted immunity from prosecution for any acts or testimony arising from his

6  trial testimony concerning the roles of [Petitioner], Robinson, or Robert McDonald in Carlene

7  McDonald's death."  *Id.* at 522.   Upon receiving this immunity, Jack proceeded to testify to the

8  following facts at trial: that Jack "accompanied [Petitioner] . . . when they searched for Carlene's

9  residence," that Jack "was present the next day when [Petitioner] and Robinson unsuccessfully

10  searched for Carlene's car in a BART parking lot," and that, after Carlene's murder, Petitioner

11  admitted to Jack that Petitioner had killed Carlene.  *Id.*

12        During Jack's cross-examination, Petitioner's trial counsel pointed out that much of Jack's

13  trial testimony had contradicted earlier statements made by Jack at Robinson's preliminary

14  examination.  *Id.*  Confronted with these contradictions, Jack admitted that he had lied at

15  Robinson's preliminary examination, but was now telling the truth at trial.  Out of concern over

16  the scope of Jack's grant of immunity, the state trial court held a hearing to "decide whether Jack

17  should be provided counsel."  *Id.*  During this hearing, the prosecution stated that "Jack would not

18  be prosecuted 'based on any testimony he gives, has given here, or any testimony he's given at

19  any prior proceedings.'"  *Id.*  The prosecution also confirmed that Jack was telling the truth at trial,

20  and had lied about Petitioner's role in Carlene's murder prior to receiving immunity.  After

21  hearing these statements, the state trial court allowed Jack's cross-examination to continue.

22        Over the course of Jack's cross-examination, Jack subsequently admitted to "making

23  various false statements during his or his codefendants' preliminary examinations" and in

24  "statements to police officers and codefendants' investigators."  *Id.*  As the California Supreme

25  Court observed, these misstatements included: "(1) failing to tell police about receiving his share

26  of the money from McDonald; (2) lying about being at or near Carlene McDonald's apartment; (3)

27  falsely stating that he did not see any of the codefendants with a knife, extension cord, or pellet

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

United States District Court
Northern District of California

1   gun; and (4) lying about hearing [Petitioner] say that he was going to kill a woman." *Id.* Jack

2   explained that these previous misstatements had been motivated by an attempt to "cover" himself.

3   *Id.* After Jack finished testifying, Petitioner moved for a mistrial. The state trial court denied this

4   motion, but stated "that [Petitioner] could inform the jury at [the] close of trial regarding the

5   [prosecution's] stipulation that Jack would not be prosecuted for perjury based on his past or

6   present testimony." *Id.* at 523.

7        The gist of Petitioner's claim is (1) that Jack was given an impermissibly broad grant of

8   immunity, (2) that Jack subsequently perjured himself at trial, and (3) that Petitioner's trial

9   counsel was unable to effectively cross-examine Jack.

10        The California Supreme Court rejected Petitioner's claim on a number of different

11   grounds. First, Petitioner's trial counsel did not, during cross-examination, inquire into the scope

12   of Jack's immunity. There was thus no evidence in the record to establish that Jack had been

13   offered an impermissibly broad grant of immunity. Second, "the [prosecution's] extended grant of

14   immunity" could have been "reasonably . . . construed as applying only to Jack's *past* perjury,

15   rather than immunizing him for *future* perjury committed at [Petitioner's] trial." *Id.* at 523. As

16   the California Supreme Court pointed out, "[t]his interpretation of the [prosecution's] stipulation is

17   supported by the record, as the stipulation was made after Jack admitted lying at an earlier

18   proceeding and should be construed in that context." *Id.* Finally, even assuming some ambiguity

19   as to the scope of Jack's grant of immunity, Petitioner had failed to demonstrate the prejudice

20   necessary to warrant habeas relief. *Id.* The prosecution had presented considerable evidence

21   linking Petitioner to Carlene's murder. Furthermore, Petitioner's trial counsel had, during Jack's

22   cross examination and during closing arguments, "fully exploited the various inconsistences in

23   [Jack's] testimony" and "argued that the jury should disbelieve [Jack] because he had been given

24   immunity for perjury." *Id.* After weighing these competing considerations, the jury nonetheless

25   found Petitioner guilty of first degree murder.

26        The California Supreme Court's decision was neither contrary to nor an unreasonable

27   application of clearly established federal law. As to the issue of clearly established federal law,

28

9

United States District Court
Northern District of California

Petitioner has cited no U.S. Supreme Court authority that would entitle him to relief.  In response to the motion for summary judgment, Petitioner relies upon *United States v. Apfelbaum*, 445 U.S. 115 (1980), and *United States v. Mandujano*, 425 U.S. 564 (1976), but these cases simply stand for the proposition that a witness granted immunity does not have license to commit perjury at trial.  *See, e.g.*, *Apfelbaum*, 445 U.S. at 131 ("[N]either the immunity statute nor the Fifth Amendment precludes the use of respondent's immunized testimony at a subsequent prosecution for making false statements.").  The evidence presented, however, does not clearly establish that Jack committed perjury at trial.  Rather, as the state trial court observed, the evidence suggests that Jack's immunity allowed him to testify truthfully at trial, and protected Jack only from prosecution for *past* perjury.  Petitioner has provided no evidence to challenge or refute this version of events.

Petitioner also argues that the state "trial court would not permit the defense to aggressively cross-examine Jack regarding his lies."  Opp'n at 43.  On this point, Petitioner cites *Chambers v. Mississippi*, 410 U.S. 284 (1973), but that case in inapposite.  In *Chambers*, a key witness confessed to a crime on multiple occasions, but then repudiated his confession prior to trial.  *Id.* at 288.  The prosecution did not call this witness at trial, which prompted the defense to call this witness in its case in chief.  However, under a Mississippi common law provision known as the voucher rule, "a party may not impeach his own witness."  *Id.* at 295.  Application of this rule prevented the defense from fully exploring the inconsistencies of the witness's testimony.  In light of this result, the U.S. Supreme Court determined that Mississippi's voucher rule denied defendant "a trial in accord with traditional and fundamental standards of due process," and thus found the voucher rule unconstitutional.  *Id.* at 302.

There is no such rule at play in the instant case.  Here, the record demonstrates that Jack was cross-examined at length, and that his testimonial inconsistencies were made apparent to the jury.  Although the prosecution objected to Petitioner's trial counsel's attempts to impeach Jack, the state trial court overruled many of these objections.  Petitioner's trial counsel was, in other words, able to effectively impeach Jack's credibility, in contrast to what took place in *Chambers*.  For example, during Jack's cross examination, Jack admitted that he initially lied to officers in

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

1    order "to keep [himself] out of any difficulty."  ECF No. 276-3 ("Trial Tr.") at 9581; *see also id.*

2    at 9595 ("I know I lied to [Officer] Weaver.").  Jack also insisted that he began telling the truth

3    after he was given immunity.

4            Finally, Petitioner relies on *Brady v. Maryland*, 373 U.S. 83 (1963), and several post-

5    *Brady* decisions.  *See, e.g.*, Opp'n at 43–45 (citing *Giglio v. United States*, 405 U.S. 150 (1972),

6    *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), and other *Brady* decisions).  Petitioner also cites

7    a number of analogous circuit court decisions—*Guzman v. Secretary, Department of Corrections*,

8    663 F.3d 1336 (11th Cir. 2011), *Phillips v. Ornoski*, 673 F.3d 1168 (9th Cir. 2012), and *Sivak v.*

9    *Hardison*, 658 F.3d 898 (9th Cir. 2011).  All of these decisions are inapposite.  The purpose of

10   *Brady*—and subsequent U.S. Supreme Court and federal circuit court decisions interpreting

11   Brady—is to "require[] the State to turn over *all* material exculpatory and impeachment evidence

12   to the defense."  *Barton v. Warden*, 786 F.3d 450, 468 (6th Cir. 2015).  Thus, in all of the cases

13   upon which Petitioner relies, the prosecution declined to disclose or turn over a key fact to the

14   defense.  *See, e.g.*, *Giglio*, 405 U.S. at 155 (prosecution failed to disclose that witness would not

15   be subject to future prosecution); *Phillips*, 673 F.3d at 1183 (same).  As the California Supreme

16   Court observed, the prosecution did not withhold any such evidence here.  Rather, the prosecution

17   disclosed Jack's immunity agreement, insisted that Jack was telling the truth at trial, and allowed

18   Petitioner's trial counsel to cross examine Jack and impeach Jack's credibility at length.  There is

19   no evidence from the record to support Petitioner's contentions that Jack was given an

20   impermissibly broad grant of immunity or that Jack was lying at trial.  Under these circumstances,

21   the California Supreme Court did not unreasonably apply or make a decision contrary to clearly

22   established federal law in rejecting Petitioner's due process and Confrontation Clause claim as to

23   Jack's testimony.  Moreover, the California Supreme Court's decision was not an unreasonable

24   determination of the facts.

25           Accordingly, Respondent's motion for summary judgment as to claim 7 is GRANTED.

26   **B.  Claim 8**

27           The eighth claim in Petitioner's amended habeas petition is that "[t]here exists substantial

28
                                                      11

United States District Court
Northern District of California

1  evidence that witness David Willis'[s] statement directly implicating Petitioner as the actual killer

2  was manufactured through unlawful and coercive police conduct." Habeas Pet. at 140. Petitioner

3  thus contends that his rights "to due process, a fair trial, and a reliable penalty determination under

4  the Fifth, Eighth, and Fourteenth Amendments" were violated. *Id.*

5       Petitioner's claim was considered and rejected on the merits by the California Supreme

6  Court on direct appeal. 990 P.2d at 524. As the California Supreme Court summarized, the

7  prosecution "was permitted to introduce, as a prior inconsistent statement, the tape-recorded

8  statement of David Willis implicating [Petitioner] in the murder of Carlene McDonald." *Id.* In

9  this statement, Willis stated that Petitioner had "admitted [to] killing a woman" on the night of

10 Carlene's murder, with Petitioner showing Carlene's driver's license, watch, and ring to Willis.

11 *Id.* "[Petitioner] also admitted [to] stabbing Carlene while Robinson held her." *Id.* Willis,

12 however, retreated from these statements at trial; at trial, Willis "denied the truth of his assertions

13 regarding [Petitioner's] admissions." *Id.* When asked to explain the discrepancy between his pre-

14 trial statements and his trial testimony, Willis "claimed [that] he had been 'coached' by the

15 investigating officer, . . . who promised to dismiss pending burglary charges against Willis in

16 return for his statement implicating [Petitioner]." *Id.* The investigating officer "denied making

17 any [such] promises of leniency or threats of prosecution," and instead stated that Willis was

18 motivated to provide his pre-trial statement based on a recent religious conversion. *Id.* In a tape

19 recording of a conversation between Willis and Officer Weaver, which was introduced at trial,

20 Willis stated that he had to decided to come forward with inculpatory evidence against Petitioner

21 because Willis was "trying to [get] straight . . . I was in [a] Christian program trying to get myself

22 together." ECF No. 276-4 ("Trial Tr.") at 10101.

23      Under these facts, Petitioner asserts (1) that the prosecution "used threats to [coerce] a

24 statement from the witness that [it] knew, or should have known, was false," and (2) that the state

25 trial court erred by not *sua sponte* "instruct[ing] the jury . . . on the effect of coercion on the

26 credibility of a statement." Opp'n at 48, 50. In rejecting these arguments on direct appeal, the

27 California Supreme Court observed first "that [Petitioner had] failed to object to the admission of

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

Willis's statement at trial." 990 P.2d at 524. Petitioner had thus "waived the point for appeal." *Id.*[2] In addition, the California Supreme Court noted that "case law fails to support defendant's premise that a third party witness's statements are rendered inadmissible against a defendant if induced by improper offers of leniency." *Id.* (citing cases). As to Petitioner's request for a *sua sponte* jury instruction, "[t]he [trial] court did instruct [the jury] that a witness's prior inconsistent statements may be considered to test the witnesses's credibility and also as evidence of the truth of the facts stated." *Id.* (citation omitted). The state trial court further "instructed the jury that it could consider 'the existence or nonexistence of a bias, interest or other motive' in evaluating testimony." *Id.* Under such circumstances, the California Supreme Court determined that the state trial court was not required to provide an additional jury instruction *sua sponte*.

The California Supreme Court's decision was neither contrary to nor an unreasonable application of clearly established federal law. In challenging this conclusion, Petitioner does not cite a single U.S. Supreme Court decision where a witness's testimony was allegedly coerced. Instead, Petitioner relies upon *Giglio v. United States*, 405 U.S. 150 (1972); *Napue v. Illinois*, 360 U.S. 264 (1959); *Donnelly v DeChristoforo*, 416 U.S. 637 (1974); and *Imbler v. Pachtman*, 424 U.S. 409 (1976), the same cases that Petitioner cited in challenging the admission of Jack's testimony. Opp'n at 48. As the Court has explained, these cases address the prosecution's duty to disclose exculpatory or impeachment evidence to the defense. The record in the instant case does not show that any potential exculpatory or impeachment evidence was ever withheld. Instead, the jury was presented with Willis's pre-trial statements, Willis's trial testimony, and Officer Weaver's trial testimony, and the jury weighed the evidence accordingly.

In addition to the cases discussed above, Petitioner also relies upon a number of federal circuit court decisions. Opp'n at 50. Although these circuit court decisions do address the issue of coerced testimony, there are several reasons why Petitioner's reliance upon these decisions is unavailing. First, under 28 U.S.C. § 2254(d)(1), habeas relief is warranted only if the state court

---

[2] The Court need not address the issue of procedural default. For the reasons set forth below, Petitioner's claim fails on the merits.

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

1   decision "was contrary to, or involved an unreasonable application of, clearly established Federal

2   law, *as determined by the Supreme Court of the United States*."  28 U.S.C. § 2254(d)(1) (emphasis

3   added).  Circuit court decisions by themselves are insufficient to warrant habeas relief.

4          Second, two of the circuit court decisions that Petitioner cites—*United States v. Merkt*, 794

5   F.2d 950 (5th Cir. 1986), and *United States v. Chiavolo*, 744 F.2d 1271 (7th Cir. 1984)—weigh in

6   favor of Respondent, not Petitioner.  In *Merkt*, the Fifth Circuit *rejected* appellants' argument that

7   certain testimony had been coerced.  794 F.2d at 962.  The Fifth Circuit determined that the

8   purported form of leniency—an offer of prosecutorial discretion—was "a far cry from the sort of

9   third-degree physical or psychological coercion that might prompt us to disregard altogether the

10  societal interest in law enforcement by excluding [a nondefendant's] highly probative testimony."

11  *Id.*  Likewise, in *Chiavolo*, the Seventh Circuit rejected appellant's coerced testimony argument,

12  and held that the testimony at issue had been given voluntarily.  744 F.2d at 1275.

13         The remaining circuit court decisions are entirely inapplicable to the instant case.  In

14  *Phillips v. Ornoski*, 673 F.3d 1168, 1186 (9th Cir. 2012), for instance, the prosecution withheld

15  the fact that a witness had been granted immunity.  Similarly, in *Sivak v. Hardison*, 658 F.3d 898,

16  915 (9th Cir. 2011), the prosecution did not disclose that a key witness sought "money and

17  favorable treatment in exchange for his testimony."  In *Boyd v. French*, 147 F.3d 319, 329 (4th

18  Cir. 1998), and *Guzman v. Secretary, Department of Corrections*, 663 F.3d 1336, 1339 (11th Cir.

19  2011), the prosecution had allegedly offered false testimony at trial.  The common thread linking

20  these cases together—*Phillips*, *Sivak*, *Boyd*, and *Guzman*—is that the prosecution withheld some

21  key evidence from the defense.  As the Court has already explained, the record does not show that

22  the prosecution withheld any such evidence in the instant case.

23         In sum, after a careful review of the case law cited by Petitioner, the Court finds that the

24  California Supreme Court's affirmance of the state trial court's admission of Willis's pre-trial

25  statements was neither contrary to nor an unreasonable application of clearly established federal

26  law.

27         Additionally, the California Supreme Court's determination was not an unreasonable

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

United States District Court
Northern District of California

1    determination of the facts.  The trial transcripts demonstrate that Willis's pre-trial statements and

2    trial testimony contradicted one another.  These transcripts further highlight the dispute between

3    Willis and Officer Weaver over the motivation behind Willis's decision to provide certain pre-trial

4    statements.  Willis states that he provided his statements in order to evade prosecution for a

5    burglary charge while Officer Weaver states that these statements were provided voluntarily after

6    Willis' religious conversion.  Tellingly, at no point in either Willis or Officer Weaver's testimony

7    did Willis or Officer Weaver state that Willis had been subjected to physical or psychological

8    pressure rising to the level of coercion.  Accordingly, habeas relief under 28 U.S.C. § 2254(d)(2)

9    is unwarranted.

10   Petitioner's request for a *sua sponte* jury instruction also lacks merit.  In the instant case,

11   the state trial court instructed the jury about the influence of bias, interest, or other motive in

12   evaluating witness testimony.  Petitioner argues that the state trial court should have gone further

13   and instructed the jury about the unreliability of coerced testimony.  However, as the Court has

14   observed, Petitioner has, as both a legal and factual matter, failed to demonstrate that Willis's pre-

15   trial statements were coerced.  Under such circumstances, the state trial court was under no

16   obligation to issue a jury instruction *sua sponte*.

17   Accordingly, Respondent's motion for summary judgment as to claim 8 is GRANTED.

18   **C. Claim 9**

19   Next, Petitioner argues that he "was effectively and prejudicially denied his Sixth

20   Amendment right to confrontation as well as his Eighth Amendment right to a reliable penalty

21   verdict by the admission of Gail Johnson's preliminary hearing testimony."  Habeas Pet. at 154.

22   As with Willis's testimony, Petitioner argues that "law enforcement used coercion and other

23   improper means to obtain Ms. Johnson's testimony," and that the state trial court should have

24   provided a jury instruction to this effect *sua sponte*.  Opp'n at 54.

25   During her preliminary examination, Johnson stated "that Robinson, [Petitioner], and Jack

26   appeared at her home on the evening of November 6, that she found an extension cord for

27   Robinson, that she saw the men leave together, and that when they returned the next day Robinson

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

United States District Court
Northern District of California

had a significant sum of money." 990 P.2d at 525.  Moreover, Johnson "testified that Robinson later admitted [to] being involved in a murder for hire, that the scheme involved breaking into a woman's house to suggest a burglary had occurred, that problems had arisen in disposing of the victim's body, and that Robinson feared he left his fingerprints on the cord." *Id.* (internal quotation marks omitted).  Petitioner's trial counsel was not present at Johnson's preliminary examination.

When Johnson was called as a witness at trial, however, Johnson stated that "she recalled none of her preliminary examination testimony and none of the events surrounding the offenses." *Id.*  Johnson also "claimed an inability to identify either [Petitioner] or even Robinson, whom she nonetheless acknowledged as the father of her son." *Id.*  Based on Johnson's trial testimony, Robinson and the prosecution stipulated to the introduction of Johnson's preliminary examination testimony as a prior inconsistent statement.  Petitioner did not join in this stipulation.  The state trial court admitted Johnson's preliminary examination testimony, but redacted all specific references to Petitioner.  *Id.* at 527–28.

The California Supreme Court upheld the state trial court's decision on direct appeal.  First, the California Supreme Court observed that Petitioner's trial counsel had failed to properly object to the admission of Johnson's prior testimony.  Thus, Petitioner had waived his objections for purposes of his appeal.[3]  Second, under California evidence law, "[a]s long as there is a reasonable basis in the record for concluding that the witness's 'I don't remember' statements are evasive and untruthful, admission of his or her prior statements is proper." *Id.* at 525.  After reviewing the record in the instant case, the California Supreme Court concluded that "[t]he [trial] record supports the court's implied finding that witness Johnson's claimed memory loss was a deliberate evasion," and that admission of Johnson's prior inconsistent statements was therefore proper.  *Id.*  Third, the California Supreme Court "reject[ed] Petitioner's contentions that Johnson's prior testimony was coerced by promises of leniency," based on the "reasons given in

United States District Court
Northern District of California

---

[3] The Court need not address the issue of procedural default.  For the reasons set forth below, Petitioner's claim fails on the merits.

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

1    rejecting similar claims regarding the recorded statement of David Willis." *Id.*

2         In challenging the California Supreme Court's legal determination, Petitioner cites,

3    without explanation, three U.S. Supreme Court cases: *Douglas v. Alabama*, 380 U.S. 415 (1965);

4    *California v. Green*, 399 U.S. 149 (1970); and *Crawford v. Washington*, 541 U.S. 36 (2004).

5    Petitioner's reliance on these decisions is not well taken.

6         In *Douglas*, the defendant's accomplice invoked his privilege against self-incrimination

7    and refused to answer any questions put to him.  The prosecution proceeded to read to the jury a

8    confession purportedly made by the accomplice which implicated the defendant.  380 U.S. at 419.

9    The accomplice refused to answer any questions on cross-examination, including any questions

10   regarding his purported confession.  Under these facts, the U.S. Supreme Court determined that

11   the defendant had been denied "the right of cross-examination" as "secured by the Confrontation

12   Clause." *Id.*

13        The facts here are distinguishable from those in *Douglas*.  During Johnson's cross-

14   examination, Johnson "continued to testify that she did not remember anything about the events

15   surrounding November 6, 1986, nor did she recall her testimony during Robinson's preliminary

16   hearing." Habeas Pet. at 159.  Johnson also "stated that she was probably under the influence of

17   drugs when she spoke to the police." *Id.* at 160.  Thus, unlike in *Douglas*, Johnson was cross-

18   examined at trial, and the jury was presented with two different accounts of Johnson's testimony:

19   the prosecution's perspective, as established by Johnson's preliminary examination statements,

20   and Petitioner's perspective, as elicited via cross-examination of Johnson at trial.  The California

21   Supreme Court's decision to reject Petitioner's claim was therefore not contrary to or an

22   unreasonable application of *Douglas*.

23        Next, the reasoning in *Green* appears to weigh in Respondent's favor, not Petitioner's.  In

24   *Green*, the U.S. Supreme Court held that "the inability to cross-examine the witness at the time he

25   made his prior statement cannot easily be shown to be of crucial significance *as long as the*

26   *defendant is assured of full and effective cross-examination at the time of trial*." 399 U.S. at 159

27   (emphasis added).  That is in fact what happened here.  Although Petitioner's trial counsel did not

28
     Case No. 00-CV-01228-LHK
     ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

cross-examine Johnson at Johnson's preliminary examination, Petitioner's trial counsel cross-examined Johnson at length at trial.  The U.S. Supreme Court re-affirmed *Green* in *United States v. Owens*, 484 U.S. 554, 560 (1988), where the Court stated that as "recognized in *Green*, the traditional protections of the oath, cross-examination, and opportunity for the [trial] jury to observe the witness' demeanor satisfy the constitutional requirements" of the Confrontation Clause.  In sum, neither *Green* nor *Owens*, a subsequent decision which reiterated the holding in *Green*, weigh in favor of granting Petitioner habeas relief.

Finally, *Crawford* was decided in 2004, four years after the California Supreme Court's decision on direct appeal.  In *Whorton v. Bockting*, 549 U.S. 406, 421 (2007), the U.S. Supreme Court held that "*Crawford* announced a 'new rule' of criminal procedure," and was thus not retroactive.  Because holdings of the U.S. Supreme Court at the time of the state court decision are the sole determinant of clearly established federal law, *see Williams*, 529 U.S. at 412, Petitioner cannot rely upon *Crawford* in challenging the California Supreme Court's decision.

Outside of the cases discussed above, Petitioner also argues that Johnson's preliminary examination testimony was the product of police coercion.  Petitioner asserts that the police subjected Willis and Johnson to the same allegedly coercive conduct: Johnson "had been promised by the police that they would secure her release on her then pending charges if she testified."  Habeas Pet. at 159.  The Court finds Petitioner's coercion argument unavailing, for the same reasons the Court stated in rejecting the coercion argument as to Willis. There is no federal or state court authority compelling a finding of coercion with respect to Johnson's preliminary examination testimony.

Accordingly, Respondent's motion for summary judgment as to claim 9 is GRANTED.[4]

**D.  Claim 10**

---

[4] As to 28 U.S.C. § 2254(d)(2), Petitioner's opposition focuses on a single factual determination made by the California Supreme Court: whether Petitioner properly "objected to the admission Ms. Johnson's preliminary hearing testimony" at trial.  Opp'n at 53.  Whether Petitioner properly objected, however, addresses only whether Petitioner's claim is procedurally defaulted.  The Court need not reach the issue of procedural default because Petitioner's claim fails on the merits.

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

1    The tenth claim in Petitioner's amended habeas petition is that "Zane Sinnott's testimony

2   was the product of outrageous governmental conduct in violation of Petitioner's rights to due

3   process of law and a reliable penalty phase verdict as guaranteed by the Eighth and Fourteenth

4   Amendments."  Habeas Pet. at 162.  Additionally, Petitioner claims that the state trial court "erred

5   in failing to instruct the jury that [Sinnott's] testimony should be disregarded in its entirety."  *Id.*

6    At trial, Sinnott stated that he had "overheard [Petitioner] admit [to] killing a woman with

7   a knife, after using a toy gun to abduct her," and that he had "heard [Petitioner] and Armond Jack

8   discuss their efforts to obtain more money from McDonald" after Carlene's murder.  990 P.2d at

9   526.  Petitioner alleges that, in exchange for this testimony, Sinnott was given "food and lodging

10  ($700) and reduced charges or 'pardons' for his own criminal conduct" in exchange for his

11  testimony.  *Id.*  Accordingly, Petitioner contends that Sinnott's testimony should have been

12  suppressed at trial.

13    The California Supreme Court considered and rejected this claim on the merits on direct

14  appeal.  *Id.*  First, the California Supreme Court determined that, at trial, Petitioner had "made no

15  objection to Sinnott's testimony on the ground that undue benefits were provided."  *Id.*  Petitioner

16  had thus waived the claim for purposes of appeal.[5]  Second, setting aside the issue of waiver, the

17  California Supreme Court also held that "[g]ranting benefits, reduced sentences, or even immunity

18  to secure a witness's testimony is commonplace and would not constitute such 'outrageous'

19  conduct as to justify suppression or outright dismissal."  *Id.*  In addition, the California Supreme

20  Court observed that Cal. Penal Code § 132.5, which generally prohibits witnesses from receiving

21  "any payment or benefit in consideration for" testimony given at a criminal prosecution, is

22  "expressly inapplicable to . . . compensation [that is] provided to an informant by a prosecutor or

23  law enforcement agency."  *Id.* (citing Cal. Penal Code § 132.5).

24    The California Supreme Court's decision was neither contrary to nor an unreasonable

25  application of clearly established federal law.  As the Court has already explained with respect to

[5] The Court need not address the issue of procedural default.  For the reasons set forth below, Petitioner's claim fails on the merits.

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

United States District Court
Northern District of California

1    Claim 7 (Jack's trial testimony), Claim 8 (Willis's pretrial statements), and Claim 9 (Johnson's

2    pretrial statements), the prosecution's decision to provide benefits in exchange for a witness's

3    testimony does not render such testimony constitutionally improper.  Thus, Petitioner's continued

4    reliance on *Giglio*, *Napue*, *Phillips*, *Sivak*, and *Guzman* is unavailing, for the same reasons stated

5    in the Court's discussion of Claims 7, 8, and 9.

6         In Petitioner's opposition, Petitioner cites a single case outside of the cases discussed

7    above: *Beck v. Alabama*, 447 U.S. 625 (1980).  In *Beck*, the U.S. Supreme Court determined that

8    the death penalty could not be imposed in situations where "the jury was not permitted to consider

9    a verdict of guilt of a lesser included non-capital offense, [even] when the evidence would have

10   supported such a verdict."  *Id.* at 627.  *Beck* is not relevant to the claim at issue.  As Petitioner

11   acknowledges, the admissibility of Sinnott's testimony relates to the *guilt* phase of Petitioner's

12   trial.  Opp'n at 40, 56 (categorizing instant claim as a "Guilt Phase Claim.").  *Beck*, on the other

13   hand, addresses the instructions that a jury must receive with regard to the *penalty* phase of a

14   defendant's trial.  More importantly, Petitioner has not demonstrated how Sinnott's testimony had

15   any effect on the possibility of Petitioner being convicted of a lesser-included offense, which was

16   the central holding in *Beck*.

17        In sum, Petitioner has identified no authority that demonstrates that the California Supreme

18   Court's determination was contrary to or an unreasonable application of clearly established federal

19   law, and the Court has identified none in its own research.  Accordingly, habeas relief under 28

20   U.S.C. § 2254(d)(1) is unwarranted.

21        Neither Petitioner's amended habeas petition nor Petitioner's opposition to the instant

22   motion appear to argue that the California Supreme Court's determination was based on an

23   unreasonable determination of the facts.  In any event, the facts upon which the California

24   Supreme Court relied are consistent with this Court's review of the record.  Accordingly,

25   Respondent's motion for summary judgment as to claim 10 is GRANTED.

26        As a final matter, because the California Supreme Court's determination as to claims 7–10

27   were not contrary to or an unreasonable application of clearly established federal law and were not

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

United States District Court
Northern District of California

1    based on an unreasonable determination of the facts, Petitioner's request for an evidentiary hearing

2    as to claims 7–10 is unavailing.  *See Sully*, 725 F.3d at 1075 ("[A]n evidentiary hearing is

3    pointless once the district court has determined that § 2254(d) precludes habeas relief.").

4    Petitioner's request for an evidentiary hearing as to claims 7–10 is therefore DENIED.

5        **E.  Claim 11**

6        The eleventh claim in Petitioner's amended habeas petition is that the state trial court

7    "violated Petitioner's rights under the Sixth and Fourteenth Amendments to confront the witnesses

8    against him and to present a defense by admitting evidence of statements made by codefendants

9    implicating Petitioner in the homicide, as well as evidence of inculpatory portions of a statement

10   made by Petitioner while barring him from properly placing such portions in context of his entire

11   statement."  Habeas Pet. at 166.

12       With respect to this claim, Petitioner focuses on three sets of statements that were at issue

13   at trial.  First, during an interview with Officer Weaver, Petitioner "made a statement . . .

14   implicating himself and Robinson in the kidnapping and murder of Carlene McDonald, but

15   suggest[ed] [that] Robinson did the actual killing."  990 P.2d at 527.  The state trial court found

16   this statement inadmissible because the statement "could not be effectively redacted to avoid

17   references to Robinson," *id.*, as required by *Bruton v. United States*, 391 U.S. 123 (1968).  Second,

18   Petitioner contends that "it was prejudicial to admit Zane Sinnott's testimony that codefendant

19   McDonald knew Petitioner as 'Turk,' since taped police interviews indicated that a man named

20   'Turk,' was responsible for arranging the contract killing with McDonald."  Opp'n at 60 (footnote

21   omitted). Third, Petitioner argues that "Petitioner was harmed by the admission of Gail Johnson's

22   testimony at codefendant Robinson's preliminary hearing which incriminated him in the homicide,

23   since [Petitioner] did not have [an] opportunity to cross-examine [Johnson]."  *Id.*

24       The California Supreme Court considered and rejected Petitioner's claim on the merits on

25   direct appeal.  As to Petitioner's statements to Officer Weaver and Johnson's preliminary

26   examination testimony, the California Supreme Court determined that Petitioner had failed to

27   object to the state trial court's decision.  990 P.2d at 527–28.  Accordingly, Petitioner had waived

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

his objections to these statements for purposes of appeal.[6]  Moreover, the California Supreme Court determined that all three statements at issue "were undoubtedly harmless to [Petitioner] in light of the other substantial incriminating evidence in the case."  *Id.* at 528.

For the reasons that follow, the Court finds that the California Supreme Court's decision as to (1) Petitioner's statements to Officer Weaver, (2) Sinnott's trial testimony, (3) Johnson's preliminary examination testimony was neither contrary to nor an unreasonable application of clearly established federal law.

### 1. Petitioner's Statements to Officer Weaver

First, as to Petitioner's statements to Officer Weaver, Officer Weaver testified at trial "only that [Petitioner] told him a toy gun [that Officer Weaver had] show[n] to [Petitioner] resembled the one used to force Carlene McDonald into her car when she was abducted."  *Id.* at 527.  The remainder of Petitioner's statements, which implicated Robinson as the primary actor in Carlene's murder, was deemed inadmissible.

Petitioner contends that the California Supreme Court unreasonably applied *Bruton* in denying Petitioner's claim on the merits.  In *Bruton*, the U.S. Supreme Court "held that the introduction of a nontestifying codefendant's confession violates a defendant's Sixth Amendment right of confrontation, even if the judge instructs the jury that the confession is admissible only against the nontestifying codefendant."  *United States v. Hoac*, 990 F.2d 1099, 1105 (9th Cir. 1993).  Subsequent U.S. Supreme Court precedent has "limited *Bruton* to confessions that are facially incriminating."  *Id.*  When a "confession [is] not incriminating on its face, but bec[o]me[s] so only when linked with evidence introduced later at trial," *Bruton* does not apply.  *Richardson v. Marsh*, 481 U.S. 200, 201 (1987).

Here, the state trial court properly applied *Bruton*, and the California Supreme Court properly upheld the state trial court's decision on direct appeal.  Similar to the facts in *Bruton*, Petitioner did not testify at trial, but did confess—in a prior statement to Officer Weaver—to

---

[6] The Court need not address the issue of procedural default.  For the reasons set forth below, Petitioner's claim fails on the merits.

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

1   playing a role in Carlene's murder.  Petitioner's confession, however, facially incriminated

2   Robinson, one of Petitioner's codefendants.  Because Petitioner's confession facially incriminated

3   Robinson, Petitioner's confession did not fall under the purview of *Richardson v. Marsh*, which

4   "specifically exempts [from *Bruton*], a statement, not incriminating on its face, that implicates the

5   defendant only in connection to other admitted evidence."  *Mason v. Yarborough*, 447 F.3d 693,

6   695 (9th Cir. 2006).  Thus, had the state trial court allowed Petitioner to introduce his confession

7   in full, the state trial court would have, per *Bruton*, violated Robinson's Sixth Amendment rights.

8   *Hoac*, 990 F.2d at 1105.  By finding the bulk of Petitioner's confession to Officer Weaver

9   inadmissible, the state trial court acted fully in accordance with the holding in *Bruton*.

10         **2. Sinnott's Trial Testimony**

11         Second, Petitioner argues that the state trial court failed to redact Sinnott's trial testimony,

12   which included taped conversations between Sinnott and McDonald where McDonald appeared to

13   refer to Petitioner as "Turk."  According to Petitioner, taped police interviews introduced at other

14   points during Petitioner's trial "indicated that a man named 'Turk,' was responsible for arranging

15   the contract killing [of Carlene]."  Opp'n at 60.  Based on this information, Petitioner contends

16   that the state "trial court did not have *Aranda-Bruton*[7] considerations in mind when it permitted

17   the statements" of Zane Sinnott at trial.  Habeas Pet. at 169.

18         The Court disagrees.  As noted above, the U.S. Supreme Court's decision in *Richardson*

19   "specifically exempts [from *Bruton*] a statement, not incriminating on its face, that implicates the

20   defendant only in connection to other admitted evidence."  447 F.3d at 695.  Here, Sinnott's

21   statements do not incriminate Petitioner on their face.  As the California Supreme Court

22   summarized, "[d]uring [McDonald's] conversations [with Sinnott], McDonald made some oblique

23   references to 'Turk' as being involved in some undefined way in the scheme to kill Carlene

---

[7] In 1965, the California Supreme Court "came to a conclusion similar to that subsequently recognized by the [U.S. Supreme Court] in *Bruton*" in *People v. Aranda*, 63 Cal.2d 518 (1965). *See People v. Burney*, 212 P.3d 639, 664 (Cal. 2009).  As such, state and federal courts often examine *Aranda-Bruton* claims together.  *See Melendez v. Pliler*, 288 F.3d 1120, 1122 n.2. (9th Cir. 2002).  The Court shall do the same for purposes of the instant claim.

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

1   McDonald." 990 P.2d at 527.  In other words, Sinnott's statements only implicate Petitioner when

2   they are linked with other taped conversations that were introduced at Petitioner's trial, which

3   established that Petitioner might have been referred to as "Turk."  Because Sinnott's statements

4   fall within the purview of *Richardson*, the state trial court's decision to admit these statements did

5   not run afoul of *Bruton*.

6        **3.  Johnson's Preliminary Examination Testimony**

7        Third, Petitioner contends that the state trial court improperly admitted Johnson's

8   preliminary examination testimony, even though Johnson's testimony was redacted to remove any

9   specific references to Petitioner and instead referred to all codefendants as "we" or "they."  The

10  record demonstrates that the state trial court—with the consent of all parties, including Petitioner's

11  trial counsel—redacted Johnson's preliminary examination testimony in this manner in order to

12  remove specific references to Petitioner.  *See* Trial Tr. at 10656 ("The stipulation is the use of the

13  word 'they' in that context refers to persons other than [Robinson]"); *id.* ("So what that boils down

14  to, when [Robinson] allegedly is telling Gail Johnson this, when he says 'they,' up to the time of

15  4:00 o'clock on November 6th, he is referring to people other than himself, namely Armond and

16  Curtis.").

17       There is no clear rule on whether, under such circumstances, the state trial court's actions

18  run afoul of *Bruton*.  On the one hand, in *Gray v. Maryland*, 523 U.S. 185, 195 (1998), the U.S.

19  Supreme Court determined that, "considered as a class, redactions that replace a proper name with

20  an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been

21  deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal

22  results."  On the other hand, the U.S. Supreme Court has also held that confessions which are not

23  incriminating on their face fall outside the purview of *Bruton*.  *Richardson*, 481 U.S. at 208.  In

24  addition, in *Lilly v. Virginia*, 527 U.S. 116 (1999), a decision issued after *Gray*, the U.S. Supreme

25  Court clarified that *Bruton* applies to some, but not all, redacted confessions.  *See, e.g.*, *id.* at 134

26  n.5 ("Our holdings in *Bruton v. United States*, *Cruz v. New York*, *Gray v. Maryland*, and *Lee v.*

27  *Illinois* were all premised, explicitly or implicitly, on the principle that accomplice confessions

28

United States District Court
Northern District of California

24

that inculpate a criminal defendant are not *per se* admissible.") (citations omitted).

In an attempt to reconcile these U.S. Supreme Court decisions, the Ninth Circuit has held that *Gray* does not apply where the redacted material is—as in this case—replaced by a more general pronoun, such as "we" or "they," because such pronouns do not "point to or appear to identify" a specific defendant. *United States v. Barrera-Medina*, 139 F. App'x 786, 795 (9th Cir. 2005). In addition, the Ninth Circuit has observed that confessions often "fall[] somewhere on the constitutional spectrum between *Richardson* and *Gray*." *Hayes v. Runnels*, 80 F. App'x 561, 562 (9th Cir. 2003). Here, at best, Johnson's preliminary examination testimony "fall[s] somewhere on the constitutional spectrum between *Richardson* and *Gray*." *Id.* Indeed, the fact that the parties stipulated to using pronouns such as "we" and "they" would appear to remove the instant case from the purview of *Bruton* altogether, under the Ninth Circuit's holding in *Barrera-Medina*.

In any event, for purposes of the instant claim, the Court must—pursuant to AEDPA— simply determine whether the California Supreme Court's decision was contrary to or an unreasonable application of clearly established federal law. The California Supreme Court's decision was certainly not contrary to clearly established federal law. The California Supreme Court did not arrive "at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law," nor did the California Supreme Court decide the case differently from a prior U.S. Supreme Court case based on "a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. Likewise, the California Supreme Court's decision was not an unreasonable application of clearly established federal law. As the U.S. Supreme Court has explained, a state court's determination that a claim lacks merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness." *Richter*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. at 664). Here, given the various U.S. Supreme Court holdings in *Gray*, *Richardson*, and *Lilly*, as well as the Ninth Circuit's decisions in *Barrera-Medina* and *Hayes*, it is clear that "fairminded jurists could disagree" on whether the California Supreme Court properly denied relief on the instant claim. Accordingly, the Court finds habeas relief under 28 U.S.C. § 2254(d)(1) unwarranted as to Johnson's redacted preliminary examination testimony.

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

1    Accordingly, Respondent's motion for summary judgment as to claim 11 is GRANTED.[8]

2    **F.  Claim 12**

3    Next, Petitioner argues that "[t]he evidence . . . was insufficient as a matter of law to

4    support either a first degree murder conviction or the special circumstance finding of a murder for

5    financial gain." Habeas Pet. at 175.  Specifically, Petitioner contends that "[a] review of the

6    State's evidence after the improperly admitted and inherently unreliable testimony of Armond

7    Jack, David Willis, Zane Sinnott, and Gail Johnson is removed leaves insufficient evidence to

8    support either the first degree murder conviction or the special circumstance [finding]." *Id.* at 177

9    (footnote omitted).

10   This claim lacks merit.  As discussed above, Petitioner's attempts to exclude the testimony

11   of Jack, Willis, Sinnott, and Johnson are unavailing.  Taken together, the testimony of these

12   witnesses all implicate Petitioner's role in the murder of Carlene and support a special

13   circumstance finding that Carlene's murder was for financial gain.  In addition, ample physical

14   evidence connected Petitioner to Carlene's murder.  Petitioner gave Carlene's watch and ring to

15   Petitioner's girlfriend.  Petitioner was in possession of Carlene's vehicle, and Petitioner was

16   spotted with the knife used to kill Carlene.  Thus, witness testimony and physical evidence

17   provided the jury with sufficient evidence to convict Petitioner of first degree murder with a

18   special circumstance finding of murder for financial gain.

19   Accordingly, Respondent's motion for summary judgment as to claim 12 is GRANTED.

20   **G.  Claim 13**

21   Finally, Petitioner claims that the state trial court "erred by not instructing the jury *sua*

22   *sponte* that evidence of Petitioner's substance abuse disorder could be considered in deciding

23   whether he deliberated and premeditated the murder of Carlene McDonald, and that such evidence

24

25   _____

26   [8] As to 28 U.S.C. § 2254(d)(2), Petitioner's opposition focuses on a single factual determination
     made by the California Supreme Court: whether Petitioner properly objected "to the admission of
     the incriminating statements" at trial. Opp'n at 61. Whether Petitioner properly objected,

27   however, addresses only whether Petitioner's claim is procedurally defaulted.  The Court need not
     reach the issue of procedural default because Petitioner's claim fails on the merits.

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

United States District Court
Northern District of California

1   could also be weighed in mitigation." *Id.* at 182.  Although Petitioner's amended habeas petition

2   does not specify a particular jury instruction that the state trial court should have given,

3   Petitioner's opposition refers to California Criminal Jury Instruction 3.32.  This instruction reads:

4       You have received evidence regarding a [mental disease] [mental defect] [or]
        [mental disorder] of the defendant (insert name of defendant if more than one) at
5       the time of the commission of the crime charged [namely, ] [in Count[s] ][.] [or a
        lesser crime thereto, namely ].  You should consider this evidence solely for the
6       purpose of determining whether the defendant (insert name of defendant if more
        than one) actually formed [the required specific intent,] [premeditated,
7       deliberated] [or] [harbored malice aforethought] which is an element of the crime
8       charged [in Count[s] ], namely, [.] [or the lesser crime[s] of ].

9   Cal. Jury Instr. Crim. 3.32.

10      At trial, Petitioner relied upon the testimony of Dr. Fred Rosenthal, a psychiatrist, to

11  establish that Petitioner suffered from "psychoactive substance abuse disorder."  Habeas Pet. at

12  183.  Rosenthal stated that Petitioner was likely addicted to cocaine.  As a result of Petitioner's

13  addiction, Rosenthal opined that Petitioner "likely did not appreciate the seriousness and finality

14  of killing someone for money."  *Id.* at 186.  Petitioner's trial counsel went on to refer to

15  Rosenthal's testimony several times throughout trial.  In particular, at closing argument,

16  Petitioner's trial counsel emphasized the difference between first and second degree murder, and

17  stated that "[Petitioner's] drug usage was such that he could not . . . [at the time of the murder]

18  arrive at and determine as a result of careful thought . . . the pros and cons of doing that act."  *Id.*

19      The prosecution disagreed with Petitioner's conclusions.  During closing argument, the

20  prosecution argued that Carlene's murder had been deliberate, intentional, and premeditated.  *See,*

21  *e.g.*, ECF No. 277-1 ("Trial Tr.") at 11274.  As to Rosenthal's testimony, the prosecution stated as

22  follows: "basically, what [Rosenthal] told us was that [Petitioner] liked cocaine, craved it, and

23  thought about ways to get money for it."  *Id.* at 11273.  Such motivations, the prosecution argued,

24  were insufficient to negate a finding of deliberation, intent, and premeditation.  *Id.*

25      Following closing argument, the state trial court "instruct[ed] the jury on the various

26  mental states and specific intents required to establish the various crimes charged, including

27

28
    27

premeditation and deliberation." 990 P.2d at 528.  The state trial court further explained that, "if defendant was intoxicated by liquor or drugs at the time of the crime, the jury could consider that fact in determining whether he had the requisite specific intent or mental state, and that if the jury had a reasonable doubt on the matter, it had to find defendant did not have that intent or mental state." *Id.* Petitioner did not request, and the state trial court did not provide, California Criminal Jury Instruction 3.32.

To summarize, Petitioner's trial counsel was allowed to present evidence of Petitioner's alleged psychoactive disorder, the prosecution was allowed to challenge the weight of this evidence, and the jury was instructed about the importance of mental states and the impact that drugs might have upon one's mental state.  Based on these facts, the California Supreme Court determined that the state trial court was under no obligation to provide California Jury Instruction 3.32, an instruction which Petitioner's trial counsel did not even request.  990 P.2d at 529–30.

The California Supreme Court's decision was neither contrary to nor an unreasonable application of clearly established federal law.  Indeed, although Petitioner cites a number of U.S. Supreme Court decisions in Petitioner's opposition, none of these decisions addresses whether a state trial court should have provided a jury instruction *sua sponte*.

In *Penry v. Lynaugh*, 492 U.S. 302 (1989), *abrogated by Atkins v. Virginia*, 536 U.S. 304 (2002), for instance, defense counsel objected to several jury instructions given during the penalty phase of defendant's trial.  Specifically, counsel's objections addressed whether the jury could consider evidence of defendant's mental retardation in assessing whether to impose the death penalty.  *Id.* at 320.  In support of these objections, defense counsel relied upon a number of prior U.S. Supreme Court decisions that allowed juries to consider similar mitigating evidence.  The state trial court overruled defense counsel's objections.  On appeal, the U.S. Supreme Court reversed, and held that, "in the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence of Penry's mental retardation and abused background by declining to impose the death penalty," the jury "was not provided with a vehicle for expressing its 'reasoned moral response' to that evidence in rendering its sentencing decision." *Id.* at 328.

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13

1    In sum, defense counsel in *Penry* requested a specific jury instruction, which the state trial

2    court declined to provide.  Moreover, defense counsel requested this jury instruction only as to the

3    penalty phase of defendant's trial, after the jury had already found defendant guilty of capital

4    murder.  *Id.* at 310.  Defense counsel's request was supported by U.S. Supreme Court precedent

5    that specifically allowed defense counsel to present mitigating evidence related to an individual's

6    mental retardation.  All of these circumstances distinguish *Penry* from the instant case.

7    Here, Petitioner's trial counsel never requested the jury instruction at issue.  In addition,

8    this jury instruction would have been given during the guilt phase of Petitioner's trial, not (as in

9    *Penry*) during the penalty phase, after guilt had already been established.  Third, unlike in *Penry*,

10   the state trial court here did provide several relevant jury instructions regarding the mental state

11   necessary to convict Petitioner of first degree murder.  The state trial court also allowed

12   Petitioner's trial counsel to present Rosenthal's observations to the jury and allowed Petitioner's

13   trial counsel to refer to Rosenthal's testimony throughout the trial.  Finally, Petitioner has cited no

14   authority—and the Court has found none—that would have required the state trial court to provide

15   California Criminal Jury Instruction 3.32, a jury instruction which Petitioner did not even request.

16   Petitioner's reliance on *Cool v. United States*, 409 U.S. 100 (1972), is similarly unavailing.

17   In *Cool*, the trial court erroneously instructed the jury on how to weigh certain evidence.  *See id.* at

18   104 ("But there is an essential difference between instructing a jury on the care with which it

19   should scrutinize certain evidence in determining how much weight to accord it and instructing a

20   jury, as the judge did here, that as a predicate to the consideration of certain evidence, it must find

21   it true beyond a reasonable doubt.").  This error effectively prevented defendant in *Cool* from

22   pursuing an essential defense.  The trial court committed no such error here.  Instead, the trial

23   court simply chose not to provide a jury instruction that was, in fact, not even requested.

24   Petitioner has failed to identify any aspect of *Cool* that addresses—much less compels—state trial

25   courts to provide jury instructions *sua sponte*.

26   Petitioner also cites *Davis v. Alaska*, 415 U.S. 308 (1974), *In re Winship*, 397 U.S. 358

27   (1970), and *Crane v. Kentucky*, 476 U.S. 683 (1986), but none of these decisions address the issue

28

United States District Court
Northern District of California

29

of jury instructions.  In *Davis*, the U.S. Supreme Court reversed the federal district court's decision to prevent defense counsel from pursuing an entire line of questioning on cross-examination.  415 U.S. at 317.  In *In re Winship*, the U.S. Supreme Court held that, in a criminal proceeding, the prosecution must prove each essential element of an offense beyond a reasonable doubt.  397 U.S. at 368.  In *Crane*, the U.S. Supreme Court reversed the state trial court's decision to exclude "testimony about the physical and psychological environment in which [a] confession was obtained."  476 U.S. at 684.  *Davis*, *Winship*, and *Crane* do not support Petitioner's argument that the state trial court should have provided a jury instruction *sua sponte*.  If anything, the common thread linking these three cases together is that a defendant must be given a full opportunity "to present a complete and meaningful defense."  Opp'n at 65.  Petitioner was given such an opportunity here: Petitioner called Rosenthal to the stand, elicited favorable testimony from Rosenthal, and went on to discuss Rosenthal's testimony several times throughout trial.

As a final matter, habeas relief under 28 U.S.C. § 2254(d)(2) is also unwarranted.  The recitation of the facts in Petitioner's habeas petition is consistent with the facts recited by the California Supreme Court, and the California Supreme Court did not make an unreasonable determination of the facts.

Accordingly, Respondent's motion for summary judgment as to claim 13 is GRANTED.

## IV.    CONCLUSION

For the foregoing reasons, Respondent's motion for summary judgment as to claims 7, 8, 9, 10, 11, 12 and 13 is GRANTED.  Petitioner's request for an evidentiary hearing as to claims 7, 8, 9, and 10 are DENIED.

**IT IS SO ORDERED.**

Dated: March 29, 2016

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7–13