UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CURTIS LEE ERVIN,

          Petitioner,

    v.

RON DAVIS, Warden, California State Prison at San Quentin,

          Respondent.

Case  No. 00-CV-01228-LHK

**ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36**

Re: Dkt. No. 213

In 1991, Petitioner Curtis Lee Ervin ("Petitioner") was convicted of the murder of Carlene McDonald and sentenced to death.  On September 7, 2007, Petitioner filed an amended petition for a writ of habeas corpus before this Court, which included 37 claims in total.  ECF No. 97 ("Pet.").  Before the Court is Respondent's motion for summary judgment as to all 37 claims in Petitioner's amended habeas petition.  ECF No. 213 ("Mot.").  Petitioner opposes Respondent's motion and requests an evidentiary hearing on 15 of Petitioner's 37 claims.

This Order addresses claims 21, 35, and 36 in Petitioner's amended habeas petition. Petitioner does not request an evidentiary hearing on these claims.  For the reasons discussed below, Respondent's motion for summary judgment as to claims 21, 35, and 36 is GRANTED.

## I.        BACKGROUND

### A. Factual Background[1]

On February 21, 1991, a jury convicted Petitioner of first degree murder with the special circumstance finding of murder for financial gain. Evidence presented at Petitioner's trial established that Robert McDonald ("McDonald"), the former spouse of Carlene McDonald ("Carlene"), had hired Petitioner and Arestes Robinson ("Robinson"), to kill Carlene for $2,500.

At trial, Armond Jack ("Jack") testified that he had driven with Petitioner to meet McDonald to negotiate the price for killing Carlene. Jack also testified that he had driven Petitioner and Robinson to Carlene's apartment on November 7, 1986, the night of the murder. While Petitioner, Robinson, and Jack were driving to Carlene's apartment, Petitioner asked for and received a knife from Robinson. With the assistance of a BB gun, Petitioner and Robinson kidnapped Carlene, and used Carlene's vehicle to take Carlene to Tilden Park, where Petitioner stabbed Carlene to death with Robinson's assistance. A patrol officer found Carlene's body the following afternoon.

Petitioner and Robinson met with McDonald the day after Carlene's murder and presented McDonald with Carlene's driver's license as proof of the murder. McDonald paid Petitioner $2,500, which Petitioner shared with Robinson and others to purchase cocaine. A few weeks after Carlene's murder, McDonald paid Petitioner an additional $1,700. Sharon Williams ("Williams"), Petitioner's girlfriend, testified that Petitioner gave her a watch and ring later identified as belonging to Carlene.

In addition to the physical evidence linking Petitioner to Carlene's murder, Petitioner also admitted various incriminating aspects of the crime to David Willis ("Willis"), Zane Sinnott ("Sinnott"), and the investigating police officer, Sergeant Dana Weaver ("Weaver"). According to these witnesses, Petitioner admitted that he and Robinson had confronted Carlene, had pointed the BB gun at her, had forced her into her car, and had driven her to Tilden Park. Petitioner further

---

[1] The following facts are drawn from the California Supreme Court's opinion on Petitioner's direct appeal. *People v. Ervin*, 990 P.2d 506, 513–14 (Cal. 2000); *cf. Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

United States District Court
Northern District of California

admitted to stabbing Carlene to death at Tilden Park while Robinson held her.  The prosecution also introduced testimony from Robinson's girlfriend, Gail Johnson ("Johnson"), who stated that Robinson had admitted to participating in Carlene's murder.

Robinson, McDonald, and Petitioner were tried together.  Petitioner made no claims of innocence, but sought to impeach the testimony of prosecution witnesses Jack, Sinnott, and Willis.  In addition, Dr. Fred Rosenthal ("Rosenthal"), a psychiatrist, testified that Petitioner's cocaine addiction might have impaired Petitioner's thought process and that Petitioner thus did not appreciate the seriousness and finality of killing someone for money.  The jury found Petitioner's defenses unavailing and convicted Petitioner of first degree murder.  During the penalty phase of Petitioner's trial, the prosecution introduced evidence of a prior bank robbery conviction and some jail disciplinary problems.  Petitioner introduced mitigating evidence regarding his character, employment, family, drug use, religious involvement, and musical skills.  McDonald and Robinson also introduced mitigating evidence.  The jury returned death verdicts for Petitioner and McDonald, but chose life imprisonment without parole for Robinson.

### B.  Procedural History

On January 6, 2000, the California Supreme Court affirmed Petitioner's conviction and sentence on direct appeal.  *People v. Ervin*, 990 P.2d 506, 537 (Cal. 2000).  The United States Supreme Court denied certiorari on October 2, 2000.  *Ervin v. California*, 531 U.S. 842 (2000).  On November 12, 2002, Petitioner filed a federal habeas petition before this Court.  ECF No. 32.  On January 22, 2003, Petitioner filed a corrected federal habeas petition.  ECF No. 45.  That same day, the Court stayed all federal habeas proceedings so that Petitioner could exhaust his claims in state court.  Petitioner filed a state habeas petition on October 1, 2003, and on December 14, 2005, the California Supreme Court denied Petitioner's state habeas petition.

Following the California Supreme Court's decision, Petitioner filed an amended federal habeas petition on September 7, 2007.  ECF No. 97.  Respondent filed a response on March 7, 2008, ECF No. 110, and Petitioner filed a traverse on November 13, 2008.  ECF No. 133.

On February 14, 2012, Respondent filed the instant motion for summary judgment.  On

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

1    January 8, 2013, Petitioner filed an opposition and a request for an evidentiary hearing.  ECF No.

2    249 ("Opp'n").  Respondent filed a reply on May 10, 2013, which included an opposition to

3    Petitioner's request for an evidentiary hearing. ECF No. 259 ("Resp. Reply").  On August 16,

4    2013, Petitioner filed a reply to Respondent's opposition to Petitioner's request for an evidentiary

5    hearing.  ECF No. 266 ("Pet. Reply").  Petitioner's reply specified that Petitioner sought an

6    evidentiary hearing on claims 7–10, 20, 26–29, and 32–34.  *Id.* at 5.

7         On January 7, 2015, the instant action was reassigned from U.S. District Judge Claudia

8    Wilken to the undersigned judge.  ECF No. 268.  On March 16, 2015, the Court stayed

9    Petitioner's penalty phase claims pending the Ninth Circuit's decision of an appeal filed in *Jones*

10   *v. Chappell*, 31 F. Supp. 3d 1050 (C.D. Cal. 2014).   ECF No. 269.  The Ninth Circuit decided

11   *Jones* on November 12, 2015, and determined that the district court had erred in finding

12   California's post-conviction system of review in violation of the Eighth Amendment.  *Jones v.*

13   *Davis*, 806 F.3d 538 (9th Cir. 2015).  In the wake of the Ninth Circuit's decision in *Jones*, all of

14   Petitioner's claims are now ripe for review.

15        On December 11, 2015, this Court issued an order granting Respondent's motion for

16   summary judgment as to claims 1–5.  ECF No. 271.  On March 28, 2016, this Court issued an

17   order granting Respondent's motion for summary judgment as to claims 14–15 and 17–18.  ECF

18   No. 281.  On March 29, 2016, this Court issued an order granting Respondent's motion for

19   summary judgment as to claims 7–13.  ECF No. 282.  Petitioner's remaining claims shall be

20   addressed in subsequent Orders.

21   **II.     LEGAL STANDARD**

22        **A.   Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2254(d))**

23        Because Petitioner filed his original federal habeas petition in 2002, the Anti-Terrorism

24   and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action.  *See Woodford*

25   *v. Garceau*, 538 U.S. 202, 210 (2003) (holding that AEDPA applies whenever a federal habeas

26   petition is filed after April 24, 1996).  Pursuant to AEDPA, a federal court may grant habeas relief

27   on a claim adjudicated on the merits in state court only if the state court's adjudication "(1)

28
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

*United States District Court*
*Northern District of California*

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d).

### 1. Contrary To or Unreasonable Application of Clearly Established Federal Law

As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs

have separate and distinct meanings.  *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section

2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas

relief with respect to a claim adjudicated on the merits in state court.").  A state court's decision is

"contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to

that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case

differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts."  *Id.* at

412–13.  A state court's decision is an "unreasonable application" of clearly established federal

law if "the state court identifies the correct governing legal principle . . . but unreasonably applies

that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A]n *unreasonable* application of

federal law is different from an *incorrect* application of federal law."  *Harrington v. Richter*, 562

U.S. 86, 101 (2011).  A state court's determination that a claim lacks merit is not unreasonable "so

long as 'fairminded jurists could disagree' on [its] correctness."  *Id.* (quoting *Yarborough v.

Alvarado*, 541 U.S. 652, 664 (2004)).

Holdings of the U.S. Supreme Court at the time of the state court decision are the sole

determinant of clearly established federal law.  *Williams*, 529 U.S. at 412.  Although a district

court may "look to circuit precedent to ascertain whether [the circuit] has already held that the

particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*,

133 S. Ct. 1446, 1450 (2013) (per curiam), "[c]ircuit precedent cannot refine or sharpen a general

principle of [U.S.] Supreme Court jurisprudence into a specific legal rule," *Lopez v. Smith*, 135 S.

Ct. 1, 4 (2014) (per curiam) (internal quotation marks omitted).

### 2. Unreasonable Determination of the Facts

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

1    In order to find that a state court's decision was based on "an unreasonable determination

2  of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel,

3  applying the normal standards of appellate review, could not reasonably conclude that the finding

4  is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir.

5  2014) (internal quotation marks omitted).  "[A] state-court factual determination is not

6  unreasonable merely because the federal habeas court would have reached a different conclusion

7  in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  That said, "where the state courts

8  plainly misapprehend or misstate the record in making their findings, and the misapprehension

9  goes to a material factual issue that is central to petitioner's claim, that misapprehension can

10  fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable."

11  *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

12    In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or §

13  2254(d)(2), a federal court's review "is limited to the record that was before the state court that

14  adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  In the event

15  that a federal court "determine[s], considering only the evidence before the state court, that the

16  adjudication of a claim on the merits resulted in a decision contrary to or involving an

17  unreasonable application of clearly established federal law, or that the state court's decision was

18  based on an unreasonable determination of the facts," the federal court evaluates the petitioner's

19  claim *de novo*.  *Hurles*, 752 F.3d at 778.  If error is found, habeas relief is warranted if that error

20  "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.

21  Abrahamson*, 507 U.S. 619, 638 (1993).  Petitioners "are not entitled to habeas relief based on trial

22  error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637 (quoting *United

23  States v. Lane*, 474 U.S. 438, 449 (1986)).

24    **B.  Summary Judgment**

25    Summary judgment is appropriate if, when viewing the evidence and drawing all

26  reasonable inferences in the light most favorable to the nonmoving party, there are no genuine

27  issues of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Whereas the party opposing summary judgment will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250.

## III.   DISCUSSION

### A.  Claim 21

Petitioner contends that California's death penalty statute (1) contains "unconstitutionally broad special circumstances" and "unconstitutionally vague aggravating circumstances," (2) fails "to require the jury to make written findings," (3) fails "to require that all aggravating factors be prove[n] beyond a reasonable doubt," and (4) provides "unbounded discretion" to prosecutors. Pet. at 251–62.  These arguments were rejected by the California Supreme Court on direct appeal. *Ervin*, 990 P.2d at 536 ("We have repeatedly and recently rejected all these constitutional arguments.").  As discussed below, the California Supreme Court's decision was neither contrary to nor an unreasonable application of clearly established federal law.

### 1.  Vagueness of Special and Aggravating Circumstance Factors

First, with regard to Petitioner's arguments on the alleged vagueness of California's death penalty statute, the Court finds instructive the U.S. Supreme Court's decision in *Tuilaepa v. California*, 512 U.S. 967 (1994).

1      As the *Tuilaepa* Court outlined, "[i]n California, to sentence a defendant to death for first-

2  degree murder[,] the trier of fact must [first] find the defendant guilty and also find one or more of

3  [the] special circumstances listed in Cal. Penal Code § 190.2." *Id.* at 969 (citation omitted).

4  Specifically, Cal. Penal Code § 190.2 provides as follows:

5      (a) The penalty for a defendant who is found guilty of murder in the first degree is
6      death or imprisonment in the state prison for life without the possibility of parole
       if one or more of the following special circumstances has been found under
7      Section 190.4 to be true:
           (1) The murder was intentional and carried out for financial gain.
8

9                                          * * *

10      (17)  The murder was committed while the defendant was engaged in, or
        was an accomplice in, the commission of, attempted commission of, or the
11      immediate flight after committing, or attempting to commit, the following
        felonies:
12           (A) Robbery in violation of Section 211 or 212.5.
             (B) Kidnapping in violation of Section 207, 209, or 209.5.
13           (C) Rape in violation of Section 261.
             (D) Sodomy in violation of Section 286.
14           (E) The performance of a lewd or lascivious act upon the person of
             a child under the age of 14 years in violation of Section 288.
15           (F) Oral copulation in violation of Section 288a.
             (G) Burglary in the first or second degree in violation of Section
16           460.
             (H) Arson in violation of subdivision (b) of Section 451.
17           (I) Train wrecking in violation of Section 219.
             (J) Mayhem in violation of Section 203.
18           (K) Rape by instrument in violation of Section 289.
             (L) Carjacking, as defined in Section 215.
19           (M)  To prove  the  special  circumstances  of  kidnapping  in
20           subparagraph (B), or arson in subparagraph (H), if there is specific
             intent to kill, it is only required that there be proof of the elements
21           of those felonies. If so established, those two special circumstances
             are proven even if the felony of kidnapping or arson is committed
22           primarily or solely for the purpose of facilitating the murder.
23

24  Cal. Penal Code § 190.2.  In total, § 190.2 provides twenty-two special circumstances.

25      Per *Tuilaepa*, a § 190.2 special circumstance must meet two basic requirements.  *Id.* at

26  972.  "First, the circumstance may not apply to every defendant convicted of a murder; it must

27  apply only to a subclass of defendants convicted of murder." *Id.* "Second, the . . . circumstance

28

8

may not be unconstitutionally vague." *Id.*  After a jury finds the defendant guilty and finds that one of the special circumstances listed in § 190.2 applies, the defendant then becomes eligible for the death penalty.  For this reason, the U.S. Supreme Court has referred to the § 190.2 factors as "eligibility" or "special circumstance" factors.  *See Brown v. Sanders*, 546 U.S. 212, 216 n.2 (2006).

Once the jury makes a special circumstance finding under § 190.2, "the case then proceeds to the penalty phase, where the trier of fact must consider a number of specified factors [listed in Cal. Penal Code § 190.3] in deciding whether to sentence the defendant to death."  512 U.S. at 969 (citation omitted).  In total, there are eleven factors listed in § 190.3.  For example, the § 190.3 factors include:

> (a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1 [which refers to the § 190.2 special circumstances].

> (b) The presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence.

* * *

> (i) The age of the defendant at the time of the crime.

Cal. Penal Code § 190.3.  The eleven § 190.3 factors have been referred to as "selection" or "aggravating circumstance" factors.  *Brown*, 546 U.S. at 216 n.2.

"[I]n determining [whether or not to impose] the [death] penalty, the trier of fact" may consider and weigh any of these eleven "selection" or "aggravating circumstance" factors as long as they are relevant.  Cal. Penal Code § 190.3.  "What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime."  512 U.S. at 972.  "That requirement is met when the jury can consider relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime."  *Id.*  "The selection decision . . . requires individualized sentencing and must be expansive enough to accommodate relevant mitigating evidence so as to assure an assessment of the

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

United States District Court
Northern District of California

defendant's culpability." *Id.* at 973.  "Because the proper degree of definition [for] eligibility and selection factors often is not susceptible [to] mathematical precision," a court's "vagueness review [should be] quite deferential." *Id.* (internal quotation marks omitted).

Petitioner asserts various challenges to both §§ 190.2 and 190.3.  The Court addresses these contentions in turn.

### a.  § 190.2

As to § 190.2, Petitioner contends that "the felony-murder special circumstance found in this case (§ 190.2, subd. (a)(17)) is unconstitutional because it is too broad to adequately isolate those felony-murders which warrant the death penalty from those which do not." Pet. at 259. Petitioner, however, was not convicted of felony murder, and there was no felony murder special circumstance finding.  Rather, Petitioner was convicted of first degree murder accompanied by a special circumstance finding that he committed the murder for financial gain.  *Ervin*, 990 P.2d at 513.  As noted above, § 190.2 includes 22 special circumstances, and the felony murder special circumstance—located in § 190.2(a)(17)—is an altogether different provision from the financial gain special circumstance—located in § 190.2(a)(1).  Cal. Penal Code § 190.2.  Petitioner's challenge to the felony murder special circumstance is therefore irrelevant.

Petitioner also challenges the constitutionality of § 190.2 by arguing that California's death penalty scheme fails to adequately narrow the class of death-eligible individuals.  Drawing upon data compiled by Dr. Steven Schatz ("Schatz"), Petitioner states that "at least 84% of first degree murders were special circumstances murders" in 1987.  Pet. at 252.  However, only "10% of convicted first degree murders were sentenced to death." *Id.*  "As a result, only 12% of the statutorily death eligible class of first degree murderers were in fact being sentenced to death." *Id.* at 253.  Thus, according to Petitioner, California's death penalty scheme "fails to adequately narrow the class of individuals eligible for the death penalty" and creates "across-the-board eligibility for the death penalty." *Id.* at 251, 253.

The Ninth Circuit considered and rejected a substantially similar "failure to narrow" claim in *Karis v. Calderon*, 283 F.3d 1117, 1141 n.11 (9th Cir. 2002).  As the *Karis* court observed,

10

1   "[t]he California [death penalty] statute satisfies the narrowing requirement set forth by [the U.S.

2   Supreme Court.]"  *Id.*  "The special circumstances in California apply to a subclass of defendants

3   convicted of murder and are not unconstitutionally vague. . . .  California has identified a subclass

4   of defendants deserving of death and by doing so, it has narrowed in a meaningful way the

5   category of defendants upon whom capital punishment may be imposed."  *Id.* (internal quotation

6   marks omitted).

7          Likewise, in *Mayfield v. Woodford*, 270 F.3d 915, 924 (9th Cir. 2001), the Ninth Circuit

8   denied a certificate of appealability on a "failure to narrow" argument.  As the court noted, "[a]

9   defendant is eligible for the death penalty under the 1978 statute [as enacted in Cal. Penal Code §

10   190.2] only if, at the guilt phase, the jury finds him guilty of first degree murder and finds to be

11   true a statutorily defined special circumstance."  *Id.*  That finding narrows the total set of

12   murderers to a more limited set of defendants eligible for the death penalty.  "At the penalty phase,

13   the class of defendants eligible for death is again narrowed by the jury's application of a series of

14   statutorily enumerated aggravating or mitigating factors," which are listed in Cal. Penal Code §

15   190.3.  *Id.*  Thus, a "reasonable jurist could not debate . . . that the 1978 California [death penalty]

16   statute, which narrowed the class of death-eligible defendants at both the guilt and penalty phases,

17   was constitutional."  *Id.*

18          Furthermore, several district courts have specifically rejected "failure to narrow"

19   arguments that draw upon Schatz's analysis of criminal convictions from 1987.  In *Ayala v. Wong*,

20   2009 WL 1357416, *6 (S.D. Cal. May 13, 2009), for instance, the district court acknowledged that

21   petitioner had "presented his [failure to narrow] argument to the Court accompanied by the

22   declaration of Professor Steven F. Schatz."  The *Ayala* court found this argument unavailing and

23   explained that "[section] 190.2[] performs a genuine narrowing function and thus fulfills the

24   constitutional requirement imposed by [the U.S. Supreme Court] to distinguish between those

25   murderers who are and are not eligible for the death penalty."  *Id.* at *7; *see also Hawkins v.*

26   *Wong*, 2013 WL 3422701, *3 (E.D. Cal. July 8, 2013) ("The supplemental evidence [based on

27   Schatz's data] does not provide a basis for deviating from the magistrate judge's

United States District Court
Northern District of California

28

11

United States District Court
Northern District of California

1  recommendation[]" to deny habeas relief).  Taken together, these cases—*Karis*, *Mayfield*, *Ayala*,

2  and *Hawkins*—demonstrate that Petitioner's arguments regarding § 190.2's constitutionality are

3  not well taken.

4          **b.  § 190.3**

5          The Court turns next to Petitioner's arguments regarding the "selection" or "aggravating

6  circumstance" factors of § 190.3.  In particular, under § 190.3(a), "the trier of fact shall take into

7  account . . . [t]he circumstances of the crime of which the defendant was convicted in the present

8  proceeding."  Cal. Penal Code § 190.3(a).  Petitioner argues that § 190.3(a) is unconstitutionally

9  vague because a jury may, under this subsection, weigh "every conceivable circumstance of the

10  crime."  Pet at 254.  Prosecutors, for instance, have allegedly relied upon § 190.3(a) in "starkly

11  opposite circumstances": to advocate for the death penalty where "the defendant struck many

12  blows and inflicted multiple wounds," and to request the death penalty where "the defendant killed

13  with a single execution style-would."  *Id.* at 254–55; *see also id.* at 255–59 (citing other

14  examples).  Thus, § 190.3(a) "has been used in ways so arbitrary and contradictory as to violate

15  the federal and state guarantees of due process."  *Id.* at 254.

16          In *Tuilaepa*, the U.S. Supreme Court considered and rejected a nearly identical § 190.3(a)

17  challenge.  As the *Tuilaepa* Court explained, "[p]etitioners' challenge to factor (a) is at some odds

18  with [our] settled principles, for our capital jurisprudence has established that the sentencer should

19  consider the circumstances of the crime in deciding whether to impose the death penalty."  512

20  U.S. at 976.  "We would be hard pressed to invalidate a jury instruction that implements what we

21  have said the law requires."  *Id.*  The purpose of § 190.3(a) is to provide the jury with discretion to

22  consider the specific context behind a particular case when making its sentencing decision.  That

23  discretion results in sentencing decisions that are necessarily individualized: "[o]nce the jury finds

24  that the defendant falls within the legislatively defined category of persons eligible for the death

25  penalty, the jury then is free to consider a myriad of factors to determine whether death is the

26  appropriate punishment."  *Id.* at 979 (ellipses omitted).  Thus, the *Tuilaepa* Court held that §

27  190.3(a) "instructs the jury to consider a relevant subject matter and does so in understandable

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

terms.  The circumstances of the crime are a traditional subject for consideration by the sentencer, and an instruction to consider the circumstances is neither vague nor otherwise improper under [the] Eighth Amendment."  *Id*. at 976.

Petitioner has not cited any U.S. Supreme Court authority to suggest that *Tuilaepa* is no longer good law.  In fact, the only decision upon which Petitioner relies is *Maynard v. Cartwright*, 486 U.S. 356 (1988)—a case decided six years prior to *Tuilaepa*.  In *Maynard*, an Oklahoma death penalty case, the U.S. Supreme Court found an aggravating circumstance which required a jury to find a murder to be "especially heinous, atrocious, or cruel" to be unconstitutionally vague.  *Id.* at 359.

The U.S. Supreme Court, however, specifically distinguished *Maynard* in *Tuilaepa*: "In our decisions holding a death sentence unconstitutional because of a vague sentencing factor, the State had presented a specific proposition that the sentencer had to find true or false (*e.g.*, whether the crime was especially heinous, atrocious, or cruel)."  *Tuilaepa*, 512 U.S. at 974.  "We have held, under certain sentencing schemes, that [such] a vague propositional factor used in the sentencing decision creates an unacceptable risk of randomness, the mark of [an] arbitrary and capricious sentencing process."  *Id.*  Those concerns, however, "are mitigated when a factor does not require a yes or a no answer to a specific question, but instead only points the sentencer to a subject matter."  *Id.* at 975.  As the *Tuilaepa* Court went on to point out, § 190.3 does not require the jury to provide a yes or no answer.  Instead, § 190.3 directs the jury to consider the subject matter and circumstances behind the crime at issue, and is thus not void for vagueness.

Petitioner's reliance upon *Maynard* is therefore unavailing.  Consistent with *Tuilaepa*, the Court finds Petitioner's vagueness arguments as to § 190.3 to be without merit.

### 2.  Failure to Require Jury to Make Written Findings

Next, Petitioner argues that California's death penalty statute is unconstitutional because it does not "require the jury to make written findings or any record of the grounds for its decision to impose death."  Pet. at 261.

Although the U.S. Supreme Court has not yet addressed this issue, both the Ninth Circuit

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

1    and California Supreme Court have held that a jury is not constitutionally required to make written

2    findings on the record as to a defendant's special or aggravating circumstances.  *See People v.*

3    *Montiel*, 855 P.2d 1277, 1315–16 (Cal. 1993) ("There is no constitutional requirement of findings,

4    let alone unanimous or written findings, that every aggravating factor weighed by the jury was true

5    beyond a reasonable doubt, that specific aggravating factors were dispositive, that aggravation

6    outweighed mitigation beyond a reasonable doubt, or that death is the appropriate penalty beyond

7    a reasonable doubt."); *Williams v. Calderon*, 52 F.3d 1465, 1484–85 (9th Cir. 1995) ("The

8    [California death penalty] statute ensures meaningful appellate review, and need not require

9    written jury findings in order to be constitutional . . . .  [T]he failure of the statute to require a

10   specific finding that death is beyond a reasonable doubt the appropriate penalty does not render it

11   unconstitutional.") (citations omitted).

12        In the absence of any U.S. Supreme Court precedent holding to the contrary, the above

13   authority demonstrates that Petitioner's argument regarding the failure of the jury to make written

14   findings lacks merit.

15        **3.  Failure to Require Aggravating Factors be Proven Beyond a Reasonable Doubt**

16        Third, Petitioner contends that California's death penalty statute fails to "require that all

17   aggravating factors be prove[n] beyond a reasonable doubt, that aggravation be prove[n] to

18   outweigh mitigation beyond a reasonable doubt, and that death must be found to be the

19   appropriate penalty beyond a reasonable doubt."  Opp'n at 84.  This failure, Petitioner claims,

20   violates the Sixth, Eighth, and Fourteenth Amendments.  *Id.*

21        Both the Ninth Circuit and the California Supreme Court have rejected such arguments.

22   *See, e.g.*, *People v. Ray*, 914 P.2d 846, 874 (Cal. 1995) ("It is also settled that the [California death

23   penalty statute] provides adequate safeguards against arbitrary and unreliable death judgments

24   even though it does not require (1) written findings as to the aggravating factors supporting a

25   death judgment, (2) proof as to the existence of all such aggravating factors beyond a reasonable

26   doubt, (3) a finding that aggravation outweighs mitigation beyond a reasonable doubt, and (4) a

27   finding that death is the appropriate penalty beyond a reasonable doubt."); *Williams*, 52 F.3d at

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

United States District Court
Northern District of California

1   1485 ("[T]he failure of the [California death penalty] statute to require a specific finding that death

2   is beyond a reasonable doubt the appropriate penalty does not render it unconstitutional."); *Turner*

3   *v. Calderon*, 970 F. Supp. 781, 792 (E.D. Cal. 1997) ("The penalty phase process followed in

4   California is constitutionally sound even though it fails to require (1) written findings as to the

5   aggravating factors supporting a death judgment, (2) proof beyond a reasonable doubt of any such

6   aggravating factors, (3) jury unanimity on the dispositive aggravating factors, (4) a finding that

7   aggravating factors outweigh mitigating beyond a reasonable doubt, (5) a finding beyond a

8   reasonable doubt that death is the appropriate penalty, and (6) appellate proportionality review.").

9        Petitioner's briefing neither acknowledges nor attempts to distinguish *Ray*, *Williams*, or

10   *Turner*.  Instead, Petitioner cursorily cites, without analysis, the following cases: *Ford v.

11   Wainwright*, 477 U.S. 399 (1986); *Beck v. Alabama*, 447 U.S. 625 (1980); *In re Winship*, 397 U.S.

12   358 (1970); and *Santosky v. Kramer*, 455 U.S. 745 (1982).  As outlined below, these cases are not

13   relevant to the issue at hand.  These four cases do not concern California's death penalty statute,

14   much less whether clearly established federal law requires that California's aggravating factors be

15   proven beyond a reasonable doubt.

16        *Ford* involved a Florida petitioner, Alvin Ford ("Ford"), on death row who had shown no

17   signs of mental insanity at the time of the offense, at trial, or at sentencing.  477 U.S. at 401.  Ford,

18   however, began showing signs of mental insanity eight years after Ford's conviction.  Based on

19   his alleged mental insanity, Ford sought a stay of execution from the Florida governor under a

20   procedure that the U.S. Supreme Court described as being akin to a plea for "executive clemency."

21   *Id.* at 416.  This request was denied.  In light of these facts, the *Ford* Court held that "[t]he Eighth

22   Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is

23   insane."  477 U.S. at 410.  The *Ford* Court further held that Florida had failed to provide a

24   procedurally adequate process to determine Ford's mental insanity—the "executive clemency"

25   procedure provided under Florida law did not comport with constitutional due process.  Unlike

26   *Ford*, Petitioner in the instant case does not assert that he is mentally insane and does not

27   challenge the adequacy of California's process for determining whether a death row inmate is

28

United States District Court
Northern District of California

15

mentally insane.

In *Beck*, the U.S. Supreme Court observed that, under Alabama's death penalty statute, "the [trial] judge is specifically prohibited from giving the jury the option of convicting the defendant of a lesser included offense" should the jury decline to convict the defendant of a capital crime. 447 U.S. at 628. That rule, the *Beck* Court noted, was unique to Alabama: "Alabama's failure to afford capital defendants the protection provided by lesser included offense instructions is unique in American criminal law." *Id.* at 635. The *Beck* Court found Alabama's rule unconstitutional, and held that the death penalty may not be imposed in situations where "the jury [is] not permitted to consider a verdict of guilt of a lesser included non-capital offense, [even] when the evidence would have supported such a verdict." *Id.* at 627. *Beck* did not address the aggravating factors listed in California's death penalty statute, and Petitioner does not argue that he should have been convicted of a lesser included non-capital offense.

Next, in *In re Winship*, the U.S. Supreme Court also did not examine California's death penalty statute. Instead, the *In re Winship* Court stated that, "[l]est there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 365. The *In re Winship* Court then concluded that the reasonable doubt standard should apply at a juvenile's adjudicatory hearing "when a juvenile is charged with an act which would constitute a crime if committed by an adult." *Id.* at 359. Unlike *In re Winship*, the instant case does not involve a juvenile adjudicatory hearing. Moreover, the jury here did find beyond a reasonable doubt each fact necessary to constitute the crime with which Petitioner was charged: first degree murder with a special circumstance finding of murder for financial gain.

Finally, *Santosky* does not even address the rights of criminal defendants. It is a case involving the rights of parents and their minor children. In *Santosky*, the U.S. Supreme Court held that, "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

United States District Court
Northern District of California

1    evidence." 455 U.S. at 747–48.  This holding, which concerns the standard of proof necessary at

2    "parental rights termination proceedings," *id.* at 767, has no bearing on the instant case.

3        In sum, *Ford*, *Beck*, *In re Winship*, and *Santosky* are inapposite.  Petitioner's arguments

4    concerning the failure to prove aggravating factors beyond a reasonable doubt are thus unavailing.

5    The California Supreme Court properly denied relief as to this argument.

6        **4.  Prosecutorial Discretion**

7        Finally, Petitioner argues that, under California's death penalty statute, "a prosecutor has

8    complete discretion to determine (1) whether to charge a special circumstance in almost any

9    murder case and (2) whether to seek the death penalty in a case in which one or more special

10   circumstances are charged."  Opp'n at 84.

11       In support of this contention, Petitioner relies upon *Furman v. Georgia*, 408 U.S. 238

12   (1972) (per curiam), and *Woodson v. North Carolina*, 428 U.S. 280 (1976).  Petitioner's citation to

13   these cases is misguided.  In *Furman*, a majority of the U.S. Supreme Court held, in a one

14   paragraph per curiam decision, that the decision to impose the death penalty as to two defendants

15   in Georgia and one defendant in Texas was unconstitutional.  The *Furman* Court could not agree

16   on a single rationale for its holding: the decision resulted in five concurrences and four dissents

17   amongst the nine Justices.

18       Later, in *Woodson*, the U.S. Supreme Court clarified that "[c]entral to the limited holding

19   in *Furman* was the conviction that the vesting of standardless sentencing power in the jury

20   violated the Eighth and Fourteenth Amendments."  428 U.S. at 302.  The *Woodson* Court went on

21   to reject North Carolina's attempt to address the issue of jury discretion by establishing a

22   mandatory death penalty statute for first degree murder.  As the *Woodson* Court observed, "North

23   Carolina's mandatory death penalty statute [still] provides no standards to guide the jury in its

24   inevitable exercise of the power to determine which first-degree murderers shall live and which

25   shall die."  *Id.* at 303; *see also id.* at 302 (criticizing North Carolina statute for providing jurors

26   "unbridled" sentencing discretion).

27       Neither *Furman* nor *Woodson* addresses the issue of *prosecutorial* discretion.  Both cases

28
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

United States District Court
Northern District of California

were concerned with *jury* discretion.  Petitioner has identified no clearly established federal law to suggest that arguments concerning jury discretion should somehow apply with equal force to arguments regarding prosecutorial discretion.

Instead, state and federal courts have consistently rejected challenges to the prosecutorial discretion afforded under California's death penalty statute.  In *People v. Arias*, 913 P.2d 980, 1042 (Cal. 1996), for instance, defendant argued that California's death penalty scheme "violate[d] the Eighth Amendment's proscription against cruel and unusual punishment because it allows prosecutors 'standardless' discretion to decide when to seek the death penalty and thus leads to arbitrary and capricious imposition of the death penalty."  The California Supreme Court found this argument wanting: "Prosecutorial discretion to select those eligible cases in which the death penalty will actually be sought does not in and of itself evidence an arbitrary and capricious capital punishment system or offend principles of equal protection, due process, or cruel and/or unusual punishment."  *Id*.  Likewise, in *Bradway v. Tilton*, 2008 WL 447509, *11 (S.D. Cal. Feb. 15, 2009), the district court rejected a prosecutorial discretion argument and noted that, "where the facts support a special circumstance allegation [under § 190.2], the prosecutor has the discretion to seek the death penalty."

In sum, neither *Furman* nor *Woodson* govern the instant claim.  Both cases address jury discretion, not prosecutorial discretion.  On the issue of prosecutorial discretion, the U.S. Supreme Court has not specifically examined California's death penalty statute, but state and federal courts have consistently rejected the same arguments that Petitioner has asserted.  Thus, the California Supreme Court properly denied relief to Petitioner as to Petitioner's prosecutorial discretion argument.

Accordingly, for the reasons stated above, the Court finds that the California Supreme Court's decision on the arguments raised in Claim 21 was neither contrary to nor an unreasonable application of clearly established federal law.  Respondent's motion for summary judgment as to claim 21 is therefore GRANTED.

**B.  Claim 35**

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

United States District Court
Northern District of California

1            Next, Petitioner argues that "[t]he execution of Petitioner after [such a] lengthy

2    confinement under sentence of death would constitute cruel and unusual punishment in violation

3    of his constitutional rights."  Pet. at 399.  Petitioner presented this claim in his state habeas

4    petition, and the California Supreme Court denied Petitioner relief without an opinion.  ECF No.

5    278-11 at 2 ("The petition for writ of habeas corpus is denied . . .  All claims are denied on the

6    merits.").  Under *Harrington v. Richter*, the California Supreme Court's determination nonetheless

7    constitutes a merits adjudication that is subject to AEDPA deference.  562 U.S. at 98 ("Where a

8    state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still

9    must be met by showing there was no reasonable basis for the state court to deny relief.").

10           In *Allen v. Ornoski*, 435 F.3d 946, 958 (9th Cir. 2006), the Ninth Circuit rejected a similar

11   Eighth Amendment claim based on a petitioner's 23-year long confinement on death row.  As the

12   *Allen* court noted, "[t]he [U.S.] Supreme Court has never held that execution after a long tenure on

13   death row is cruel and unusual punishment."  *Id.*  The same year that *Allen* was decided, U.S.

14   Supreme Court Justice Clarence Thomas noted, in his concurrence in *Knight v. Florida*, 528 U.S.

15   990 (2006), that he was "unaware of any support in the American constitutional tradition or . . .

16   precedent for the proposition that a defendant can avail himself of the panoply of appellate and

17   collateral procedures and then complain when his execution is delayed."  *Id.* (Thomas, J.,

18   concurring).

19           Consistent with *Allen* and *Knight*, the Ninth Circuit recently rejected an unconstitutional

20   delay challenge in *Jones v. Davis*.  The *Jones* court, citing *Allen*, noted that "we previously ha[ve]

21   determined, in the context of AEDPA, that the Supreme Court has never held that execution after a

22   long tenure on death row is cruel and unusual punishment."  806 F.3d at 548 (internal quotation

23   marks omitted).  The *Jones* court stated further: "We and other courts previously have rejected a

24   foundation of [p]etitioner's proposed rule—that delay in resolving post-conviction proceedings

25   has constitutional significance."  *Id.* at 551.  "It would indeed be a mockery of justice if the delay

26   incurred during the prosecution of claims that fail on the merits could itself accrue into a

27   substantive claim to the very relief that had been sought and properly denied in the first place."  *Id.*

28
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

1    In accordance with the above authority, Petitioner acknowledges that "the U.S. Supreme

2 Court has never held that the delay caused by post-conviction proceedings would result in the

3 violation of the Eighth Amendment."  Opp'n at 134.  Petitioner relies instead upon various policy

4 arguments to support his claim, such as the fact that "[t]he United States stands virtually alone . . .

5 in confining individuals for periods of many years while continuously under sentence of death."

6 Pet. at 401.  These policy arguments do not cite any U.S. Supreme Court precedent, and *Allen*,

7 *Knight¸* and *Jones* state that no such precedent exists.

8    Under AEDPA, a federal court may grant habeas relief as to claims adjudicated on the

9 merits by a state court only where the state court's decision "was contrary to, or involved an

10 unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court

11 of the United States."  28 U.S.C. § 2254(d)(1).  Because no such clearly established federal law

12 exists on the instant claim, Petitioner's arguments do not merit habeas relief.  Accordingly,

13 Respondent's motion for summary judgment as to claim 35 is GRANTED.

14    **C.  Claim 36**

15    Finally, Petitioner contends that "Petitioner's conviction and death sentence violate

16 [customary] international law."  Pet. at 401.  Petitioner presented this claim before the California

17 Supreme Court in his state habeas petition, and the California Supreme Court denied relief on the

18 merits without an opinion.

19    The only courts to have previously considered the instant claim have denied habeas relief.

20 In *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001), for instance, the Sixth Circuit explained that

21 "the claim that international law completely bars this nation's use of the death penalty is

22 unsupportable since the United States is not party to any treaty that prohibits capital punishment

23 per se, and since total abolishment of capital punishment has not yet risen to the level of

24 customary international law."  *Id.* at 443 n.12 (internal quotation marks and ellipses omitted).

25 Likewise, in *Carter v. Chappell*, 2013 WL 781910, *80 (C.D. Cal. Mar. 1, 2013), the district court

26 noted that "[c]learly established federal law does not hold the death penalty to violate international

27 law or the federal Constitution."  Finally, in *Rowland v. Chappell*, 902 F. Supp. 2d 1296, 1339

28

20

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 21, 35, AND 36

(N.D. Cal. 2012), the district court concluded, on an essentially identical claim, that "petitioner cannot demonstrate that any claim of a violation of international law is even cognizable on federal habeas review, given that such review is designed to address claims that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States." "International law is not United States law, and petitioner does not demonstrate that the International Covenant of Civil and Political Rights creates a form of relief enforceable in United States courts." *Id.*

Consistent with *Coleman*, *Carter*, and *Rowland*, the Court finds habeas relief as to Claim 36 unmeritorious. Respondent's motion for summary judgment as to claim 36 is GRANTED.

## IV.    CONCLUSION

For the foregoing reasons, Respondent's motion for summary judgment as to claims 21, 35, and 36 is GRANTED.

**IT IS SO ORDERED.**

Dated:  June 14, 2016

_____
LUCY H. KOH
United States District Judge