1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CURTIS LEE ERVIN,

            Petitioner,

    v.

RON DAVIS, Warden, California State
Prison at San Quentin,

         Respondent.

Case  No. 00-CV-01228-LHK

**ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT
ON CLAIMS 6 AND 16**

Re: Dkt. No. 213

      In 1991, Petitioner Curtis Lee Ervin ("Petitioner") was convicted of the murder of Carlene McDonald and sentenced to death.  On September 7, 2007, Petitioner filed an amended petition for a writ of habeas corpus before this Court, which included 37 claims in total.  ECF No. 97 ("Pet.").  Before the Court is Respondent's motion for summary judgment as to all 37 claims in Petitioner's amended habeas petition.  ECF No. 213 ("Mot.").  Petitioner opposes Respondent's motion and requests an evidentiary hearing on 15 of Petitioner's 37 claims.

      This Order addresses claims 6 and 16 in Petitioner's amended habeas petition.  Petitioner does not request an evidentiary hearing on these claims.  For the reasons discussed below, Respondent's motion for summary judgment as to claims 6 and 16 is GRANTED.

1

I.      **BACKGROUND**

   A. **Factual Background**[1]

       On February 21, 1991, a jury convicted Petitioner of first degree murder with the special circumstance finding of murder for financial gain.  Evidence presented at Petitioner's trial established that Robert McDonald ("McDonald"), the former spouse of Carlene McDonald ("Carlene"), had hired Petitioner and Arestes Robinson ("Robinson"), to kill Carlene for $2,500.

       At trial, Armond Jack ("Jack") testified that he had driven with Petitioner to meet McDonald to negotiate the price for killing Carlene.  Jack also testified that he had driven Petitioner and Robinson to Carlene's apartment on November 7, 1986, the night of the murder. While Petitioner, Robinson, and Jack were driving to Carlene's apartment, Petitioner asked for and received a knife from Robinson.  With the assistance of a BB gun, Petitioner and Robinson kidnapped Carlene, and using Carlene's vehicle, took Carlene to Tilden Park, where Petitioner stabbed Carlene to death with Robinson's assistance.  A patrol officer found Carlene's body the following afternoon.

       Petitioner and Robinson met with McDonald the day after Carlene's murder and presented McDonald with Carlene's driver's license as proof of the murder.  McDonald paid Petitioner $2,500, which Petitioner shared with Robinson and others to purchase cocaine.  A few weeks after Carlene's murder, McDonald paid Petitioner an additional $1,700.  Sharon Williams ("Williams"), Petitioner's girlfriend, testified that Petitioner gave her a watch and ring later identified as belonging to Carlene.

       In addition to the physical evidence linking Petitioner to Carlene's murder, Petitioner also admitted various incriminating aspects of the crime to David Willis ("Willis"), Zane Sinnott ("Sinnott"), and the investigating police officer, Sergeant Dana Weaver ("Weaver").  According to these witnesses, Petitioner admitted that he and Robinson had confronted Carlene, had pointed the

---

[1] The following facts are drawn from the California Supreme Court's opinion on Petitioner's direct appeal.  *People v. Ervin*, 22 Cal. 4th 48 (2000); *cf. Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

2

1   BB gun at her, had forced her into her car, and had driven her to Tilden Park.  Petitioner further

2   admitted to stabbing Carlene to death at Tilden Park while Robinson held her.  The prosecution

3   also introduced testimony from Robinson's girlfriend, Gail Johnson ("Johnson"), who stated that

4   Robinson had admitted to participating in Carlene's murder.

5          Robinson, McDonald, and Petitioner were tried together.  Petitioner made no claims of

6   innocence, but sought to impeach the testimony of prosecution witnesses Jack, Sinnott, and Willis.

7   In addition, Dr. Fred Rosenthal ("Rosenthal"), a psychiatrist, testified that Petitioner's cocaine

8   consumption might have impaired Petitioner's thought process and that Petitioner thus did not

9   appreciate the seriousness and finality of killing someone for money.  The jury found Petitioner's

10  defenses unavailing and convicted Petitioner of first degree murder.  During the penalty phase of

11  Petitioner's trial, the prosecution introduced evidence of a prior bank robbery conviction and some

12  jail disciplinary problems.  Petitioner introduced mitigating evidence regarding his character,

13  employment, family, drug use, religious involvement, and musical skills.  McDonald and

14  Robinson also introduced mitigating evidence.  The jury returned death verdicts for Petitioner and

15  McDonald, but chose life imprisonment without parole for Robinson.

16  **B.  Procedural History**

17          On January 6, 2000, the California Supreme Court affirmed Petitioner's conviction and

18  sentence on direct appeal.  *Ervin*, 22 Cal. 4th at 66.  The United States Supreme Court denied

19  certiorari on October 2, 2000.  *Ervin v. California*, 531 U.S. 842 (2000).  On November 12, 2002,

20  Petitioner filed a federal habeas petition before this Court.  ECF No. 32.  On January 22, 2003,

21  Petitioner filed a corrected federal habeas petition.  ECF No. 45.  That same day, the Court stayed

22  all federal habeas proceedings so that Petitioner could exhaust his claims in state court.  Petitioner

23  filed a state habeas petition on October 1, 2003, and on December 14, 2005, the California

24  Supreme Court denied Petitioner's state habeas petition.

25          Following the California Supreme Court's decision, Petitioner filed an amended federal

26  habeas petition.  ECF No. 97.  Respondent filed a response on March 7, 2008, ECF No. 110, and

27  Petitioner filed a traverse on November 13, 2008.  ECF No. 133.

28

United States District Court
Northern District of California

3

1    On February 14, 2012, Respondent filed the instant motion for summary judgment.  On

2    January 8, 2013, Petitioner filed an opposition and a request for an evidentiary hearing.  ECF No.

3    249 ("Opp'n").  Respondent filed a reply on May 10, 2013, which included an opposition to

4    Petitioner's request for an evidentiary hearing. ECF No. 259 ("Resp. Reply").  On August 16,

5    2013, Petitioner filed a reply to Respondent's opposition to Petitioner's request for an evidentiary

6    hearing.  ECF No. 266 ("Pet. Reply").  Petitioner's reply specified that Petitioner sought an

7    evidentiary hearing on claims 7–10, 20, 26–29, and 32–34.  *Id.* at 5.

8    On January 7, 2015, the instant action was reassigned from U.S. District Judge Claudia

9    Wilken to the undersigned judge.  ECF No. 268.  On March 16, 2015, the Court stayed

10   Petitioner's penalty phase claims pending the Ninth Circuit's decision of an appeal filed in *Jones*

11   *v. Chappell*, 31 F. Supp. 3d 1050 (C.D. Cal. 2014).   ECF No. 269.  The Ninth Circuit decided

12   *Jones* on November 12, 2015, and determined that the district court had erred in finding

13   California's post-conviction system of review in violation of the Eighth Amendment.  *Jones v.*

14   *Davis*, 806 F.3d 538 (9th Cir. 2015).  In the wake of the Ninth Circuit's decision in *Jones*, all of

15   Petitioner's claims are now ripe for review.

16   On December 11, 2015, this Court issued an order granting Respondent's motion for

17   summary judgment as to claims 1–5.  ECF No. 271.  On March 28, 2016, this Court issued an

18   order granting Respondent's motion for summary judgment as to claims 14–15 and 17–18.  ECF

19   No. 281.  On March 29, 2016, this Court issued an order granting Respondent's motion for

20   summary judgment as to claims 7–13.  On June 14, 2016, this Court issued an order granting

21   Respondent's motion for summary judgment as to claims 21, 35 and 36.  ECF No. 283.

22   Petitioner's remaining claims shall be addressed in subsequent Orders.

23   **II.     LEGAL STANDARD**

24       **A. Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2254(d))**

25   Because Petitioner filed his original federal habeas petition in 2002, the Anti-Terrorism

26   and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action.  *See Woodford*

27   *v. Garceau*, 538 U.S. 202, 210 (2003) (holding that AEDPA applies whenever a federal habeas

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 6 AND 16__

United States District Court
Northern District of California

United States District Court
Northern District of California

1   petition is filed after April 24, 1996).  Pursuant to AEDPA, a federal court may grant habeas relief

2   on a claim adjudicated on the merits in state court only if the state court's adjudication "(1)

3   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

4   established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

5   in a decision that was based on an unreasonable determination of the facts in light of the evidence

6   presented in the State court proceeding."  28 U.S.C. § 2254(d).

7   **1. Contrary To or Unreasonable Application of Clearly Established Federal Law**

8   As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs

9   have separate and distinct meanings.  *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section

10   2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas

11   relief with respect to a claim adjudicated on the merits in state court.").  A state court's decision is

12   "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to

13   that reached by [the United States Supreme Court] on a question of law or if the state court decides

14   a case differently than [the United States Supreme Court] has on a set of materially

15   indistinguishable facts."  *Id*. at 412–13.  A state court's decision is an "unreasonable application"

16   of clearly established federal law if "the state court identifies the correct governing legal principle

17   . . . but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A]n

18   *unreasonable* application of federal law is different from an *incorrect* application of federal law."

19   *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  A state court's determination that a claim lacks

20   merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness."  *Id.*

21   (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

22   Holdings of the United States Supreme Court at the time of the state court decision are the

23   sole determinant of clearly established federal law.  *Williams*, 529 U.S. at 412.  Although a district

24   court may "look to circuit precedent to ascertain whether [the circuit] has already held that the

25   particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*,

26   133 S. Ct. 1446, 1450 (2013) (per curiam), "[c]ircuit precedent cannot refine or sharpen a general

27   principle of [United States] Supreme Court jurisprudence into a specific legal rule," *Lopez v.*

28

5

1    *Smith*, 135 S. Ct. 1, 4 (2014) (per curiam) (internal quotation marks omitted).

2    **2.  Unreasonable Determination of the Facts**

3           In order to find that a state court's decision was based on "an unreasonable determination

4    of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel,

5    applying the normal standards of appellate review, could not reasonably conclude that the finding

6    is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir.

7    2014) (internal quotation marks omitted).  "[A] state-court factual determination is not

8    unreasonable merely because the federal habeas court would have reached a different conclusion

9    in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  That said, "where the state courts

10   plainly misapprehend or misstate the record in making their findings, and the misapprehension

11   goes to a material factual issue that is central to petitioner's claim, that misapprehension can

12   fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable."

13   *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

14          In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or §

15   2254(d)(2), a federal court's review "is limited to the record that was before the state court that

16   adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  In the event

17   that a federal court "determine[s], considering only the evidence before the state court, that the

18   adjudication of a claim on the merits resulted in a decision contrary to or involving an

19   unreasonable application of clearly established federal law, or that the state court's decision was

20   based on an unreasonable determination of the facts," the federal court evaluates the petitioner's

21   claim *de novo*.  *Hurles*, 752 F.3d at 778.  If error is found, habeas relief is warranted if that error

22   "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v.*

23   *Abrahamson*, 507 U.S. 619, 638 (1993).  Petitioners "are not entitled to habeas relief based on trial

24   error unless they can establish that it resulted in 'actual prejudice.'"  *Id.* at 637 (quoting *United*

25   *States v. Lane*, 474 U.S. 438, 449 (1986)).

26   **B.  Federal Evidentiary Hearing (28 U.S.C. § 2254(e))**

27          Under *Cullen v. Pinholster*, habeas review under AEDPA "is limited to the record that was

28                                                        6

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 6 AND 16__

United States District Court
Northern District of California

before the state court that adjudicated the claim on the merits." 563 U.S. at 180–81. The Ninth

Circuit has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on

claims adjudicated on the merits in state court. *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir.

2013); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court

has declined to decide whether a district court may ever choose to hold an evidentiary hearing

*before* it determines that § 2254(d) has been satisfied . . . an evidentiary hearing is pointless once

the district court has determined that § 2254(d) precludes habeas relief") (internal quotation marks

and citation omitted).

### C.  Summary Judgment

Summary judgment is appropriate if, when viewing the evidence and drawing all

reasonable inferences in the light most favorable to the nonmoving party, there are no genuine

issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). At the summary judgment stage,

the Court "does not assess credibility or weigh the evidence, but simply determines whether there

is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is

"material" if it "might affect the outcome of the suit under the governing law," and a dispute as to

a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in

favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying those portions of the pleadings,

discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex

Corp.*, 477 U.S. at 323. Whereas the party opposing summary judgment will have the burden of

proof at trial, the party moving for summary judgment need only point out "that there is an

absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party

meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a

genuine issue for trial." *Anderson*, 477 U.S. at 250.

Case No. 00-CV-01228-LHK

ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 6 AND 16__

III.    DISCUSSION

A. Claim 6

In claim 6, Petitioner alleges that the trial court violated his constitutional rights by failing to voir dire jurors regarding a news article appearing in the *Oakland Tribune* on the morning of final jury selection regarding the cost of his trial.  According to the article, the trial had a devastating effect on the court's budget and quoted the prosecutor's statement that the defense attorneys were paid more than his annual salary.  ECF No. 33, Ex. 66.  In support of his claim, petitioner offers two declarations: (1) the declaration of investigator Norma Paz Garcia, who states that juror Stanley Wyke admitted seeing two articles in the paper about the case and read the first paragraph of one of the articles, and (2) the declaration of juror Robert Corneal, who states: "I was particularly impressed by the prosecutor, who stood alone against the six defense attorneys.  It seemed like a waste of resources that each defendant was appointed two lawyers."  ECF No. 33, Ex. 6 & 7.[2]  Respondent argues that the California Supreme Court reasonably denied this claim.

On direct appeal, the California Supreme Court addressed this claim as follows:

> Defendant next contends the trial court erred in failing to examine the jurors regarding an Oakland Tribune news article discussing the cost of his trial. This article, appearing on the morning final jury selection began, informed readers that the jury selection process had already extended for eight months at a cost ranging from $600,000 to $750,000, that the slow pace of trial was attributable to trial Judge Sarkisian, that additionally the six defense attorneys for the three codefendants were paid $500,000, and that the cost of trial was reportedly "devastating" to the court's budget. The prosecutor was quoted as saying that defense counsel already had been paid more for this case than his annual salary.
>
> Defendant's counsel informed the court of the article and asked for a mistrial or at least additional voir dire to determine if any juror had read it. Counsel for the codefendants declined to join the request. The court, observing that the jurors had been admonished not to read such articles, and that this article contained no prejudicial material, denied the request and gave no further admonition.
>
> Defendant argues that the court abused its discretion in failing to take further steps to assure defendant a fair trial. We find no abuse

---

[2] Contrary to Respondent's assertion, these declarations are not barred by Fed. R. Evid. 606(b) because they pertain to the question of whether an outside influence was improperly brought to the jury's attention.  *See* Fed. R. Evid. 606(b); *Tanner v. United States*, 483 U.S. 107, 120-21 (1987).

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 6 AND 16__

1

2

3

4

> of discretion. In the absence of proof of specific juror misconduct, we may assume that the jury heeded the court's initial admonition and avoided any news media accounts of the trial. (See *People v. Dennis* (1998) 17 Cal.4th 468, 542, fn. 17 [71 Cal.Rptr.2d 680, 950 P.2d 1035]; *People v. Lambright* (1964) 61 Cal.2d 482, 486-487 [39 Cal.Rptr. 209, 393 P.2d 409]).  In any event, we agree with the trial court that the article contained no prejudicial or inflammatory material.

5   *Ervin*, 22 Cal. 4th at 77-78.

6          Petitioner has the burden of showing that the California Supreme Court's opinion

7   upholding the trial court's decision not to voir dire jurors regarding the *Oakland Tribune* article

8   was contrary to or an unreasonable application of clearly established United States Supreme Court

9   precedent.  *See Kemp v. Ryan*, 638 F.3d 1245, 1261-62 (9th Cir. 2011) (decision of Arizona

10   Supreme Court finding that trial court did not violate petitioner's due process rights by failing to

11   subject jury to voir dire regarding possible homosexual bias was not contrary to or an

12   unreasonable application of clearly established Supreme Court law).  As discussed below,

13   Petitioner fails to meet his burden.

14          Petitioner's claim relies primarily on *Mu'Min v. Virginia*, 500 U.S. 415 (1991).  In

15   *Mu'Min*, the United States Supreme Court held that a trial judge's refusal to conduct

16   individualized voir dire of prospective jurors about the contents of news reports to which they had

17   been exposed did not violate Mu'min's rights to an impartial jury and due process.  *Id*. at 431-32.

18   While questions about the content of the publicity to which jurors have been exposed might be

19   helpful in assessing their impartiality, in order to be constitutionally compelled, a "trial court's

20   failure to ask these questions must render the trial fundamentally unfair."  *Id*. at 425-26.  Mu'Min

21   failed to make this showing because of the eight jurors who had been exposed to pretrial publicity,

22   none stated that they had formed an opinion as to guilt or that the publicity would affect their

23   ability to make a judgment solely on the evidence presented at trial.  *Id*. at 428, 431.

24          To the extent that Petitioner argues that *Mu'Min* requires trial courts to make at least a

25   minimal inquiry of prospective jurors regarding pretrial publicity, his argument fails.  *Mu'Min*

26   actually supports the contrary proposition: it highlights trial courts' "wide discretion" in

27   determining the contours of voir dire.  *Id*. at 427.  The United States Supreme Court determined

28

9

1  that questions regarding the content of pretrial publicity are not constitutionally required and

2  further explained:

> 3  Particularly with respect to pretrial publicity, we think this primary
> reliance of the judgment of the trial court makes good sense. The
> 4  judge . . . sits in the locale where the publicity is said to have had its
> effect and brings to his evaluation of any such claim his own
> 5  perception of the depth and extent of the news stories that might
> influence a juror. The trial court, of course, does not impute his own
> 6  perceptions to the jurors who are being examined, but these
> perceptions should be of assistance to it in deciding how detailed an
> 7  inquiry to make of the members of the jury venire.

8  *Id.* at 425, 427. *See also Skilling v. United States*, 561 U.S. 358, 386 (2010), quoting *Ristaino v.*

9  *Ross*, 424 U.S. 589, 595-95 (1976) ("No hard-and-fast formula dictates the necessary depth or

10  breadth of voir dire").

11  Moreover, Petitioner fails to establish that the trial court's failure to question the jury

12  regarding the *Oakland Tribune* article rendered his trial fundamentally unfair. *See Mu'Min*, 500

13  U.S. 425-36. It is not required that jurors be totally ignorant of the publicity surrounding a case.

14  *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (jurors need not be ignorant of facts and issues

15  involved in a case). Moreover, in the instant case, Petitioner fails to demonstrate that jurors Wyke

16  and Corneal even read the *Oakland Tribune* article.

17  To demonstrate that Wyke was exposed to the *Oakland Tribune* article, Petitioner submits

18  the declaration of investigator Norma Paz Garcia, who states that Wyke admitted seeing two

19  articles in the paper about the case, but Wyke read only the first paragraph of one of the articles.

20  ECF Doc. No. 33, Ex. 6. Paz's declaration does not identify either article. Assuming that one of

21  them was the *Oakland Tribune* article, the first paragraph of this article refers to the lottery used

22  for selecting prospective jurors and states, in its entirety:

> 23  Shortly after 10 a.m. today the "big spin" will take place in a 7th
> floor courtroom at Oakland courthouse.
> 24

25  ECF Doc. No. 33, Ex.66. Petitioner fails to demonstrate that anything in this paragraph was

26  prejudicial to his defense. The second article cited in Garcia's declaration is not in the record, and

27  Petitioner does not allege that it is prejudicial.

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 6 AND 16__

United States District Court
Northern District of California

United States District Court
Northern District of California

1    To demonstrate that Corneal was exposed to the *Oakland Tribune* article, Petitioner

2    submits Corneal's declaration, which states:  "I was particularly impressed by the prosecutor, who

3    stood alone against the six defense attorneys.  It seemed like a waste of resources that each

4    defendant was appointed two lawyers."  ECF Doc. 33, Ex. 7.  This declaration does not establish

5    that Corneal was even aware of the *Oakland Tribune* article.  It merely states that in Corneal's

6    opinion, appointing each defendant two lawyers seemed like a waste of resources.  Petitioner thus

7    fails to establish that the jurors actually read the *Oakland Tribune* article, or that their impartiality

8    was compromised by it.  *See Ristaino*, 424 U.S. at 595 n.6 (Sixth Amendment, as well as

9    principles of due process, guarantee a criminal defendant's right to an impartial jury).

10    Furthermore, Petitioner's jury was instructed to determine facts from the evidence received

11    at trial and not from any other source.  AG013546 ("[y]ou must decide all questions of fact in this

12    case from the evidence received at trial and not from any other source"); *see also Richardson v.*

13    *March*, 481 U.S. 200, 211 (1987) (juries presumed to follow instructions).  In addition, the trial

14    court specifically admonished Wyke and Corneal at the conclusion of their voir dire to avoid

15    pretrial publicity.  Addressing Wyke, the trial court stated: "Don't read anything or listen to

16    anything on T.V. or radio involving the trial."  AG009846.  Addressing Corneal, the trial court

17    similarly stated: "[I]t is important you not read or listen to anything on the T.V. or radio that might

18    involve this case."  AG006637.  The trial court further instructed potential jurors to "[n]ot pay

19    attention to or allow yoursel[ves] to be influenced by any publicity which might accompany the

20    case.  This includes television, radio, newspapers and so forth."  AG006560.  The California

21    Supreme Court reasonably assumed that the jury followed the trial court's admonitions.  *Ervin*, 22

22    Cal. 4th at 77-78.

23    For the above reasons, claim 6 lacks merit.  Accordingly, Respondent's motion for

24    summary judgment as to claim 6 is GRANTED.

25    **B.  Claim 16**

26    Petitioner alleges that the trial court committed constitutional error when it denied

27    Petitioner's request to admit the testimony of James Park, a prison consultant, regarding the prison

28
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 6 AND 16__

1   conditions of defendants sentenced to life imprisonment without possibility of parole, but

2   permitted prosecutorial comment regarding Petitioner's future dangerousness in custody.  In

3   particular, Petitioner asserts that the trial court improperly allowed the prosecutor to comment that

4   Petitioner would not be allowed a guitar in prison because "guitar strings could be used for a lot

5   more than playing."  ECF No. 97 at 222.  Respondent argues that the California Supreme Court

6   reasonably denied this claim.

7          On direct appeal, the California Supreme Court denied this claim as follows:

8               Defendant next argues the court erred in refusing to allow testimony
              by James Park, a prison consultant, regarding the security,
9             classification, and management of inmates sentenced to prison for
              life without possibility of parole. We have recently rejected
10            arguments involving similar proposed testimony, and find no reason
              to reconsider our holdings. (See *People v. Quartermain* (1997) 16
11            Cal.4th 600, 632-633 [66 Cal.Rptr.2d 609, 941 P.2d 788]; *People v.
              Fudge*, supra, 7 Cal.4th at pp. 1123-1124; *People v. Daniels*, supra,
12            52 Cal.3d at pp. 876-878.)

13  *Ervin*, 22 Cal. 4th at 97.

14         As noted above, the California Supreme Court found no error in the trial court's ruling

15  because it was consistent with its prior holdings.  *See*, *e.g.*, *People v. Quartermain*, 16 Cal. 4th

16  600, 632 (1997) (evidence of conditions of confinement a defendant will experience if sentenced

17  to life imprisonment without parole irrelevant to jury's penalty determination because it does not

18  relate to defendant's character, culpability, or the circumstances of the offense); *see also People v.*

19  *Daniels*, 52 Cal. 3d 815, 877 (1991) (videotape of defendant's future prison routine would not be

20  admissible because it does not depict an aspect of his character or record).  As Respondent points

21  out, the California Supreme Court's decision is consistent with *Bell v. True*, 413 F. Supp. 2d 657,

22  704-05 (W.D. Va. 2006) (Virginia Supreme Court's decision upholding trial court's exclusion of

23  evidence from prison expert on prison security was not an unreasonable application of federal law,

24  as determined by the United States Supreme Court), and *United States v. Edelin*, 180 F. Supp. 2d

25  73, 75-76 (D.D.C. 2001) (expert testimony regarding Bureau of Prison's ability to keep defendant

26  from committing future harm ruled inadmissible as mitigating evidence due to lack of relation to

27  any aspect of defendant's character or record); *see also United States v. Johnson*, 223 F.3d 665,

28
                                                    12

1    675 (7th Cir. 2000) (evidence of the Bureau of Prisons' ability to prevent a capital defendant from

2    committing future criminal acts by sentencing him to life in prison should not have been admitted

3    as mitigating factor because it was of general nature and more suitable for legislative argument

4    about death penalty).

5           In support of his claim, Petitioner cites *Simmons v. South Carolina*, 512 U.S. 154, 161

6    (1994), in which the United States Supreme Court held that when the government puts the issue of

7    future dangerousness before the jury as a sentencing consideration, the jury must be instructed that

8    an alternative to death is life imprisonment without the possibility of parole.  In Petitioner's case,

9    however, the jury was clearly instructed that life imprisonment without the possibility of parole

10   was an alternative to a death sentence.  AG014720; AG014735.  Petitioner's reliance on *Simmons*

11   is therefore misplaced.

12          Petitioner fails to cite any other authority establishing that the California Supreme Court's

13   ruling was contrary to or constituted an unreasonable application of clearly established federal law

14   as determined by the United States Supreme Court.  Accordingly, Respondent's motion for

15   summary judgment as to claim 16 is GRANTED.

16   **IV.    CONCLUSION**

17          For the foregoing reasons, Respondent's motion for summary judgment as to claims 6 and

18   16 is GRANTED.

19   **IT IS SO ORDERED.**

20   Dated:  June 15, 2016

21                                          *Lucy H. Koh*

22                                          _____
                                            LUCY H. KOH
                                            United States District Judge

23

24

25

26

27

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 6 AND 16

United States District Court
Northern District of California