UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CURTIS LEE ERVIN,<br><br>    Petitioner,<br><br>    v.<br><br>RON DAVIS, Warden, California State Prison at San Quentin,<br><br>    Respondent. | Case No. 00-CV-01228-LHK<br><br>**ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 22 AND 23**<br><br>Re: Dkt. No. 213 |

In 1991, Petitioner Curtis Lee Ervin ("Petitioner") was convicted of the murder of Carlene McDonald and sentenced to death. On September 7, 2007, Petitioner filed an amended petition for a writ of habeas corpus before this Court, which included 37 claims in total. ECF No. 97 ("Pet."). Before the Court is Respondent's motion for summary judgment as to all 37 claims in Petitioner's amended habeas petition. ECF No. 213 ("Mot."). Petitioner opposes Respondent's motion and requests an evidentiary hearing on 15 of Petitioner's 37 claims.

This Order addresses claims 22 and 23 in Petitioner's amended habeas petition. Petitioner does not request an evidentiary hearing on these claims. For the reasons discussed below, Respondent's motion for summary judgment as to claims 22 and 23 is GRANTED.

## I.     BACKGROUND

### A. Factual Background[1]

On February 21, 1991, a jury convicted Petitioner of first degree murder with the special circumstance finding of murder for financial gain. Evidence presented at Petitioner's trial established that Robert McDonald ("McDonald"), the former spouse of Carlene McDonald ("Carlene"), had hired Petitioner and Arestes Robinson ("Robinson"), to kill Carlene for $2,500.

At trial, Armond Jack ("Jack") testified that he had driven with Petitioner to meet McDonald to negotiate the price for killing Carlene. Jack also testified that he had driven Petitioner and Robinson to Carlene's apartment on November 7, 1986, the night of the murder. While Petitioner, Robinson, and Jack were driving to Carlene's apartment, Petitioner asked for and received a knife from Robinson. With the assistance of a BB gun, Petitioner and Robinson kidnapped Carlene and used Carlene's vehicle to take Carlene to Tilden Park, where Petitioner stabbed Carlene to death with Robinson's assistance. A patrol officer found Carlene's body the following afternoon.

Petitioner and Robinson met with McDonald the day after Carlene's murder and presented McDonald with Carlene's driver's license as proof of the murder. McDonald paid Petitioner $2,500, which Petitioner shared with Robinson and others to purchase cocaine. A few weeks after Carlene's murder, McDonald paid Petitioner an additional $1,700. Sharon Williams ("Williams"), Petitioner's girlfriend, testified that Petitioner gave her a watch and ring later identified as belonging to Carlene.

In addition to the physical evidence linking Petitioner to Carlene's murder, Petitioner also admitted various incriminating aspects of the crime to David Willis ("Willis"), Zane Sinnott ("Sinnott"), and the investigating police officer, Sergeant Dana Weaver ("Weaver"). According to these witnesses, Petitioner admitted that he and Robinson had confronted Carlene, had pointed the

---

[1] The following facts are drawn from the California Supreme Court's opinion on Petitioner's direct appeal. *People v. Ervin*, 990 P.2d 506, 513–14 (Cal. 2000); *cf. Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

BB gun at her, had forced her into her car, and had driven her to Tilden Park. Petitioner further admitted to stabbing Carlene to death at Tilden Park while Robinson held her. The prosecution also introduced testimony from Robinson's girlfriend, Gail Johnson ("Johnson"), who stated that Robinson had admitted to participating in Carlene's murder.

Robinson, McDonald, and Petitioner were tried together. Petitioner made no claims of innocence, but sought to impeach the testimony of prosecution witnesses Jack, Sinnott, and Willis. In addition, Dr. Fred Rosenthal, a psychiatrist, testified that Petitioner's cocaine consumption might have impaired Petitioner's thought process and that Petitioner thus did not appreciate the seriousness and finality of killing someone for money. The jury found Petitioner's defenses unavailing and convicted Petitioner of first degree murder. During the penalty phase of Petitioner's trial, the prosecution introduced evidence of a prior bank robbery conviction and some jail disciplinary problems. Petitioner introduced mitigating evidence regarding his character, employment, family, drug use, religious involvement, and musical skills. McDonald and Robinson also introduced mitigating evidence. The jury returned death verdicts for Petitioner and McDonald, but chose life imprisonment without parole for Robinson.

**B. Procedural History**

On January 6, 2000, the California Supreme Court affirmed Petitioner's conviction and sentence on direct appeal. *People v. Ervin*, 990 P.2d 506, 537 (Cal. 2000). The United States Supreme Court denied certiorari on October 2, 2000. *Ervin v. California*, 531 U.S. 842 (2000). On November 12, 2002, Petitioner filed a federal habeas petition before this Court. ECF No. 32. On January 22, 2003, Petitioner filed a corrected federal habeas petition. ECF No. 45. That same day, the Court stayed all federal habeas proceedings so that Petitioner could exhaust his claims in state court. Petitioner filed a state habeas petition on October 1, 2003, and on December 14, 2005, the California Supreme Court denied Petitioner's state habeas petition.

Following the California Supreme Court's decision, Petitioner filed an amended federal habeas petition on September 7, 2007. ECF No. 97. Respondent filed a response on March 7, 2008, ECF No. 110, and Petitioner filed a traverse on November 13, 2008. ECF No. 133.

On February 14, 2012, Respondent filed the instant motion for summary judgment. On January 8, 2013, Petitioner filed an opposition and a request for an evidentiary hearing. ECF No. 249 ("Opp'n"). Respondent filed a reply on May 10, 2013, which included an opposition to Petitioner's request for an evidentiary hearing. ECF No. 259 ("Resp. Reply"). On August 16, 2013, Petitioner filed a reply to Respondent's opposition to Petitioner's request for an evidentiary hearing. ECF No. 266 ("Pet. Reply"). Petitioner's reply specified that Petitioner sought an evidentiary hearing on claims 7–10, 20, 26–29, and 32–34. *Id.* at 5.

On January 7, 2015, the instant action was reassigned from U.S. District Judge Claudia Wilken to the undersigned judge. ECF No. 268. On March 16, 2015, the Court stayed Petitioner's penalty phase claims pending the Ninth Circuit's decision of an appeal filed in *Jones v. Chappell*, 31 F. Supp. 3d 1050 (C.D. Cal. 2014). ECF No. 269. The Ninth Circuit decided *Jones* on November 12, 2015, and determined that the district court had erred in finding California's post-conviction system of review in violation of the Eighth Amendment. *Jones v. Davis*, 806 F.3d 538 (9th Cir. 2015). In the wake of the Ninth Circuit's decision in *Jones*, all of Petitioner's claims are now ripe for review.

On December 11, 2015, this Court issued an order granting Respondent's motion for summary judgment as to claims 1–5. ECF No. 271. On March 28, 2016, this Court issued an order granting Respondent's motion for summary judgment as to claims 14–15 and 17–18. ECF No. 281. On March 29, 2016, this Court issued an order granting Respondent's motion for summary judgment as to claims 7–13. ECF No. 282. On June 14, 2016, this Court issued an order granting Respondent's motion for summary judgment as to claims 21, 35, and 36. ECF No. 283. On June 15, 2016, this Court issued an order granting Respondent's motion for summary judgment as to claims 6 and 16. ECF No. 284. Petitioner's remaining claims shall be addressed in subsequent orders.

## II.     LEGAL STANDARD

### A. Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2254(d))

Because Petitioner filed his original federal habeas petition in 2002, the Anti-Terrorism

and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action. *See Woodford v. Garceau*, 538 U.S. 202, 210 (2003) (holding that AEDPA applies whenever a federal habeas petition is filed after April 24, 1996). Pursuant to AEDPA, a federal court may grant habeas relief on a claim adjudicated on the merits in state court only if the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

**1. Contrary To or Unreasonable Application of Clearly Established Federal Law**

As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs have separate and distinct meanings. *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court."). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 412–13.

A state court's decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). A state court's determination that a claim lacks merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Holdings of the U.S. Supreme Court at the time of the state court decision are the sole determinant of clearly established federal law. *Williams*, 529 U.S. at 412. Although a district court may "look to circuit precedent to ascertain whether [the circuit] has already held that the

1  particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*,
2  133 S. Ct. 1446, 1450 (2013) (per curiam), "[c]ircuit precedent cannot refine or sharpen a general
3  principle of [U.S.] Supreme Court jurisprudence into a specific legal rule," *Lopez v. Smith*, 135 S.
4  Ct. 1, 4 (2014) (per curiam) (internal quotation marks omitted).

### 2. Unreasonable Determination of the Facts

In order to find that a state court's decision was based on "an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (internal quotation marks omitted). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). That said, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or § 2254(d)(2), a federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). In the event that a federal court "determine[s], considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts," the federal court evaluates the petitioner's claim *de novo*. *Hurles*, 752 F.3d at 778. If error is found, habeas relief is warranted if that error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637 (quoting *United*

*States v. Lane*, 474 U.S. 438, 449 (1986)).

## B. Federal Evidentiary Hearing (28 U.S.C. § 2254(e))

Under *Cullen v. Pinholster*, habeas review under AEDPA "is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 180–81. The Ninth Circuit has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on claims adjudicated on the merits in state court. *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court has declined to decide whether a district court may ever choose to hold an evidentiary hearing *before* it determines that § 2254(d) has been satisfied . . . an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief.") (internal quotation marks and citation omitted).

## C. Summary Judgment

Summary judgment is appropriate if, when viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Whereas the party opposing summary judgment will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a

genuine issue for trial." *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

### A. Claim 22

Claim 22 in Petitioner's amended habeas petition contends that "Petitioner was deprived of his right under the Fifth, Eighth, and Fourteenth Amendments to present relevant mitigating evidence during the penalty phase of his capital trial when his witness and clergyman," the county jail chaplain Daniel Coryell ("Chaplain Coryell"), "was not permitted to give his opinion as to whether Petitioner's life should be spared." Pet. at 263.

Specifically, during the penalty phase of Petitioner's trial, Chaplain Coryell testified that Petitioner was "regularly involved in the Sunday morning worship services and the Monday evening bible studies" at the county jail where Petitioner was held. Reporter's Transcript ("RT") 12212. When asked about Petitioner's involvement in religious services, Chaplain Coryell further testified that Coryell "found [Petitioner's involvement] to be consistent and extremely sincere." RT 12213; *see also* RT 12214 (describing goal of religious program as "try[ing] to instill in the inmates that we have in our program . . . that there is a better way than the way they have been traveling" and stating that "to the best of my ability to judge that sincerity, [Petitioner] certainly appeared sincere to me").

The prosecutor cross-examined Chaplain Coryell. When asked "[d]o you know anything about the facts of the case?," Chaplain Coryell responded, "Not a great deal." *Id.* at 12217. Petitioner's counsel then posed several questions on redirect. After confirming that Chaplain Coryell knew of the crime of which Petitioner had been charged and convicted, RT 12224, Petitioner's counsel ended his examination with the question that forms the basis for Petitioner's current claim for relief: ". . . And did you form any opinion as to what should happen to him in this case?" RT 12225. The prosecutor objected to this final question on the ground that "it would usurp the jury's function." *Id.* The state trial court sustained the objection. *Id.*

Petitioner contends exclusion of Chaplain Coryell's opinion on whether or not the death penalty should be imposed was improper, and that Petitioner was thereby "denied the right to

effective assistance of counsel, reasonable access to the courts, a fair trial, reliable determinations of guilt and penalty, equal protection of the law, and due process of the law, guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution." Pet. at 263.

The California Supreme Court considered and rejected Petitioner's claim on the merits during Petitioner's direct appeal:

> In his supplemental brief, defendant argues that the court erred in failing to permit opinion testimony by an Alameda County jail chaplain, Daniel Coryell, who had conducted worship services and Bible studies for jail inmates. The chaplain did testify he found defendant's participation in the worship services "consistent and extremely sincere." The court sustained the prosecutor's objection, however, to defense counsel's question, "And did you form any opinion as to what should happen to him in this case?"
>
> Defendant argues that he was entitled to introduce any facts or evidence that mitigate his offense, and that testimony by a person such as Chaplain Coryell, with whom defendant assertedly had a significant relationship, that defendant deserves to live, is proper mitigating evidence as "indirect evidence of the defendant's character."
>
> The Attorney General, on the other hand, (1) questions whether the record supports a finding of a significant relationship between the chaplain and defendant, and (2) observes that the opinions of expert witnesses on whether death is or is not an appropriate punishment in a particular case are generally held irrelevant and inadmissible. The Attorney General argues that such testimony on the ultimate punishment issue does not assist the jury in making its "normative, individualized penalty determination."
>
> If we were to conclude that the trial court erred in failing to admit Chaplain Coryell's opinion testimony, we would find any such error harmless in this case. As previously noted, the jury had heard the chaplain testify he found defendant's involvement in the jail's religious program "consistent and extremely sincere." Assuming that this defense witness would have further opined that defendant had sufficiently redeeming qualities that rendered the death penalty inappropriate, still, in light of the whole record, it is not reasonably possible that the jury would have returned a different penalty verdict but for the assumed error.

*Ervin*, 990 P.2d at 536–37 (citations omitted).

A state court's evidentiary ruling is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031

9

(9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986).

Here, Petitioner contends that exclusion of Chaplain Coryell's opinion as to whether or not the death penalty should be imposed violates the constitutional guarantees articulated by the U.S. Supreme Court in *Lockett v Ohio*, 438 U.S. 586, 604 (1978), and *Skipper v South Carolina*, 476 U.S. 1, 4 (1986). However, neither *Lockett* nor *Skipper* clearly establishes, as a matter of federal law, that a witness must be permitted to opine on the ultimate question of whether the death penalty should be imposed in a particular case.

In *Lockett*, a plurality of the U.S. Supreme Court concluded that the Eighth and Fourteenth Amendments require that "in all but the rarest kind of capital case," the sentencer must "not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U.S. at 604 (emphasis omitted). These characteristics and circumstances included a defendant's "character, prior record, age, lack of specific intent to cause death, and . . . relatively minor part in the crime." *Id.* at 597. However, *Lockett* did not purport to "limit[] the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Id.* at 604 n.12.

In *Skipper*, the U.S. Supreme Court applied the reasoning of *Lockett* and a subsequent decision, *Eddings v. Oklahoma*, 455 U.S. 104 (1982), in a case where the defendant was not permitted "to introduce testimony of two jailers and one 'regular visitor' to the jail to the effect that [the defendant] had 'made a good adjustment' during his time spent in jail." *Lockett*, 476 U.S. at 3. The U.S. Supreme Court held that exclusion of such evidence was improper, as it was mitigating evidence relevant to whether the "defendant would not pose a danger if spared (but incarcerated)" and to the "defendant's disposition to make a well-behaved and peaceful adjustment to life in prison" if a sentence of death were not imposed by the jury. *Id.* at 5, 7.

Both *Lockett* and *Skipper* dealt with the exclusion of mitigating testimony concerning a defendant's character, record, or the circumstances of the offense, rather than a witness's ultimate opinion on whether or not the death penalty should be imposed. Here, Chaplain Coryell was

10

permitted to testify as to matters within his knowledge concerning Petitioner's character, including the apparent sincerity of Petitioner's religious activities. The state trial court excluded only Coryell's ultimate opinion on the sentence to be imposed. Petitioner does not cite, and this Court has not located, any authority of the U.S. Supreme Court clearly establishing that the exclusion of such an opinion, as opposed to exclusion of factual testimony concerning a defendant's character or circumstances, rises to the level of a constitutional violation.

In addition, at least one court of appeal has concluded that the exclusion of comparable opinion evidence does not rise to the level of a constitutional violation under *Skipper* and *Lockett*. *See Robison v. Maynard*, 829 F.2d 1501, 1504 (10th Cir. 1987), *overruled on other grounds by Romano v. Gibson*, 239 F.3d 1156 (10th Cir. 2001). In *Robison*, the Tenth Circuit found that habeas relief was not warranted under *Skipper* or *Lockett* where the district court excluded the opinion of a victim's family member, who had "expressed . . . a desire to ask the jury not to impose the death penalty." *Robison*, 829 F.2d at 1504. In rejecting the defendant's argument that exclusion of the evidence violated due process and *Skipper*, the Tenth Circuit held that the witness's personal opinion would have been irrelevant and was not the type of evidence that *Skipper* and *Lockett* contemplated. *Id.* at 1504–05; *cf. United States v. Brown*, 441 F.3d 1330, 1350–51 & n.8 (11th Cir. 2006) (no error in district court's exclusion of testimony from victim's husband that the "husband was opposed to the imposition of the death penalty").

Accordingly, having examined the U.S. Supreme Court's decisions in *Lockett* and *Skipper*, as well as pertinent federal circuit case law, the Court finds that the California Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law. Habeas relief under 28 U.S.C. § 2254(d)(1) is thus not warranted. *See Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (rejecting due process challenge based on asserted evidentiary error and noting that "[u]nder AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court.").

This Court also concludes that the California Supreme Court did not make an unreasonable

determination of the facts, *see* 28 U.S.C. § 2254(d)(2), and Petitioner does not contend otherwise.

Respondent's motion for summary judgment as to claim 22 is therefore GRANTED.

### B. Claim 23

In Claim 23 of Petitioner's amended habeas petition, Petitioner contends that the prosecutor's arguments concerning Petitioner's lack of remorse improperly commented on Petitioner's decision not to testify. Pet. at 266. Specifically, Petitioner objects to the following two comments the prosecutor made during closing arguments in Petitioner's penalty phase trial. First, after an extensive discussion of the credibility of the evidence of Petitioner's religious activities, the prosecutor stated: "returning to the evidence of the crime, again, another reason why factors in aggravation completely overwhelm any mitigation, is there a total lack of remorse whatsoever, by [Petitioner] for this crime?" RT 12526–27. Second, after describing the testimony of witnesses concerning Petitioner's actions after the crime, the prosecutor argued, "did you ever hear any of [Petitioner's] witnesses say he's truly sorry? I am still waiting to hear." *Id.* at 12528.

The prosecutor made these comments after receiving the following guidance from the state trial court outside the presence of the jury. *See id.* at 12483–89. The state trial court noted that "the propriety of commenting on the lack of remorse really depends on—in a sense on what inference the prosecution is asking the jury to draw from it." *Id.* at 12483. The state trial court further observed that "[o]bviously it would be improper . . . to argue that it should be seen as a comment on a defendant's decision not to testify," because the jury "certainly cannot form any negative inference from that." *Id.* The state trial court informed Petitioner's trial counsel that, as a result of those well-established principles, it was sure that the prosecutor "would not be arguing lack of remorse as a comment on [Petitioner's] failure to testify." *Id.* In addition, the state trial court observed that "similarly you can't argue lack of remorse as an aggravating factor in and of itself." *Id.* However, the state trial court noted that "lack of remorse could be properly argued as an attempt to negate evidence in mitigation," *id.* at 12483–84, and stated that it would permit argument from the prosecutor within the guidance it had provided. *Id.* at 12488–89.

On direct appeal, the California Supreme Court considered and rejected Petitioner's claim

12

concerning the prosecutor's lack of remorse arguments on the merits. The California Supreme Court reasoned as follows:

> Defendant's supplemental brief argues the court erred in allowing the prosecutor to argue defendant's "total lack of remorse" as "another reason why factors in aggravation completely overwhelm any mitigation." Defendant also complains of the prosecutor's related observation that he was "still waiting to hear" any of defendant's "witnesses say he's truly sorry."
>
> We have held that "the presence or absence of remorse is a factor 'universally' deemed relevant to the jury's penalty determination," and that the prosecutor may argue the defendant's lack of evidence of his remorse. Of course, the prosecutor may not comment on defendant's own failure to take the stand as evidence of his lack of remorse, for such comments are fundamentally unfair, given defendant's constitutional right to remain silent. In the present case, the prosecutor's comments regarding defendant's lack of remorse were unobjectionable, falling short of characterizing defendant's attitude as an aggravating factor, and avoiding comment on defendant's own silence. We find no error or misconduct.

*Ervin*, 990 P.2d at 537 (citations and internal quotation marks omitted).

Here, the gist of Petitioner's argument is that the prosecutor's arguments concerning Petitioner's lack of remorse "would be, directly or indirectly, a comment on the defendants' failure to take the stand, and thus would constitute error under *Griffin v. California*, 380 U.S. 609 (1965)." Pet. at 267.

The Ninth Circuit has observed that the "presence or absence of remorse is a factor relevant to the jury's penalty decision" in a California state capital case. *Harris v. Pulley*, 885 F.2d 1354, 1384 (9th Cir. 1988) (internal quotation marks omitted); *see also Isaacs v. Head*, 300 F.3d 1232, 1271 (11th Circ. 2002) (noting that "several other courts have found that, under many circumstances, arguments or comments related to a lack of remorse do not implicate the defendant's decision not to testify because they may relate to other evidence properly before the jury or to the defendant's demeanor at trial"). However, in *Griffin*, the U.S. Supreme Court held that the Fifth and Fourteenth Amendments prohibit a prosecutor from commenting on a defendant's failure to testify. *Griffin*, 380 U.S. at 615.

Thus, although arguments related to lack of remorse are not *per se* improper, they may

13

violate *Griffin* when made in a manner that amounts to a comment on a defendant's failure to testify. *Sims v. Brown*, 425 F.3d 560, 587–88 (9th Cir. 2005), *amended by* 430 F.3d 1220 (9th Cir. 2005) (citing *Griffin* and finding prosecutor's statements regarding petitioner's lack of remorse during penalty phase did not constitute impermissible commentary about petitioner's exercise of his Fifth Amendment right not to testify).

The Ninth Circuit has explained that, "[w]hile a direct comment about the defendant's failure to testify always violates *Griffin*, a prosecutor's indirect comment violates *Griffin* only if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *Hovey v. Ayers*, 458 F.3d 892, 912 (9th Cir. 2006) (internal quotation marks omitted). In addition, in the direct review context, the Ninth Circuit has explained that a prosecutor may comment on "the defense's failure to present exculpatory evidence," as opposed to "defendant's failure to testify." *United States v. Mende*, 43 F.3d 1298, 1301 (9th Cir. 1995) (quotation marks omitted); *United States v. Mares,* 940 F.2d 455, 461 (9th Cir. 1991) (same).

Neither of the prosecutor's two comments at issue in the instant case directly commented on Petitioner's failure to testify. The first comment, that "there [is] a total lack of remorse whatsoever, by [Petitioner] for this crime," did not directly comment regarding testimony or lack thereof by Petitioner, as opposed to an absence of evidence of remorse. RT 12526–27. Similarly, the second comment was directed to whether the statements of Petitioner's *witnesses* indicated an absence of remorse, not whether or not Petitioner himself testified. *See id.* at 12528 ("Did you ever hear any of [Petitioner's] *witnesses* say he's truly sorry? I am still waiting to hear.") (emphasis added).

Nor does the record support Petitioner's contention that the prosecutor's comments were an impermissible indirect reference to Petitioner's failure to testify. When placed in context, the prosecutor's statements in the instant case addressed Petitioner's conduct following the crime, and the lack of remorse demonstrated by that conduct, as well as Petitioner's absence of remorse reflected in Petitioner's witnesses' testimony. The statements did not constitute a comment of any

14

kind "manifestly intended" to call attention to the defendant's failure to testify or phrased such that the jury would "naturally and necessarily" perceive them as such. *Hovey*, 458 F.3d at 912.

For example, after making the first comment at issue ("is there a total lack of remorse whatsoever, by [Petitioner] for this crime?"), the prosecutor directly contrasted Petitioner's evidence of sincere religious activities with Petitioner's actions following the crime. The prosecutor argued "do you recall, do you recall how this deeply religious man described the murder to Zane [Sinnott]?" *Id.* at 12527. The prosecutor then recounted Sinnott's testimony that Petitioner referred to the victim in vulgar terms after committing the crime: "Remember that, 'Abduct the bitch.' Spoken like a true religious cleric. Should we call him Monsignor Ervin? . . . Here it is, one week after he knifed her to death, and all she is to him is a bitch. Very remorseful." RT 12527.

The prosecutor's statement, viewed in context, argued that Petitioner lacked remorse based on Petitioner's conduct after the crime—not based on Petitioner's lack of testimony. The further import of the prosecutor's argument was that Petitioner's conduct after the crime was inconsistent with his claims of sincere religious activities, not that Petitioner should have testified or explained his actions. Accordingly, the prosecutor's comment was neither "manifestly intended" to call attention to defendant's failure to testify nor phrased in a manner that a jury would "naturally and necessarily" perceive it as such. *Hovey*, 458 F.3d at 912.

Similarly, immediately before making the second comment at issue, the prosecutor recounted the testimony of another witness, Gwyn Willis, that Petitioner was "in a joking mood, playing around, basically," after the crime. RT 12528. Based on this testimony concerning Petitioner's conduct, the prosecutor argued that Petitioner "murdered a total stranger . . . and then can come back a few hours later and jokes [sic] about it." *Id.* The prosecutor had previously described the testimony of Petitioner's mitigation witnesses concerning Petitioner's musical skill and religious activities. *E.g.*, *id.* at 12520–23. It was in this context, after recounting Willis's testimony concerning Petitioner's "joking" conduct following the crime, that the prosecutor made the challenged comment regarding the testimony of Petitioner's witnesses: "Do you really think

15

being a classic guitar player mitigates this horror? Did you ever hear any of [Petitioner's] witnesses say he's truly sorry? I am still waiting to hear. His turn on, turn off, again religious habits don't even begin to match the totality of his crime." *Id.* at 12528.

The prosecutor's argument thus contrasted Petitioner's conduct, as described by Willis, with other evidence concerning Petitioner's character, such as the testimony of Petitioner's witnesses concerning Petitioner's musical skills and religious activities. In context, the prosecutor's statement is reasonably viewed as an argument that Petitioner's joking conduct demonstrated a lack of remorse, and that Petitioner's evidence in mitigation was inconsistent with Petitioner's conduct. The prosecutor did not improperly comment on Petitioner's own failure to take the stand, or imply that Petitioner should have done so. *See, e.g.*, *Beardslee v. Woodford*, 358 F.3d 560, 586–87 (9th Cir. 2003), *supplemented by Beardslee v. Brown*, 393 F.3d 1032 (9th Cir. 2004) (comments impermissible under *Griffin* where prosecutor's arguments concerning lack of remorse effectively "contrast[ed] the actual trial with a hypothetical one in which the defendant testified").

In this regard, the instant case is also unlike those where the Ninth Circuit has found that a prosecutor's comments indirectly implicated a defendant's decision not to testify because the defendant was the only person who could supply the evidence at issue. For example, in *Hovey*, the prosecutor's statements focused on the defendant's "failure to explain his actions or to contradict the informants' testimony" that the defendant had used a knife to commit a murder. 458 F.3d at 912. The Ninth Circuit noted that the prosecutor's argument that the defendant had said "nothing different" or contradicted the informants' testimony about the knife "naturally and necessarily implicates [the defendant's] decision not to testify, as [the defendant] is the only person who could definitively answer the question of whether he used a knife." *Id.*; *see also Lincoln v. Sunn*, 807 F.2d 805, 810 & n.1 (9th Cir. 1987) (noting that "[t]he repeated reference of the prosecution to the 'only . . . person' who could explain the evidence might be interpreted as a direct comment on the defendant's failure to testify" and noting that prosecutor also argued that "there's only one person who can tell us" what happened). Here, in contrast, the prosecutor did

not argue that only Petitioner could explain the evidence or that only Petitioner could contradict the testimony of other witnesses.  Rather, the prosecutor merely argued that Petitioner lacked remorse, and that Petitioner's witnesses, despite testifying as to Petitioner's other characteristics (such as Petitioner's musical ability and the sincerity of Petitioner's religious beliefs), did not provide evidence that Petitioner was remorseful.

The Court therefore rejects Petitioner's contention that the prosecutor's comments concerning lack of remorse were manifestly or necessarily a comment on Petitioner's failure to testify in violation of *Griffin*.  *Cf. Mende*, 43 F.3d at 1301 (comment on defense's failure to present exculpatory evidence is permissible, as opposed to comment on defendant's failure to testify); *Mares,* 940 F.2d at 461 (same).

Petitioner also briefly contends that the prosecutor's arguments concerning lack of remorse served "to advance a non-statutory factor in aggravation in violation of [California's] 1978 death penalty law."  Pet. at 267.  As explained in this Court's June 14, 2016 Order, ECF No. 283 at 7–9, California's death penalty statute lists aggravating circumstances which a trier of fact may consider and weigh, *see* Cal. Penal Code § 190.3.  The California Supreme Court has stated with regard to these factors that "[a] prosecutor may properly comment on a defendant's lack of remorse, as relevant to the question of whether remorse is present as a mitigating circumstance, so long as the prosecutor does not suggest that lack of remorse is an aggravating factor." *People v. McKinzie*, 281 P.3d 412, 456 (Cal. 2012) (citations and internal quotation marks omitted), *abrogated on other grounds by People v. Scott*, 349 P.3d 1028 (Cal. 2015).  In considering Petitioner's direct appeal, the California Supreme Court held the prosecutor's statements concerning lack of remorse "[fell] short of characterizing defendant's attitude as an aggravating factor." *Ervin*, 990 P.2d at 537.  Petitioner identifies no clearly established federal law to which the California Supreme Court's decision would be contrary or that the California Supreme Court unreasonably applied.

For the above reasons, the Court finds that the California Supreme Court's determination that the prosecutor did not impermissibly comment on Petitioner's decision not to testify and did

not improperly argue lack of remorse as a non-statutory aggravating factor was neither contrary to, nor an unreasonable application of, clearly established federal law.  Habeas relief under 28 U.S.C. § 2254(d)(1) is thus not warranted.  This Court also concludes that the California Supreme Court did not make an unreasonable determination of the facts, *see* 28 U.S.C. § 2254(d)(2), and Petitioner does not contend otherwise.

Respondent's motion for summary judgment as to claim 23 is therefore GRANTED.

## IV. CONCLUSION

For the foregoing reasons, Respondent's motion for summary judgment as to claims 22 and 23 is GRANTED.

**IT IS SO ORDERED.**

Dated:  June 16, 2016

*Lucy H. Koh*
LUCY H. KOH
United States District Judge