UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CURTIS LEE ERVIN,<br><br>               Petitioner,<br><br>     v.<br><br>RON DAVIS, Warden, California State Prison at San Quentin,<br><br>              Respondent. | Case No. 00-CV-01228-LHK<br><br>**ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33**<br><br>Re: Dkt. No. 213 |

In 1991, Petitioner Curtis Lee Ervin ("Petitioner") was convicted of the murder of Carlene McDonald and sentenced to death. On September 7, 2007, Petitioner filed an amended petition for a writ of habeas corpus before this Court, which included 37 claims in total. ECF No. 97 ("Pet."). Respondent filed a motion for summary judgment as to all 37 claims in Petitioner's amended habeas petition. ECF No. 213 ("Mot."). Petitioner opposed Respondent's motion and requested an evidentiary hearing on 15 of Petitioner's 37 claims. This Court has ruled on 23 of the 37 claims.

This Order addresses claims 32 and 33 in Petitioner's amended habeas petition, which pertain to the alleged ineffective assistance of Petitioner's appellate counsel. Petitioner requests

an evidentiary hearing on both claims 32 and 33.  For the reasons discussed below, Respondent's motion for summary judgment as to claims 32 and 33 is GRANTED, and Petitioner's request for an evidentiary hearing as to claims 32 and 33 is DENIED.

## I.      BACKGROUND

### A.  Factual Background[1]

On February 21, 1991, a jury convicted Petitioner of first degree murder with the special circumstance finding of murder for financial gain.  Evidence presented at Petitioner's trial established that Robert McDonald ("McDonald"), the former spouse of Carlene McDonald ("Carlene"), had hired Petitioner and Arestes Robinson ("Robinson"), to kill Carlene for $2,500.

At trial, Armond Jack ("Jack") testified that he had driven with Petitioner to meet McDonald to negotiate the price for killing Carlene.  Jack also testified that he had driven Petitioner and Robinson to Carlene's apartment on November 7, 1986, the night of the murder.  While Petitioner, Robinson, and Jack were driving to Carlene's apartment, Petitioner asked for and received a knife from Robinson.  With the assistance of a BB gun, Petitioner and Robinson kidnapped Carlene and used Carlene's vehicle to take Carlene to Tilden Park, where Petitioner stabbed Carlene to death with Robinson's assistance.  A patrol officer found Carlene's body the following afternoon.

Petitioner and Robinson met with McDonald the day after Carlene's murder and presented McDonald with Carlene's driver's license as proof of the murder.  McDonald paid Petitioner $2,500, which Petitioner shared with Robinson and others to purchase cocaine.  A few weeks after Carlene's murder, McDonald paid Petitioner an additional $1,700.  Sharon Williams ("Williams"), Petitioner's girlfriend, testified that Petitioner gave her a watch and ring later identified as belonging to Carlene.

In addition to the physical evidence linking Petitioner to Carlene's murder, Petitioner also

---

[1] The following facts are drawn from the California Supreme Court's opinion on Petitioner's direct appeal.  *People v. Ervin*, 990 P.2d 506, 513–14 (Cal. 2000); *cf. Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33

admitted various incriminating aspects of the crime to David Willis ("Willis"), Zane Sinnott ("Sinnott"), and the investigating police officer, Sergeant Dana Weaver ("Weaver").  According to these witnesses, Petitioner admitted that he and Robinson had confronted Carlene, had pointed the BB gun at her, had forced her into her car, and had driven her to Tilden Park.  Petitioner further admitted to stabbing Carlene to death at Tilden Park while Robinson held her.  The prosecution also introduced testimony from Robinson's girlfriend, Gail Johnson ("Johnson"), who stated that Robinson had admitted to participating in Carlene's murder.

Robinson, McDonald, and Petitioner were tried together.  Petitioner made no claims of innocence, but sought to impeach the testimony of prosecution witnesses Jack, Sinnott, and Willis.  In addition, Dr. Fred Rosenthal ("Rosenthal"), a psychiatrist, testified that Petitioner's cocaine consumption might have impaired Petitioner's thought process and that Petitioner thus did not appreciate the seriousness and finality of killing someone for money.  The jury found Petitioner's defenses unavailing and convicted Petitioner of first degree murder.

During the penalty phase of Petitioner's trial, the prosecution introduced evidence of a prior bank robbery conviction and some jail disciplinary problems.  Petitioner introduced mitigating evidence regarding his character, employment, family, drug use, religious involvement, and musical skills.  McDonald and Robinson also introduced mitigating evidence.  The jury returned death verdicts for Petitioner and McDonald, but chose life imprisonment without parole for Robinson.

### B.  Procedural History

On January 6, 2000, the California Supreme Court affirmed Petitioner's conviction and sentence on direct appeal.  *People v. Ervin*, 990 P.2d 506, 537 (Cal. 2000).  The United States Supreme Court denied certiorari on October 2, 2000.  *Ervin v. California*, 531 U.S. 842 (2000).  On November 12, 2002, Petitioner filed a federal habeas petition before this Court.  ECF No. 32.  On January 22, 2003, Petitioner filed a corrected federal habeas petition.  ECF No. 45.  That same day, the Court stayed all federal habeas proceedings so that Petitioner could exhaust his claims in state court.  Petitioner filed a state habeas petition on October 1, 2003, and on December 14, 2005,

3

1    the California Supreme Court denied Petitioner's state habeas petition.

2          Following the California Supreme Court's decision, Petitioner filed an amended federal

3    habeas petition.  ECF No. 97.  Respondent filed a response on March 7, 2008, ECF No. 110, and

4    Petitioner filed a traverse on November 13, 2008.  ECF No. 133.

5          On February 14, 2012, Respondent filed the instant motion for summary judgment.  On

6    January 8, 2013, Petitioner filed an opposition and a request for an evidentiary hearing on claims

7    7–10, 19–20, 25–30, and 32–34.  ECF No. 249 ("Opp'n").  Respondent filed a reply on May 10,

8    2013, which included an opposition to Petitioner's request for an evidentiary hearing.  ECF No.

9    259 ("Resp. Reply").  On August 16, 2013, Petitioner filed a reply to Respondent's opposition to

10   Petitioner's request for an evidentiary hearing.  ECF No. 266 ("Pet. Reply").

11         On January 7, 2015, the instant action was reassigned from U.S. District Judge Claudia

12   Wilken to the undersigned judge.  ECF No. 268.  On March 16, 2015, the Court stayed

13   Petitioner's penalty phase claims pending the Ninth Circuit's decision of an appeal filed in *Jones*

14   *v. Chappell*, 31 F. Supp. 3d 1050 (C.D. Cal. 2014).   ECF No. 269.  The Ninth Circuit decided

15   *Jones* on November 12, 2015, and determined that the district court had erred in finding

16   California's post-conviction system of review in violation of the Eighth Amendment.  *Jones v.*

17   *Davis*, 806 F.3d 538 (9th Cir. 2015).  In the wake of the Ninth Circuit's decision in *Jones*, all of

18   Petitioner's claims are now ripe for review.

19         On December 11, 2015, this Court issued an order granting Respondent's motion for

20   summary judgment as to claims 1–5.  ECF No. 271.  On March 28, 2016, this Court issued an

21   order granting Respondent's motion for summary judgment as to claims 14–15 and 17–18.  ECF

22   No. 281.  On March 29, 2016, this Court issued an order granting Respondent's motion for

23   summary judgment as to claims 7–13.  ECF No. 282.  On June 14, 2016, this Court issued an

24   order granting Respondent's motion for summary judgment as to claims 21, 35, and 36.  ECF No.

25   283.  On June 15, 2016, this Court issued an order granting Respondent's motion for summary

26   judgment as to claims 6 and 16.  ECF No. 284.  On June 16, 2016, this Court issued an order

27   granting Respondent's motion for summary judgment as to claims 22 and 23.  ECF No. 285.

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   LEGAL STANDARD

### A. Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2254(d))

Because Petitioner filed his original federal habeas petition in 2002, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action.  *See Woodford v. Garceau*, 538 U.S. 202, 210 (2003) (holding that AEDPA applies whenever a federal habeas petition is filed after April 24, 1996).  Pursuant to AEDPA, a federal court may grant habeas relief on a claim adjudicated on the merits in state court only if the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

### 1. Contrary To or Unreasonable Application of Clearly Established Federal Law

As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs have separate and distinct meanings.  *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.").  A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts."  *Id.* at 412–13.

A state court's decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  A state court's determination that a claim lacks merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness."  *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

5

United States District Court
Northern District of California

Holdings of the U.S. Supreme Court at the time of the state court decision are the sole determinant of clearly established federal law. *Williams*, 529 U.S. at 412. Although a district court may "look to circuit precedent to ascertain whether [the circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam), "[c]ircuit precedent cannot refine or sharpen a general principle of [U.S.] Supreme Court jurisprudence into a specific legal rule," *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam) (internal quotation marks omitted).

### 2. Unreasonable Determination of the Facts

In order to find that a state court's decision was based on "an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (internal quotation marks omitted). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). That said, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or § 2254(d)(2), a federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). In the event that a federal court "determine[s], considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts," the federal court evaluates the petitioner's claim *de novo*. *Hurles*, 752 F.3d at 778. If error is found, habeas relief is warranted if that error

6

1   "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

2   *Abrahamson*, 507 U.S. 619, 638 (1993). Petitioners "are not entitled to habeas relief based on trial

3   error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637 (quoting *United*

4   *States v. Lane*, 474 U.S. 438, 449 (1986)).

5   **B. Federal Evidentiary Hearing (28 U.S.C. § 2254(e))**

6       Under *Cullen v. Pinholster*, habeas review under AEDPA "is limited to the record that was

7   before the state court that adjudicated the claim on the merits." 563 U.S. at 180–81. The Ninth

8   Circuit has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on

9   claims adjudicated on the merits in state court. *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir.

10  2013); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court

11  has declined to decide whether a district court may ever choose to hold an evidentiary hearing

12  *before* it determines that § 2254(d) has been satisfied . . . an evidentiary hearing is pointless once

13  the district court has determined that § 2254(d) precludes habeas relief.") (internal quotation marks

14  and citation omitted).

15  **C. Summary Judgment**

16      Summary judgment is appropriate if, when viewing the evidence and drawing all

17  reasonable inferences in the light most favorable to the nonmoving party, there are no genuine

18  issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

19  56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). At the summary judgment stage,

20  the Court "does not assess credibility or weigh the evidence, but simply determines whether there

21  is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is

22  "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to

23  a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in

24  favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

25      The moving party bears the initial burden of identifying those portions of the pleadings,

26  discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*

27  *Corp.*, 477 U.S. at 323. Whereas the party opposing summary judgment will have the burden of

28

7

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33

proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## III.   DISCUSSION

### A.  Claim 32

In Claim 32 of Petitioner's amended habeas petition, Petitioner claims that he "was deprived of the right to effective assistance of counsel on appeal."  Pet. at 356.  Specifically, Petitioner argues that his temporarily appointed attorney through the California Appellate Project ("CAP") experienced a conflict of interest stemming from another CAP attorney representing Petitioner's codefendant, Robert McDonald ("McDonald").  *Id.*  Petitioner states that CAP knew McDonald "had a terminal illness" and "wanted to give testimony favorable to Petitioner," but that Petitioner's temporarily appointed counsel "would not arrange for [McDonald's] deposition."  *Id.* Additionally, Petitioner alleges that CAP failed to preserve McDonald's files despite being "on notice that th[is] material was of potential exculpatory value" to Petitioner.  *Id.*

Petitioner presented this claim in his state habeas petition, and the California Supreme Court denied Petitioner relief without an opinion.  ECF No. 278-11 at 2 ("The petition for writ of habeas corpus . . . is denied.  All claims are denied on the merits.").  Under *Richter*, the California Supreme Court's decision constitutes a merits adjudication subject to AEDPA deference.  562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

### 1.  Conflict of Interest

#### a.  Background

Both Petitioner and McDonald were sentenced to death in 1991. After their sentencing, CAP assigned staff attorneys Aundré Herron ("Herron") and Jeannie Sternberg ("Sternberg") to represent Petitioner and McDonald, respectively, on a temporary basis.  The California Supreme

United States District Court
Northern District of California

1    Court eventually appointed John Doyle ("Doyle") as Petitioner's permanent appellate counsel on

2    July 27, 1994.  ECF No. 278-5 at 126.  McDonald died of a terminal illness on December 31,

3    1993, before receiving permanent appellate counsel.  ECF No. 278-6 at 99.

4        While being represented by Herron, Petitioner contends that a conflict of interest arose

5    after Petitioner advised Herron in multiple letters that McDonald wished to give a deposition "as

6    to what <u>really</u> happened in this case."  ECF No. 278-6 at 91 (emphasis in original).  Petitioner also

7    claims that he informed CAP attorneys in these letters that McDonald was terminally ill, and that

8    any statements from McDonald should be taken in a timely manner.

9        Petitioner contends that, had McDonald been deposed, McDonald would have implicated

10    Armond Jack ("Jack"), a prosecution witness, as Carlene's actual killer.  Pet. at 369.  Petitioner

11    relies on the transcript from an *in camera* hearing held at the guilt phase trial, where McDonald

12    complained that his trial attorney told him not to testify.  ECF No. 278-7 at 4.  At that hearing,

13    which occurred nearly two weeks into jury deliberations, McDonald stated that he felt that he was

14    "denied the right to testify."  *Id.*  McDonald stated that he did not testify because his attorney

15    assured McDonald that the attorney would expound on: (1) threats against Carlene before

16    Carlene's murder; (2) Sinnott, Jack, and Petitioner's extortion or attempted extortion of money

17    from McDonald related to the killing of Carlene, including Sinnott's attempted extortion of money

18    from McDonald by threatening McDonald's children; and (3) McDonald's "noninvolvement in

19    Carlene's death."  *Id.* at 4–5; *see* ECF No. 277 at 44, 73–75 (Sinnott's guilt phase trial testimony);

20    ECF No. 276-3 at 87 (Jack's guilt phase trial testimony).  McDonald stated a desire to "relay to

21    the jury what Armond Jack said to [McDonald] in admitting [Jack] caused Carlene's death while

22    [Jack] was continuing [Jack's] extortion demands."  ECF No. 278-7 at 5.  After observing that this

23    was the trial court's first notice of McDonald's desire to testify, the trial court denied McDonald's

24    request for a mistrial or to reopen the guilt phase evidence as untimely.  *Id.* at 6–7.

25        In addition to his letters to Herron, Petitioner marshals several other pieces of evidence to

26    support his contentions, including: (1) an internal CAP memorandum prepared by Herron; (2)

27    declarations by Doyle and Doyle's investigator related to Herron's perception of a conflict of

United States District Court<br/>Northern District of California

28

9

1   interest; and (3) declarations by Greta Ervin ("Greta") and Chauncey J. Veasley ("Veasley")

2   related to McDonald's desire to provide a deposition exculpating Petitioner.

3       In Herron's internal memorandum, written on January 11, 1994, Herron explained to her

4   CAP supervisor why she did not comply with Petitioner's request that she depose McDonald.

5   According to this memorandum, Herron had explained to Petitioner that a conflict of interest

6   prevented her from "talking directly to" Sternberg, McDonald's CAP-assigned attorney.  ECF

7   No. 278-6 at 107.  In light of this conflict of interest, Herron recommended to Petitioner that

8   Petitioner instead reach out to McDonald personally and obtain a written statement from

9   McDonald.  Despite multiple efforts, Petitioner could not obtain such a statement from McDonald.

10  Herron recalled asking Petitioner "about [Petitioner's] efforts to get McDonald to give [Petitioner]

11  something in writing, but each time, [Petitioner] indicated he had no success in doing so."  *Id.*

12  Although Herron did not recall "the exact nature" of Petitioner's efforts, Petitioner indicated to

13  Herron that Petitioner "had broached the issue on more than one occasion"  *Id.*

14      Next, according to Doyle, Petitioner's permanent appellate counsel, Herron admitted to

15  Doyle in a meeting "that it was known that Mr. McDonald had no real chance of recovery [from

16  his terminal illness]."  ECF No. 278-5 at 108.  An investigator hired by Doyle recalled Herron

17  admitting, in that same meeting, "that McDonald was aware of his impending demise and wanted

18  to give a deathbed deposition exonerating [Petitioner]."  *Id.* at 112.  Neither Doyle nor Doyle's

19  investigator explained how Herron knew of McDonald's alleged desire to provide a deposition

20  exonerating Petitioner.  Herron did not represent McDonald, never spoke with McDonald, and

21  never discussed McDonald with McDonald's CAP attorney.  ECF No. 278-6 at 107–08.  Based on

22  the record, it appears that Herron's knowledge was based on Petitioner's letters asserting that

23  McDonald had a desire to provide an exonerating deposition.  ECF No. 278-6 at 91–95, 103.

24      Finally, Petitioner's sister, Greta, declared that Herron, in Greta's presence, "would

25  reassure [Petitioner] that [Herron] would make the necessary arrangements to take the deposition

26  of Mr. McDonald before he died."  ECF No. 278-5 at 122.  A fellow death row prisoner, Veasley,

27  also stated that McDonald was "frustrated" that CAP did not arrange for McDonald's deposition

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33

United States District Court
Northern District of California

1   and that McDonald had told Veasley that "[Petitioner] did not commit the murder, or have

2   anything to do with it."  *Id.* at 116.

3         **b.  Analysis**

4         Although a state need not provide criminal defendants the right to a direct appeal, *Ross v.*

5   *Moffitt*, 417 U.S. 600, 611 (1974), a state that chooses to do so must ensure that defendants are

6   provided effective assistance of appellate counsel, *Evitts v. Lucey*, 469 U.S. 387, 401 (1987).

7   California guarantees criminal defendants sentenced to death—like Petitioner—a right to an

8   automatic appeal, *see* Cal. Penal Code § 1239(b), and thus also guarantees such individuals the

9   right to effective assistance of appellate counsel.

10        The U.S. Supreme Court has held that the general rule for evaluating a claim of ineffective

11  assistance of appellate counsel is enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).

12  *Smith v. Robbins*, 528 U.S. 259, 285–89 (2000).  To prevail on a *Strickland* claim, Petitioner must

13  establish two things.  First, he must establish that counsel's representation was deficient, i.e., that

14  it "fell below an objective standard of reasonableness" under prevailing professional norms.

15  *Strickland,* 466 U.S. at 687–88.  Second, he must establish that he was prejudiced by counsel's

16  deficient performance, i.e., that "there is a reasonable probability that, but for counsel's

17  unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A

18  reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

19        Petitioner supports his claim of ineffective assistance of appellate counsel by relying on

20  *Cuyler v. Sullivan*, 446 U.S. 335, 351 (1980).  Pet. at 371.  *Sullivan* held "that an actual conflict of

21  interest" may violate the Sixth Amendment right to effective assistance of trial counsel where the

22  conflict of interest "adversely affected [defendant's] lawyer's performance."  *Sullivan*, 446 U.S. at

23  348.  If a defendant proves that such a conflict of interest exists, then prejudice is presumed.  Thus,

24  the U.S. Supreme Court has recognized *Sullivan* as "an exception" to the "general rule" that

25  otherwise requires defendants to show prejudice under *Strickland*.  *Mickens v. Taylor,* 535 U.S.

26  162, 166 (2002).

27        Petitioner's reliance upon *Sullivan*, however, is unavailing.  The U.S. Supreme Court has

28

United States District Court
Northern District of California

11

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33

1    not extended *Sullivan* beyond conflicts involving multiple concurrent representations *at trial*.

2    *Mickens,* 535 U.S. at 174–76.  Indeed, in *Mickens*, the U.S. Supreme Court explicitly stated that

3    the extension of *Sullivan beyond* concurrent *trial* representation conflicts "remains, as far as the

4    jurisprudence of this Court is concerned, an open question."  *Id.* at 176.

5        In applying *Mickens*, the Ninth Circuit, in *Foote v. Del Papa*, 492 F.3d 1026, 1029, 1030

6    (9th Cir. 2007), rejected petitioner's assertion of a "Sixth Amendment right to be represented by

7    conflict-free appellate counsel" because "[t]he [U.S.] Supreme Court has never held that the

8    *Sullivan* exception applies either to a defendant's 'irreconcilable conflict' with his appointed

9    appellate counsel or to such counsel's conflict of interest."  Consistent with *Mickens* and *Foote*,

10   this Court finds that there is no clearly established federal law holding that *Sullivan* applies to a

11   conflict of interest for appellate counsel.  To obtain relief under § 2254(d)(1), Petitioner must

12   therefore establish that the California Supreme Court unreasonably applied *Strickland* in rejecting

13   Petitioner's claim of ineffective assistance of appellate counsel.

14       The California Supreme Court did not unreasonably apply *Strickland*  because the record

15   did not show that McDonald actually wanted to provide an exonerating deposition.  Without

16   establishing McDonald's desire to provide an exonerating deposition, Petitioner cannot establish

17   any prejudice from CAP's failure to obtain a deposition from McDonald.  Petitioner's evidence

18   consisted mostly of Petitioner's own letters expressing McDonald's desire to provide an

19   exculpatory deposition.  Although Herron admitted to Doyle's investigator that McDonald desired

20   to provide a deposition exonerating Petitioner, the only basis for Herron's knowledge appears to

21   be Petitioner's own assertions.  Only fellow death row prison inmate Veasley corroborated

22   Petitioner's assertions by stating that McDonald was "frustrated" that CAP did not arrange for

23   [McDonald's] deposition and that McDonald had told Veasley that "[Petitioner] did not commit

24   the murder, or have anything to do with it."[2]  ECF No. 278-5 at 116.

25   _____

26   [2] Petitioner has attempted to supplement his Claim 32 arguments with evidence obtained during
     discovery granted in federal court by Judge Wilken.  Opp'n at 148–60; *see* ECF No. 161 at 9–10
27   (granting Petitioner's motion for discovery to depose CAP employees).  However, a federal
     court's habeas review "is limited to the record that was before the state court that adjudicated the
28
     Case No. 00-CV-01228-LHK
     ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33

1    Petitioner and Veasley's assertions of McDonald's desire to provide a deposition, however,

2  conflicted with Herron's account that Petitioner could not obtain a written statement from

3  McDonald despite Petitioner "broach[ing]" the topic more than once.  ECF No. 278-6 at 107.  No

4  evidence in the record contradicts Herron's account of Petitioner's multiple failed attempts to

5  obtain a written statement from McDonald.  Having no evidence from McDonald himself and an

6  uncontradicted account of Petitioner's multiple failures to obtain a written statement from

7  McDonald, the California Supreme Court was not unreasonable in rejecting Petitioner's claim,

8  which relies on Veasley and Petitioner's assertions that McDonald desired to give a deposition

9  exonerating Petitioner.  *Cf. Herrera v. Collins,* 506 U.S. 390, 417-18 (1993) (observing that

10  Petitioner's hearsay affidavits in support of actual innocence claims, given after a capital trial and

11  after the alleged perpetrator is dead, are "particularly suspect" and must also be viewed in light of

12  evidence presented at Petitioner's guilt phase trial).  Moreover, Veasley and Petitioner's assertions

13  that McDonald desired to provide a deposition of Petitioner's "noninvolvement" conflict with the

14  ample evidence at the guilt phase trial that Petitioner was involved in negotiating the payment

15  price for Carlene's murder with McDonald; showed Carlene's driver's license, watch, and ring to

16  Willis after Carlene's murder; gave Carlene's watch and ring to Petitioner's girlfriend; and was

17  involved in attempts to obtain additional money from McDonald after Carlene's murder.

18  *Compare* ECF No. 278-6 at 95, *and* ECF No. 278-5 at 116, *with Ervin*, 990 P.2d at 513, 522–27.

19  Under these circumstances, the California Supreme Court did not unreasonably apply *Strickland*

20  when it rejected Petitioner's claim of ineffective assistance of appellate counsel based on

21  McDonald's alleged desire to provide a deposition exonerating Petitioner.

22    Even if McDonald desired to provide a supporting deposition implicating Jack, Petitioner

23  still has not established that the California Supreme Court unreasonably applied *Strickland* such

claim on the merits."  *Pinholster*, 563 U.S. at 181.  This limitation "applies even where there has
been a summary denial" by a state court.  *Id.* at 188 (citing *Richter*, 562 U.S. at 101).  This Court
is therefore limited to the evidence before the California Supreme Court during state habeas
proceedings.  Petitioner's reliance upon information produced at a later time in federal discovery
is thus unavailing.

13

1   that no fair-minded jurist could agree with the court's rejection of Petitioner's claim.  *See Richter*,

2   562 U.S. at 101.  Specifically, Petitioner cannot establish that the California Supreme Court

3   unreasonably failed to find prejudice under *Strickland* based on CAP's conflict of interest.

4   Whether McDonald's deposition would have created a reasonable probability of a different result

5   depends in part on the evidence supporting Petitioner's conviction.  *See Strickland*, 466 U.S. at

6   696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been

7   affected by errors than one with overwhelming record support.").

8          Here, ample physical evidence connected Petitioner to Carlene's murder.  Before Carlene's

9   murder, Petitioner was spotted with the knife used to kill Carlene.  *Ervin*, 990 P.2d at 522.  After

10   Carlene's murder, Petitioner gave Carlene's watch and ring to Petitioner's girlfriend and retained

11   Carlene's vehicle, parking it and seeking to have it stripped, cleaned, or burned.  *Id.* at 514.

12          Additionally, evidence from four witnesses—Willis, Sinnott, Weaver, and Jack—all

13   supported Petitioner's role in the murder of Carlene for Petitioner's financial gain.  In a recorded

14   statement, Willis stated that Petitioner, on the night of the murder, "admitted killing a woman and

15   showed Carlene's driver's license, watch, and ring to Willis."  *Ervin*, 990 P.2d at 524.  Willis also

16   stated that, on the next morning, Petitioner admitted to stabbing Carlene while Robinson held her.

17   *Id.*  At the guilt phase trial, Sinnott testified that he overheard Petitioner admit to "killing a woman

18   with a knife, after using a toy gun to abduct her."  *Id.* at 526.  Sinnott also testified that he heard

19   Jack and Petitioner discuss their efforts to obtain more money from McDonald.  *Id.*  Weaver

20   testified that when Weaver showed Petitioner a toy gun, Petitioner stated that the toy gun

21   resembled the one Petitioner and Robinson used to force Carlene into her car to abduct her.  *Id.* at

22   527.  Jack testified that he and Petitioner together learned that McDonald would pay to have

23   McDonald's ex-wife killed.  *Id.* at 522.  Jack further testified about Petitioner's involvement in

24   negotiations with McDonald about payment for Carlene's murder, searching for Carlene's car in a

25   BART parking lot, and driving to Carlene's apartment.  *Id.*  At Carlene's apartment, Jack observed

26   Petitioner ask for a knife and receive one from Robinson.  *Id.*  Jack testified that Petitioner

27   admitted to Jack that "[Petitioner] did it."  *Id.*  On two occasions, Jack received from Petitioner

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33

1    portions of McDonald's payment for the killing of Carlene.  *Id.*

2         Weighed against this ample evidence, the California Supreme Court did not unreasonably

3    apply *Strickland* in rejecting the argument that a deposition from McDonald would have a

4    reasonable probability of affecting the outcome of Petitioner's direct appeal or Petitioner's state

5    habeas petition.  Even if McDonald intended to state in a deposition that (1) Jack extorted

6    McDonald; (2) Jack admitted to causing Carlene's death while making these extortion demands;

7    and (3) Petitioner did not have anything to do with Carlene's death, such statements would not

8    have created a reasonable probability of a different result.  McDonald was not present during the

9    events on the night of the murder, much less during the actual killing.  Deposition statements by

10   McDonald could only relay an alleged admission by Jack in the context of Jack attempting to

11   extort more money from McDonald.

12        Moreover, the jury already had an opportunity to consider Jack's involvement in Carlene's

13   murder.  The jury was aware of Jack's involvement in the murder plan and his grant of immunity

14   from the prosecution.  *See* ECF No. 282 at 7–11.  Jack was present at the negotiation with

15   McDonald about payment for Carlene's murder.  *Ervin*, 990 P.2d at 522.  Jack helped Petitioner

16   and Robinson search for Carlene's car in a BART parking lot.  *Id.*  Jack then drove Petitioner and

17   Robinson to Carlene's apartment.  *Id.*  The jury remained free to weigh Jack's testimony that he

18   drove away after leaving Petitioner and Robinson at Carlene's apartment against the thorough

19   impeachment of Jack at the guilt phase trial by Petitioner and McDonald's trial counsel, during

20   which Jack admitted that he had previously lied when speaking to police about Carlene's murder.

21   Defense counsel also "argued that the jury should disbelieve [Jack] because [Jack] had been given

22   immunity for perjury."  *Ervin*, 990 P.2d at 523.  After considering the evidence and arguments, the

23   jury nonetheless convicted Petitioner.  Petitioner fails to show how any deposition statements from

24   McDonald on direct appeal or state habeas would have further undermined Jack's already

25   questionable testimony at the guilt phase trial, much less how McDonald's statements would have

26   undermined the physical evidence and testimony of three other witnesses against Petitioner.

27        The Court need not address whether Petitioner's appellate counsel was deficient because

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33

United States District Court
Northern District of California

Petitioner has not established that the California Supreme Court unreasonably failed to find sufficient prejudice. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Accordingly, the California Supreme Court's rejection of Petitioner's conflict of interest claim was not contrary to, or an unreasonable application of, clearly established federal law.

### 2.   Failure to Preserve Files on McDonald

Petitioner also argues that he received ineffective assistance of appellate counsel because of CAP's failure to preserve files related to McDonald. Pet. at 368. Petitioner relies primarily on the declaration of Michael Millman ("Millman"), CAP's Executive Director. ECF No. 278-5 at 130. Millman states in this declaration that CAP provided all of the "documents and files we have located" on Petitioner. *Id.* Millman further acknowledges that CAP "completed" their search for "any additional files regarding petitioner or Robert McDonald" but could not "locate any files for Robert McDonald." *Id.* Based on Millman's statements, Petitioner concludes that "the full extent of exculpatory information [McDonald] possessed will never be known" and that "the harm to Petitioner is irreparable." Pet. at 371.

These arguments lack merit. Petitioner does not even describe what information was contained in McDonald's CAP files, which CAP apparently failed to preserve. Petitioner does not, for instance, allege that CAP failed to preserve evidence concerning McDonald's willingness to provide Petitioner with a supporting deposition. Moreover, even if these allegedly missing files did support Petitioner's assertions—that McDonald would have implicated Jack as the killer in a supporting deposition—such evidence would not establish that the California Supreme Court unreasonably applied *Strickland* in rejecting Petitioner's claim of ineffective assistance of appellate counsel. As discussed above, in light of the physical and testimonial evidence against Petitioner, the California Supreme Court was not unreasonable in rejecting Petitioner's argument that a supporting deposition by McDonald had a reasonable probability of generating a different result for Petitioner's appeal or state habeas petition. *See supra* at 13–16.

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33

1    Petitioner's failure to preserve argument is therefore akin to Petitioner's conflict of interest

2  argument.  Both address evidence that McDonald could have—but did not—present on

3  Petitioner's behalf.  These arguments fail, as Petitioner has not demonstrated how the California

4  Supreme Court's decisions were contrary to or an unreasonable application of federal law.

5  Accordingly, Petitioner's motion for summary judgment as to claim 32 is GRANTED.

6    **B.  Claim 33**

7    Petitioner also claims that his constitutional rights were violated on the basis of the

8  following defects in the state appellate process: (1) delay in the appointment of appellate counsel;

9  (2) ineffective assistance of appellate counsel because counsel "failed to file a state habeas

10  petition;" and (3) "the loss of material evidence" because of defects in the state appellate process.

11  Pet. at 371.[3]  Petitioner presented these arguments in his state habeas petition, and the California

12  Supreme Court denied Petitioner relief without an opinion.  ECF No. 278-11 at 2.  The Court

13  addresses each argument in turn.

14    **1.  Delay in Appointment of Appellate Counsel**

15    Petitioner first contends that the delay in appointment of appellate counsel violated his

16  constitutional rights.  Pet. at 371.  Petitioner was sentenced to death on June 28, 1991, and was

17  appointed permanent appellate counsel on July 27, 1994.  ECF No. 278-5 at 126.

18    Petitioner, however, fails to cite any clearly established federal law to support his argument

19  that such a delay, standing alone, violates the U.S. Constitution.  In *Barker v. Wingo*, 407 U.S.

20  514, 530 (1972), the U.S. Supreme Court adopted a balancing test for resolving claims of delay in

21  violation of a defendant's Sixth Amendment right to a speedy trial.  However, the U.S. Supreme

22  Court has not extended this balancing test to delay on appeal, as noted by the Ninth Circuit in

23  *Hayes v. Ayers*, 632 F.3d 500 (9th Cir. 2011).

24

25  [3] Petitioner in fact alleges four defects in the state appellate process.  Pet. at 371.  However, for
    one of these defects, Petitioner duplicates the arguments addressed in Claim 32 when contending

26  that a defect "in the state appellate process" was "the interim representation of Petitioner by the
    California Appellate Project, a state-contracted agency which labored under a conflict of interest

27  due to its simultaneous representation of a codefendant."  *Id.*  The Court has already addressed this
    argument, as discussed above.

28

17

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33

United States District Court
Northern District of California

1    In *Hayes*, for instance, petitioner argued that a nearly eleven-year delay between his

2    sentencing and the filing of his opening brief on direct appeal violated due process.  *Id.* at 523.

3    The Ninth Circuit rejected this contention.  As the *Hayes* court noted, *Barker* applies to delay in

4    the appointment of trial counsel, and "[t]he interest in a prompt initial adjudication of a

5    defendant's rights, which underlies the right to a speedy trial, is plainly not the same as the interest

6    in having a trial court conviction reviewed quickly on appeal."  *Id.*  "No [U.S.] Supreme Court

7    decision 'squarely addresses' the right to a speedy appeal, nor does the right to a speedy trial

8    'clearly extend' to the appellate context."  *Id.* (quoting *Wright v. Van Patte*n, 552 U.S. 120, 123,

9    125 (2008)).  Thus, the Ninth Circuit denied the petitioner in *Hayes* habeas relief on his claim

10   "because no clearly established Federal law, as determined by the Supreme Court of the United

11   States[,] recognizes a due process right to a speedy appeal."  *Id.* (internal quotation marks

12   omitted).

13   Following *Hayes*, the Court finds that the California Supreme Court's rejection of

14   Petitioner's argument regarding appellate delay was not contrary to or an unreasonable application

15   of clearly established federal law.  Thus, Petitioner's argument does not warrant habeas relief.

16   **2.   Failure of Appointed Counsel to File a State Habeas Petition**

17   Petitioner next asserts that his appointed counsel, Doyle, was ineffective in failing to file a

18   state habeas corpus petition.  Pet. at 375.  Doyle failed to file a timely state habeas petition by the

19   state deadline, which was 90 days after the final date for the filing of Petitioner's reply brief on

20   direct appeal.  *See* California Supreme Court Policies Regarding Cases Arising From Judgments of

21   Death, Policy 3, Standard 1-1.1 (1998) (amended 2002, 2005); Pet. at 375–76.  According to

22   Doyle, Doyle's failure to file a timely petition stemmed from his need to further investigate

23   Petitioner's claims, as well as unforeseen personal and medical circumstances that affected Doyle

24   and Doyle's paralegal and support staff.  ECF No. 278-7 at 20–23.

25   Petitioner fails to establish prejudice resulting from the late filing of his state habeas

26   petition because the California Supreme Court nonetheless reviewed Petitioner's untimely state

27   habeas petition in full and rejected all of Petitioner's claims on the merits.  Thus, Petitioner's

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33

United States District Court
Northern District of California

1   contention that Doyle was ineffective because of Doyle's failure to file a timely state habeas

2   petition does not warrant habeas relief.

3          Moreover, Petitioner's assertion is unavailing because there is no clearly established

4   federal law establishing a constitutional right to the appointment of habeas counsel.  In fact, the

5   U.S. Supreme Court has expressly refused to extend *Evitts*, which guarantees defendants the right

6   to effective assistance of appellate counsel in certain situations, to state habeas proceedings.  As

7   the U.S. Supreme Court noted in *Pennsylvania v. Finley*, 481 U.S. 551, 558 (1987), "the

8   substantive holding of *Evitts*—that the State may not cut off a right to appeal because of a

9   lawyer's ineffectiveness—depends on a constitutional right to appointed counsel that does not

10  exist in state habeas proceedings."  The *Finley* rule applies to both "capital cases" and "noncapital

11  cases."  *Murray v. Giarratano*, 492 U.S. 1, 10 (1989).

12         **3.  Loss of Material Evidence from Delays**

13         Finally, Petitioner claims to suffer prejudice because Zane Sinnott ("Sinnott"); Gail

14  Johnson ("Johnson"); Petitioner's biological father Woodrow Dunkley, Sr. ("Dunkley"); and

15  Petitioner's mother Narcissi Ervin ("Narcissi") died before Petitioner could file his state habeas

16  petition.  Pet. at 381.  Petitioner contends that "material prosecution and mitigation witnesses have

17  been lost due to the passage of time."  *Id.*  As discussed below, these arguments lack merit.

18         Petitioner fails to explain why the death of Sinnott, who testified against Petitioner at the

19  guilt phase trial, prejudiced Petitioner in his appeal and state habeas proceedings.  Pet. at 381–83.

20  Nor does Petitioner specify to what Sinnott would have stated in a deposition during the state

21  habeas proceedings.  Petitioner's entire argument with respect to Sinnott is as follows: "[A]s a

22  result of the delayed state process and appointed counsel's failure to file a timely petition, material

23  prosecution and mitigation witnesses have been lost due to the passage of time, e.g., Zane Sinnott

24  (informant) . . . ."  Pet. at 381.  Based on the Court's review of Sinnott's guilt phase trial testimony

25  and Petitioner's claims on appeal, in his state habeas petition, and in his federal habeas petition,

26  Sinnott might have provided a deposition on two topics: (1) how the prosecution's decision to

27  provide Sinnott benefits constituted outrageous governmental conduct; or (2) Sinnott's testimony

28

United States District Court
Northern District of California

19

1    that Sinnott and McDonald knew Petitioner as "Turk." ECF No. 277 at 92–97; ECF No. 276-4 at

2    447; *Ervin*, 990 P.2d at 526–27; Pet. at 162, 169.

3           However, Petitioner does not contend that Sinnott, were he available, would have

4    contradicted his guilt phase trial testimony acknowledging his receipt of benefits, including "food

5    and lodging ($700)," for testifying at Petitioner's guilt phase trial. *Ervin*, 990 P.2d at 526; EFC

6    277 at 93–97. Moreover, this Court, in its order dated March 29, 2016, has already rejected

7    Petitioner's claim of outrageous governmental conduct based on benefits that Sinnott received for

8    his testimony. ECF No. 282 at 19–21. Petitioner has failed to show how a deposition statement

9    from Sinnott about the benefits he received for his guilt phase trial testimony would have created a

10   reasonable probability of a different result in Petitioner's direct appeal or state habeas petition.

11   Thus, Petitioner has not established that the California Supreme Court was unreasonable in failing

12   to find prejudice stemming from Sinnott's death. *See Richter*, 526 U.S. at 101; *Strickland*, 466

13   U.S. at 694.

14          Petitioner also does not argue that Sinnott, were he available, would have contradicted his

15   guilt phase testimony that Sinnott and McDonald knew Petitioner as "Turk." *See* ECF No. 276-4

16   at 447. This testimony, when linked with a tape recording of a conversation where McDonald

17   made "oblique references to 'Turk' as being involved in some undefined way in the scheme to kill

18   Carlene," implicated Petitioner in Carlene's death. *Ervin*, 990 P.2d at 527. Petitioner has failed to

19   show that Sinnott would have changed any of his guilt phase trial testimony. Thus, Petitioner has

20   not established that the California Supreme Court was unreasonable in failing to find a reasonable

21   probability of a different result in Petitioner's appeal or state habeas petition but for Sinnott's

22   death.

23          As to Johnson, Petitioner repeats his arguments from Claim 9 that Petitioner was unable to

24   effectively cross-examine Johnson at the guilt phase trial and that Johnson was "tricked" into

25   testifying at the preliminary hearing by the police and the district attorney. Pet. at 154–61, 381–

26   82. During Johnson's preliminary examination, Johnson stated that she observed Petitioner,

27   Robinson, and Jack together on the night of Carlene's murder. *Ervin*, 990 P.2d at 525. Johnson

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33

United States District Court
Northern District of California

1   also implicated Robinson's involvement in the murder based on Robinson's verbal admissions to

2   Johnson.  *Id.*  At the guilt phase trial, however, Johnson testified that "she recalled none of her

3   preliminary examination testimony and none of the events surrounding the offenses."  *Id.*  Johnson

4   also claimed that she could not identify either Petitioner or Robinson, the father of her son.  *Id.*

5   Johnson testified "that she was probably under the influence of drugs when she spoke to the

6   police."  Pet. at 160.  Robinson and the prosecution stipulated to the introduction of Johnson's

7   preliminary examination testimony as a prior inconsistent statement.  Petitioner did not join the

8   stipulation, and therefore the state trial court redacted all specific references to Petitioner.  *Ervin*,

9   990 P.2d at 527–28.

10          Petitioner has not established that he suffered prejudice from Johnson's lack of availability

11  during Petitioner's direct appeal and state habeas proceedings.  This Court has already rejected

12  Petitioner's claim that he was unable to effectively cross-examine Johnson at the guilt phase trial

13  in its March 29, 2016 order.  ECF No. 282 at 15–18.  In that order, the Court observed that

14  "Petitioner's trial counsel cross-examined Johnson at length at trial."  *Id.* at 18.  The jury therefore

15  received two different accounts of Johnson's testimony: the prosecution's account, based on

16  Johnson's preliminary hearing testimony; and Petitioner's account, based on his cross-examination

17  of Johnson at the guilt phase trial.  *Id.* at 17.  Petitioner does not contend that, Johnson, were she

18  available during Petitioner's appeal or state habeas proceedings, would have testified differently in

19  a deposition than Johnson did during Petitioner's guilt phase trial.  Thus, Petitioner has not

20  established that the California Supreme Court was unreasonable in failing to find a reasonable

21  probability of a different result but for Johnson's death.

22          Next, Petitioner argues that the deaths of Dunkley and Narcissi "deprived [Petitioner] of

23  crucial background and mitigation witnesses."  Pet. at 382.  Relatedly, Petitioner argues that his

24  trial counsel failed to properly investigate Petitioner's family history and that the jury was thus

25  "not provided with an accurate picture of Petitioner's dysfunctional and abusive family life."  *Id.*

26  Petitioner contends that these circumstances at the penalty phase trial were compounded on appeal

27  because Doyle also apparently failed to properly investigate Petitioner's social background.

28

United States District Court
Northern District of California

21

United States District Court
Northern District of California

1    These arguments are unavailing.  As an initial point, Petitioner's mother, Narcissi, and

2    sister, Greta, testified during Petitioner's penalty phase trial and provided mitigating evidence.

3    ECF No. 277-4 at 55–79.  Petitioner fails to explain why the mitigation evidence from Narcissi

4    and Greta was insufficient to provide the jury an accurate picture of Petitioner's family life.

5    Moreover, Petitioner fails to discuss what specific mitigation evidence Dunkley, Petitioner's

6    biological father, would have offered had he been called to testify at Petitioner's penalty phase

7    trial or been deposed for purposes of Petitioner's state habeas petition.  In light of Narcissi and

8    Greta's mitigation testimony at the penalty phrase trial, the California Supreme Court was not

9    unreasonable in rejecting Petitioner's claim of prejudice under *Strickland* stemming from the

10   deaths of Narcissi, who testified at Petitioner's penalty phase trial, and Dunkley.

11   To conclude, Petitioner's arguments concerning delay of the appointment of his permanent

12   appellate counsel, the failure to file a timely state habeas petition, and the deaths of various

13   witnesses and potential witnesses do not demonstrate that the California Supreme Court's decision

14   was contrary to or an unreasonable application of clearly established federal law.  Accordingly,

15   Respondent's motion for summary judgment as to claim 33 is GRANTED.

16   **IV.    CONCLUSION**

17   For the foregoing reasons, Respondent's motion for summary judgment as to claims 32

18   and 33 is GRANTED.  In addition, because Petitioner's arguments as to claims 32 and 33 are

19   unavailing, Petitioner's request for an evidentiary hearing as to claims 32 and 33 is also DENIED.

20   *See Sully*, 725 F.3d at 1075 ("[A]n evidentiary hearing is pointless once the district court has

21   determined that § 2254(d) precludes habeas relief.").

22   **IT IS SO ORDERED.**

23   Dated: July 8, 2016

24

25   LUCY H. KOH
     United States District Judge

26

27

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 32 AND 33