UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CURTIS LEE ERVIN,<br><br>    Petitioner,<br><br>    v.<br><br>RON DAVIS, Warden, California State Prison at San Quentin,<br><br>    Respondent. | Case No. 00-CV-01228-LHK<br><br>**ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 28 AND 29**<br><br>Re: Dkt. No. 213 |

    In 1991, Petitioner Curtis Lee Ervin ("Petitioner") was convicted of the murder of Carlene McDonald and sentenced to death. On September 7, 2007, Petitioner filed an amended petition for a writ of habeas corpus before this Court, which included 37 claims in total. ECF No. 97 ("Pet."). Before the Court is Respondent's motion for summary judgment as to all 37 claims in Petitioner's amended habeas petition. ECF No. 213 ("Mot."). Petitioner opposes Respondent's motion and requests an evidentiary hearing on 15 of Petitioner's 37 claims.

    This Order addresses claims 28 and 29 in Petitioner's amended habeas petition. Petitioner requests an evidentiary hearing on claims 28 and 29. For the reasons discussed below, Respondent's motion for summary judgment as to claims 28 and 29 is GRANTED, and

1

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 28 AND 29

Petitioner's request for an evidentiary hearing on claims 28 and 29 is DENIED.

## I. BACKGROUND

### A. Factual Background[1]

On February 21, 1991, a jury convicted Petitioner of first degree murder with the special circumstance finding of murder for financial gain. Evidence presented at Petitioner's trial established that Robert McDonald ("McDonald"), the former spouse of Carlene McDonald ("Carlene"), had hired Petitioner and Arestes Robinson ("Robinson"), to kill Carlene for $2,500.

At trial, Armond Jack ("Jack") testified that he had driven with Petitioner to meet McDonald to negotiate the price for killing Carlene. Jack also testified that he had driven Petitioner and Robinson to Carlene's apartment on November 7, 1986, the night of the murder. While Petitioner, Robinson, and Jack were driving to Carlene's apartment, Petitioner asked for and received a knife from Robinson. With the assistance of a BB gun, Petitioner and Robinson kidnapped Carlene and used Carlene's vehicle to take Carlene to Tilden Park, where Petitioner stabbed Carlene to death with Robinson's assistance. A patrol officer found Carlene's body the following afternoon.

Petitioner and Robinson met with McDonald the day after Carlene's murder and presented McDonald with Carlene's driver's license as proof of the murder. McDonald paid Petitioner $2,500, which Petitioner shared with Robinson and others to purchase cocaine. A few weeks after Carlene's murder, McDonald paid Petitioner an additional $1,700. Sharon Williams ("Williams"), Petitioner's girlfriend, testified that Petitioner gave her a watch and ring later identified as belonging to Carlene.

In addition to the physical evidence linking Petitioner to Carlene's murder, Petitioner also admitted various incriminating aspects of the crime to David Willis ("Willis"), Zane Sinnott ("Sinnott"), and the investigating police officer, Sergeant Dana Weaver ("Weaver"). According to

---

[1] The following facts are drawn from the California Supreme Court's opinion on Petitioner's direct appeal. *People v. Ervin*, 990 P.2d 506, 513–14 (Cal. 2000); *cf. Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

these witnesses, Petitioner admitted that he and Robinson had confronted Carlene, had pointed the BB gun at her, had forced her into her car, and had driven her to Tilden Park. Petitioner further admitted to stabbing Carlene to death at Tilden Park while Robinson held her. The prosecution also introduced testimony from Robinson's girlfriend, Gail Johnson ("Johnson"), who stated that Robinson had admitted to participating in Carlene's murder.

Robinson, McDonald, and Petitioner were tried together. Petitioner made no claims of innocence, but sought to impeach the testimony of prosecution witnesses Jack, Sinnott, and Willis. In addition, Dr. Fred Rosenthal ("Rosenthal"), a psychiatrist, testified that Petitioner's cocaine consumption might have impaired Petitioner's thought process and that Petitioner thus did not appreciate the seriousness and finality of killing someone for money. The jury found Petitioner's defenses unavailing and convicted Petitioner of first degree murder. During the penalty phase of Petitioner's trial, the prosecution introduced evidence of a prior bank robbery conviction and some jail disciplinary problems. Petitioner introduced mitigating evidence regarding his character, employment, family, drug use, religious involvement, and musical skills. McDonald and Robinson also introduced mitigating evidence. The jury returned death verdicts for Petitioner and McDonald, but chose life imprisonment without parole for Robinson.

**B. Procedural History**

On January 6, 2000, the California Supreme Court affirmed Petitioner's conviction and sentence on direct appeal. *People v. Ervin*, 990 P.2d 506, 537 (Cal. 2000). The United States Supreme Court denied certiorari on October 2, 2000. *Ervin v. California*, 531 U.S. 842 (2000). On November 12, 2002, Petitioner filed a federal habeas petition before this Court. ECF No. 32. On January 22, 2003, Petitioner filed a corrected federal habeas petition. ECF No. 45. That same day, the Court stayed all federal habeas proceedings so that Petitioner could exhaust his claims in state court. Petitioner filed a state habeas petition on October 1, 2003, and on December 14, 2005, the California Supreme Court denied Petitioner's state habeas petition.

Following the California Supreme Court's decision, Petitioner filed an amended federal habeas petition. ECF No. 97. Respondent filed a response on March 7, 2008, ECF No. 110, and

Petitioner filed a traverse on November 13, 2008. ECF No. 133.

On February 14, 2012, Respondent filed the instant motion for summary judgment. On January 8, 2013, Petitioner filed an opposition and a request for an evidentiary hearing. ECF No. 249 ("Opp'n"). Respondent filed a reply on May 10, 2013, which included an opposition to Petitioner's request for an evidentiary hearing. ECF No. 259 ("Resp. Reply"). On August 16, 2013, Petitioner filed a reply to Respondent's opposition to Petitioner's request for an evidentiary hearing. ECF No. 266 ("Pet. Reply"). Petitioner's reply specified that Petitioner sought an evidentiary hearing on claims 7–10, 20, 26–29, and 32–34. *Id.* at 5.

On January 7, 2015, the instant action was reassigned from U.S. District Judge Claudia Wilken to the undersigned judge. ECF No. 268. On March 16, 2015, the Court stayed Petitioner's penalty phase claims pending the Ninth Circuit's decision of an appeal filed in *Jones v. Chappell*, 31 F. Supp. 3d 1050 (C.D. Cal. 2014). ECF No. 269. The Ninth Circuit decided *Jones* on November 12, 2015, and determined that the district court had erred in finding California's post-conviction system of review in violation of the Eighth Amendment. *Jones v. Davis*, 806 F.3d 538 (9th Cir. 2015). In the wake of the Ninth Circuit's decision in *Jones*, all of Petitioner's claims are now ripe for review.

On December 11, 2015, this Court issued an order granting Respondent's motion for summary judgment as to claims 1–5. ECF No. 271. On March 28, 2016, this Court issued an order granting Respondent's motion for summary judgment as to claims 14–15 and 17–18. ECF No. 281. On March 29, 2016, this Court issued an order granting Respondent's motion for summary judgment as to claims 7–13. On June 14, 2016, this Court issued an order granting Respondent's motion for summary judgment as to claims 21, 35, and 36. ECF No. 283. On June 15, 2016, this Court issued an order granting Respondent's motion for summary judgment as to claims 6 and 16. ECF No. 284. On June 16, 2015, this Court issued an order granting Respondent's motion for summary judgment as to claims 22 and 23. ECF No. 285. On July 8, 2016, this Court issued an order granting Respondent's motion for summary judgment as to claims 32 and 33. ECF No. 286.

## II. LEGAL STANDARD

### A. Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2254(d))

Because Petitioner filed his original federal habeas petition in 2002, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action. *See Woodford v. Garceau*, 538 U.S. 202, 210 (2003) (holding that AEDPA applies whenever a federal habeas petition is filed after April 24, 1996). Pursuant to AEDPA, a federal court may grant habeas relief on a claim adjudicated on the merits in state court only if the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

**1. Contrary To or Unreasonable Application of Clearly Established Federal Law**

As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs have separate and distinct meanings. *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court."). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 412–13.

A state court's decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). A state court's determination that a claim lacks merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Holdings of the U.S. Supreme Court at the time of the state court decision are the sole determinant of clearly established federal law. *Williams*, 529 U.S. at 412. Although a district court may "look to circuit precedent to ascertain whether [the circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam), "[c]ircuit precedent cannot refine or sharpen a general principle of [U.S.] Supreme Court jurisprudence into a specific legal rule," *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam) (internal quotation marks omitted).

**2. Unreasonable Determination of the Facts**

In order to find that a state court's decision was based on "an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (internal quotation marks omitted). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). That said, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or § 2254(d)(2), a federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). In the event that a federal court "determine[s], considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts," the federal court evaluates the petitioner's claim *de novo*. *Hurles*, 752 F.3d at 778. If error is found, habeas relief is warranted if that error

"had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  Petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

### B. Federal Evidentiary Hearing (28 U.S.C. § 2254(e))

Under *Cullen v. Pinholster*, habeas review under AEDPA "is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 180–81.  The Ninth Circuit has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on claims adjudicated on the merits in state court. *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court has declined to decide whether a district court may ever choose to hold an evidentiary hearing *before* it determines that § 2254(d) has been satisfied . . . an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief.") (internal quotation marks and citation omitted).

### C. Summary Judgment

Summary judgment is appropriate if, when viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  Whereas the party opposing summary judgment will have the burden of

proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

### III.   DISCUSSION

#### A.  Claim 28

In claim 28, Petitioner contends that the prosecution engaged in misconduct by introducing into evidence Petitioner's allegedly coerced confession.  Hab. Pet. at 327.  Petitioner further argues that Petitioner was denied effective assistance of counsel based on Petitioner's counsel's failure to object to the introduction of Petitioner's confession.  *Id.* at 334.

According to Petitioner, Petitioner was under the influence of heroin when Petitioner was interrogated by the police.  *Id.* at 328.  Petitioner further alleges that Petitioner confessed only after Sergeant Dana Weaver of the East Bay Regional Parks Police Department "shot a few elbows" to Petitioner's face.  *Id.* at 329.  Petitioner alleges that the hits to Petitioner's face left Petitioner's face covered in bruises and required Petitioner to see the jail dentist for a broken filling.  *Id.*  Petitioner further alleges that the sergeants interrogated Petitioner then gave Petitioner facts regarding the homicide, and that only after Petitioner was told these facts did Petitioner confess.  *Id.* at 330.

As Petitioner acknowledges, the majority of Petitioner's confession was excluded at trial because it could not be redacted to remove references to Petitioner's co-defendant Robinson.  *Id.* at 331.  The only portion of Petitioner's confession introduced at trial was Sergeant Weaver's testimony that Sergeant Weaver asked Petitioner whether Petitioner recognized a particular BB gun and that Petitioner identified the BB gun as the one used to kidnap Carlene.  *Id.* at 332.  Petitioner argues that because Petitioner's confession was coerced, it was prosecutorial misconduct for the prosecution to present Sergeant Weaver's testimony regarding Petitioner's confession about the BB gun and prosecutorial misconduct for the prosecution not to disclose the circumstances in which Petitioner's confession was made.  *Id.* at 333.

On habeas review, the California Supreme Court rejected Petitioner's claim that the use of the confession constituted prosecutorial misconduct on the merits and as procedurally barred by the failure to object. The California Supreme Court also rejected Petitioner's claim that the failure to object constituted ineffective assistance of counsel.

Because the California Supreme Court did not provide reasons for its denial of Petitioner's claim, the Court must determine what arguments or theories could have supported the California Supreme Court's decision. *See Harrison v. Richter*, 562 U.S. 86, 102 (2011) ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision."). The Court then "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the U.S. Supreme Court. *Id.*

In the instant case, the California Supreme Court could have concluded that, even if the use of Petitioner's confession were in error, the use of the confession did not likely have a substantial and injurious impact on the verdict, such that any error and corresponding misconduct were harmless. *See Taylor v. Maddox*, 366 F.3d 992, 1016 (9th Cir. 2004) ("Because the court of appeal found the confession admissible, it did not conduct harmless-error analysis. We must therefore review the evidence at trial to determine whether the confession likely had a substantial and injurious impact on the verdict; if not, its admission was harmless.").

Here, ample physical evidence connected Petitioner to Carlene's murder. Before Carlene's murder, Petitioner was spotted with the knife used to kill Carlene. *Ervin*, 990 P.2d at 522. After Carlene's murder, Petitioner retained Carlene's vehicle, parking it and seeking to have it stripped, cleaned, or burned. *Id.* at 514. Williams, Petitioner's girlfriend, testified that Petitioner gave Williams a watch and ring later identified as belonging to Carlene. *Id.* at 513.

Additionally, evidence from three witnesses other than Sergeant Weaver—Willis, Sinnot, and Jack—all supported Petitioner's role in the murder of Carlene for Petitioner's financial gain. In a recorded statement, Willis stated that Petitioner, on the night of the murder, "admitted killing a woman and showed Carlene's driver's license, watch, and ring to Willis." *Id.* at 524. Willis also

stated that, on the next morning, Petitioner admitted to stabbing Carlene while Robinson held her. *Id.* At the guilt phase trial, Sinnott testified that he overheard Petitioner admit to "killing a woman with a knife, after using a toy gun to abduct her." *Id.* at 526.  Sinnott also testified that he heard Jack and Petitioner discuss their efforts to obtain more money from McDonald.  *Id.*  Jack testified that he and Petitioner together learned that McDonald would pay to have McDonald's ex-wife killed.  *Id.* at 522.  Jack further testified about Petitioner's involvement in negotiations with McDonald about payment for Carlene's murder, searching for Carlene's car in a BART parking lot, and driving to Carlene's apartment.  *Id.*  At Carlene's apartment, Jack observed Petitioner ask for a knife and receive one from Robinson.  *Id.*  Jack testified that Petitioner admitted to Jack that "[Petitioner] did it."  *Id.*  On two occasions, Jack received from Petitioner portions of McDonald's payment for the killing of Carlene.  *Id.*

       Weighed against this ample evidence, the California Supreme Court could have reasonably concluded that any error in the admission of Sergeant Weaver's testimony regarding Petitioner's confession did not likely have a substantial and injurious impact on the verdict.  Sergeant Weaver testified regarding only a small portion of Petitioner's confession—"that defendant told him a toy gun showed to defendant resembled the one used to force Carlene McDonald into her car when she was abducted."[2]  *Id.* at 527.  Petitioner's identification of the toy gun merely corroborated Sinnott's testimony that Petitioner had admitted to using a toy gun to abduct Carlene.

       As to Petitioner's claim that the failure to object to the use of Petitioner's confession constituted ineffective assistance of counsel, to find ineffective assistance of counsel, the Court must find that counsel's deficiency was prejudicial to the defendant.  *Strickland v. Washington*, 466 U.S. 668, 696 (1984).  Determining that the deficiency was prejudicial to the defendant requires finding that "the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."  *Id.*  In the instant case, because the California Supreme Court could have reasonably concluded that the testimony regarding

---

[2] The California Supreme Court uses the phrases "BB gun" and "toy gun" interchangeably.

Petitioner's confession was not prejudicial to Petitioner, the California Supreme Court could also have reasonably concluded under *Strickland* that Petitioner was not prejudiced by counsel's failure to object to that same testimony.

Accordingly, Respondent's motion for summary judgment as to claim 28 is GRANTED.

### B. Claim 29

In claim 29, Petitioner contends that the prosecution failed to disclose favorable treatment given to Sharon Williams, and that this failure was in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Here, Petitioner contends that, once Williams began cooperating with the police in Petitioner's investigation, the police gave Williams favorable treatment. Hab. Pet. at 338. This favorable treatment allegedly included ensuring Williams' release following numerous arrests, obtaining for Williams at Williams' request a certificate stating that Williams had been detained by the police at a time when Williams had not been detained, taking Williams to the hospital when Williams was injured, and picking up Williams' clothes from Williams' mother's house to bring to Williams when Williams was arrested. *Id.* at 338–39. Petitioner further alleges that when Williams stopped cooperating and refused to testify at Petitioner's preliminary hearing, Williams was no longer released from jail as she had been when she was cooperating, and Williams believes she was harassed while in jail because of her refusal to cooperate. *Id.* at 340. Williams allegedly was arrested again shortly before Petitioner's trial. *Id.* Petitioner alleges that the prosecutor and the police together visited Williams in jail and told Williams that if Williams testified at Petitioner's trial, Williams "would immediately be released from jail." *Id.* Williams testified at Petitioner's trial, then allegedly was released within several days of giving her trial testimony. *Id.*

Petitioner contends that the favorable treatment given to Williams in exchange for her cooperation and testimony were material impeachment testimony that the prosecution should have but did not disclose to the defense.

On habeas review, the California Supreme Court rejected Petitioner's claim on the merits without explanation. Because the California Supreme Court did not provide reasons for its denial

11

of Petitioner's claim, the Court must determine what arguments or theories could have supported the California Supreme Court's decision. *See Harrison*, 562 U.S. at 102 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision."). The Court then "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the U.S. Supreme Court. *Id.*

Under *Brady* and its progeny, the prosecution has a duty to disclose evidence favorable to an accused, and the failure to disclose such evidence violates due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady*, 373 U.S. at 87). The prosecution's duty under *Brady* encompasses both impeachment evidence and exculpatory evidence. *Id.* Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* Thus, a *Brady* violation requires showing three components: (1) "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." *Id.* at 281–82.

In the instant case, the California Supreme Court could have reasonably concluded that the failure to disclose the favorable treatment given to Williams did not prejudice Petitioner, and thus that the third component of a *Brady* violation was not satisfied. As discussed above, *see* Section III.A., *supra*, there was substantial physical and testimonial evidence connecting Petitioner to Carlene's murder and supporting Petitioner's role in Carlene's murder for Petitioner's financial gain. Even if Petitioner had been able to introduce the potential impeachment evidence of favorable treatment given to Williams in exchange for Williams' testimony, Williams' testimony merely corroborated the other extensive physical and testimonial evidence in the case. In light of the ample evidence supporting the jury's verdict, the California Supreme Court could have reasonably concluded that there is not a reasonable probability that, had the potential impeachment

12

1  evidence been disclosed to the defense, the result of the proceeding would have been different.
2  *Strickler*, 527 U.S. at 280.  Therefore, it was reasonable for the California Supreme Court to
3  conclude that there was not "a reasonable probability that, had the evidence been disclosed to the
4  defense, the result of the proceeding would have been different." *Id.*  Thus, the California
5  Supreme Court reasonably found that no *Brady* violation occurred.
6  Accordingly, Respondent's motion for summary judgment as to claim 29 is GRANTED.

## IV. CONCLUSION

For the foregoing reasons, Respondent's motion for summary judgment as to claims 28 and 29 is GRANTED.  In addition, because Petitioner's arguments as to claims 28 and 29 are unavailing, Petitioner's request for an evidentiary hearing as to claims 28 and 29 is also DENIED. *See Sully*, 725 F.3d at 1075 ("[A]n evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief.").

**IT IS SO ORDERED.**

Dated: August 15, 2016

*Lucy H. Koh*
LUCY H. KOH
United States District Judge