UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CURTIS LEE ERVIN,<br><br>     Petitioner,<br><br>     v.<br><br>RON DAVIS, Warden, California State Prison at San Quentin,<br><br>     Respondent. | Case No. 00-CV-01228-LHK<br><br>**ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 24 AND 31**<br><br>Re: Dkt. No. 213 |

In 1991, Petitioner Curtis Lee Ervin ("Petitioner") was convicted of the murder of Carlene McDonald and sentenced to death. On September 7, 2007, Petitioner filed an amended petition for a writ of habeas corpus before this Court, which included 37 claims in total. ECF No. 97 ("Pet."). Respondent filed a motion for summary judgment as to all 37 claims in Petitioner's amended habeas petition. ECF No. 213 ("Mot."). Petitioner opposed Respondent's motion and requested an evidentiary hearing on 15 of Petitioner's 37 claims. This Court has ruled on 27 of the 37 claims.

This Order addresses claims 24 and 31 in Petitioner's amended habeas petition. Petitioner does not request an evidentiary hearing on these claims. For the reasons discussed below,

1

Respondent's motion for summary judgment as to claims 24 and 31 is GRANTED.

## I.  BACKGROUND

### A.  Factual Background[1]

On February 21, 1991, a jury convicted Petitioner of first-degree murder with the special circumstance finding of murder for financial gain.  Evidence presented at Petitioner's trial established that Robert McDonald ("McDonald"), the former spouse of Carlene McDonald ("Carlene"), had hired Petitioner and Arestes Robinson ("Robinson"), to kill Carlene for $2,500.

At trial, Armond Jack ("Jack") testified that he had driven with Petitioner to meet McDonald to negotiate the price for killing Carlene.  Jack also testified that he had driven Petitioner and Robinson to Carlene's apartment on November 7, 1986, the night of the murder.  While Petitioner, Robinson, and Jack were driving to Carlene's apartment, Petitioner asked for and received a knife from Robinson.  With the assistance of a BB gun, Petitioner and Robinson kidnapped Carlene and used Carlene's vehicle to take Carlene to Tilden Park, where Petitioner stabbed Carlene to death with Robinson's assistance.  A patrol officer found Carlene's body the following afternoon.

Petitioner and Robinson met with McDonald the day after Carlene's murder and presented McDonald with Carlene's driver's license as proof of the murder.  McDonald paid Petitioner $2,500, which Petitioner shared with Robinson and others to purchase cocaine.  A few weeks after Carlene's murder, McDonald paid Petitioner an additional $1,700.  Sharon Williams ("Williams"), Petitioner's girlfriend, testified that Petitioner gave Williams a watch and ring later identified as belonging to Carlene.

In addition to the physical evidence linking Petitioner to Carlene's murder, Petitioner also admitted various incriminating aspects of the crime to David Willis ("Willis"), Zane Sinnott ("Sinnott"), and the investigating police officer, Sergeant Dana Weaver ("Weaver").  According to

---

[1] The following facts are drawn from the California Supreme Court's opinion on Petitioner's direct appeal.  *People v. Ervin*, 22 Cal. 4th 48 (2000); *cf. Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

2

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 24 AND 31

these witnesses, Petitioner admitted that he and Robinson had confronted Carlene, had pointed the BB gun at her, had forced her into her car, and had driven her to Tilden Park. Petitioner further admitted to stabbing Carlene to death at Tilden Park while Robinson held her. The prosecution also introduced testimony from Robinson's girlfriend, Gail Johnson ("Johnson"), who stated that Robinson had admitted to participating in Carlene's murder.

Robinson, McDonald, and Petitioner were tried together. Petitioner made no claims of innocence, but sought to impeach the testimony of prosecution witnesses Jack, Sinnott, and Willis. In addition, Dr. Fred Rosenthal ("Rosenthal"), a psychiatrist, testified that Petitioner's cocaine consumption might have impaired Petitioner's thought process and that Petitioner thus did not appreciate the seriousness and finality of killing someone for money. The jury found Petitioner's defenses unavailing and convicted Petitioner of first degree murder.

During the penalty phase of Petitioner's trial, the prosecution introduced evidence of a prior bank robbery conviction and some jail disciplinary problems. Petitioner introduced mitigating evidence regarding his character, employment, family, drug use, religious involvement, and musical skills. McDonald and Robinson also introduced mitigating evidence. The jury returned death verdicts for Petitioner and McDonald, but chose life imprisonment without parole for Robinson.

**B. Procedural History**

On January 6, 2000, the California Supreme Court affirmed Petitioner's conviction and sentence on direct appeal. *Ervin*, 22 Cal. 4th at 66. The United States Supreme Court denied certiorari on October 2, 2000. *Ervin v. California*, 531 U.S. 842 (2000). On November 12, 2002, Petitioner filed a federal habeas petition before this Court. ECF No. 32. On January 22, 2003, Petitioner filed a corrected federal habeas petition. ECF No. 45. That same day, the Court stayed all federal habeas proceedings so that Petitioner could exhaust his claims in state court. Petitioner filed a state habeas petition on October 1, 2003, and on December 14, 2005, the California Supreme Court denied Petitioner's state habeas petition.

Following the California Supreme Court's decision, Petitioner filed an amended federal

1   habeas petition. ECF No. 97. Respondent filed a response on March 7, 2008, ECF No. 110, and

2   Petitioner filed a traverse on November 13, 2008. ECF No. 133.

3         On February 14, 2012, Respondent filed the instant motion for summary judgment. On

4   January 8, 2013, Petitioner filed an opposition and a request for an evidentiary hearing. ECF No.

5   249 ("Opp'n"). Respondent filed a reply on May 10, 2013, which included an opposition to

6   Petitioner's request for an evidentiary hearing. ECF No. 259 ("Resp. Reply"). On August 16,

7   2013, Petitioner filed a reply to Respondent's opposition to Petitioner's request for an evidentiary

8   hearing. ECF No. 266 ("Pet. Reply"). Petitioner's reply specified that Petitioner sought an

9   evidentiary hearing on claims 7–10, 20, 26–29, and 32–34. *Id.* at 5.

10         On January 7, 2015, the instant action was reassigned from U.S. District Judge Claudia

11   Wilken to the undersigned judge. ECF No. 268. On March 16, 2015, the Court stayed

12   Petitioner's penalty phase claims pending the Ninth Circuit's decision of an appeal filed in *Jones*

13   *v. Chappell*, 31 F. Supp. 3d 1050 (C.D. Cal. 2014). ECF No. 269. The Ninth Circuit decided

14   *Jones* on November 12, 2015, and determined that the district court had erred in finding

15   California's post-conviction system of review in violation of the Eighth Amendment. *Jones v.*

16   *Davis*, 806 F.3d 538 (9th Cir. 2015). In the wake of the Ninth Circuit's decision in *Jones*, all of

17   Petitioner's claims are now ripe for review.

18         On December 11, 2015, this Court issued an order granting Respondent's motion for

19   summary judgment as to claims 1–5. ECF No. 271. On March 28, 2016, this Court issued an

20   order granting Respondent's motion for summary judgment as to claims 14–15 and 17–18. ECF

21   No. 281. On March 29, 2016, this Court issued an order granting Respondent's motion for

22   summary judgment as to claims 7–13. On June 14, 2016, this Court issued an order granting

23   Respondent's motion for summary judgment as to claims 21, 35, and 36. ECF No. 283. On June

24   15, 2016, this Court issued an order granting Respondent's motion for summary judgment as to

25   claims 6 and 16. ECF No. 284. On June 16, 2015, this Court issued an order granting

26   Respondent's motion for summary judgment as to claims 22 and 23. ECF No. 285. On July 8,

27   2016, this Court issued an order granting Respondent's motion for summary judgment as to claims

28   

4

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 24 AND 31

32 and 33.  ECF No. 286.  On August 15, 2016, this Court issued an order granting Respondent's motion for summary judgment as to claims 28 and 29.  ECF No. 287.

## II. LEGAL STANDARD

### A. Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2254(d))

Because Petitioner filed his original federal habeas petition in 2002, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action.  *See Woodford v. Garceau*, 538 U.S. 202, 210 (2003) (holding that AEDPA applies whenever a federal habeas petition is filed after April 24, 1996).  Pursuant to AEDPA, a federal court may grant habeas relief on a claim adjudicated on the merits in state court only if the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### 1. Contrary To or Unreasonable Application of Clearly Established Federal Law

As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs have separate and distinct meanings.  *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.").  A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts."  *Id*. at 412–13.

A state court's decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  A state court's determination that a claim lacks merit is not unreasonable "so long as

'fairminded jurists could disagree' on [its] correctness." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Holdings of the U.S. Supreme Court at the time of the state court decision are the sole determinant of clearly established federal law. *Williams*, 529 U.S. at 412. Although a district court may "look to circuit precedent to ascertain whether [the circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam), "[c]ircuit precedent cannot refine or sharpen a general principle of [U.S.] Supreme Court jurisprudence into a specific legal rule," *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam) (internal quotation marks omitted).

### 2. Unreasonable Determination of the Facts

In order to find that a state court's decision was based on "an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (internal quotation marks omitted). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). That said, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or § 2254(d)(2), a federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). In the event that a federal court "determine[s], considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was

based on an unreasonable determination of the facts," the federal court evaluates the petitioner's claim *de novo*. *Hurles*, 752 F.3d at 778. If error is found, habeas relief is warranted if that error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

### B. Federal Evidentiary Hearing (28 U.S.C. § 2254(e))

Under *Cullen v. Pinholster*, habeas review under AEDPA "is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 180–81. The Ninth Circuit has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on claims adjudicated on the merits in state court. *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court has declined to decide whether a district court may ever choose to hold an evidentiary hearing *before* it determines that § 2254(d) has been satisfied . . . an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief.") (internal quotation marks and citation omitted).

### C. Summary Judgment

Summary judgment is appropriate if, when viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying those portions of the pleadings,

discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Whereas the party opposing summary judgment will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## III.   DISCUSSION

### A.   Claim 24

In claim 24, Petitioner alleges that prosecutor James Anderson's exercise of peremptory challenges to exclude African American jurors in Petitioner's case, as well as in other cases, established a pattern and practice of discrimination in violation of *Swain v. Alabama*, 380 U.S. 202 (1965), *overruled by Batson v. Kentucky*, 476 U.S. 79 (1986). Reiterating allegations raised in claim 5, Petitioner contends that the prosecutor invidiously used his peremptory challenges to strike 9 of 11 African American jurors from the panel. The California Supreme Court denied this claim on the merits and on procedural grounds without an opinion.[2] Respondent contends that the California Supreme Court's opinion was reasonable.

Petitioner's reliance on *Swain* is misplaced. Under *Swain*, a defendant seeking to raise an equal protection challenge to a prosecutor's use of peremptory challenges had to show that the prosecutor systematically used, in more than one case, peremptory challenges to exclude African Americans from juries. 380 U.S. at 227. In *Batson v. Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court overruled *Swain,* and held that a defendant may establish a prima facie case of discrimination solely based on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. *Batson* governs Petitioner's claim. To the extent that claim 24

---

[2] The California Supreme Court found a portion of this claim procedurally barred. *In re Ervin*, Cal. Sup. Ct. No. S119420 (Dec. 14, 2005). In the interest of efficiency, this Court will assume that Petitioner's claim is not procedurally defaulted. *See Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("procedural bar issues are not infrequently more complex than the merits issues . . . so it may well make sense in some instances to proceed to the merits").

incorporates by reference and reiterates claim 5's allegations of a *Batson* violation, these allegations were addressed and denied by this Court when it granted summary judgment on claim 5. ECF No. 271.

Petitioner attempts to provide additional evidentiary support for his claim by referring to three other cases purportedly tried by prosecutor James Anderson: *People v. Welch*, 20 Cal. 4th 701 (1999), *People v. Mason*, 52 Cal. 3d 909 (1991), and *Brown v. Terhune*, 158 F. Supp. 2d 1050 (N.D. Cal. 2001).[3] In *Welch*, *Mason* and *Brown*, the defendants alleged that the prosecution exercised peremptory challenges in a discriminatory manner. As discussed below, in all three cases, reviewing courts denied the defendants' allegations.

In *Welch*, the defendant, an African American, was convicted of six counts of first-degree murder and sentenced to death. During jury selection, the prosecutor exercised three of his eleven peremptory challenges to excuse African American jurors, and exercised a fourth peremptory challenge to excuse an African American prospective alternate juror. 20 Cal. 4th at 721. The defense objected based on *People v. Wheeler*, 22 Cal. 3d 258 (1978), and *Batson*. The trial court found that no prima facie showing of group bias had been made and denied the *Wheeler/Batson* motion. *Id*. at 745. Finding the fact that three African American jurors and two African American alternates were ultimately seated weighed in favor of finding no prima facie case, the California Supreme Court affirmed. *Id*. at 746. The California Supreme Court further concluded that even assuming a prima facie challenge had been made, race-neutral explanations proffered by the prosecutor appeared plausible and supported by the record. *Id*. No *Wheeler/Batson* violation was found.

In *Mason*, the defendant was convicted of multiple murders and sentenced to death. At trial, the defendant raised a challenge based on *Wheeler* and argued that group bias motivated the prosecutor's use of peremptory challenges to exclude African Americans from the jury. 52 Cal.

---

[3] This Court will assume that Anderson was, in fact, the prosecutor in *Welch*, *Mason* and *Brown*, even though the opinions do not identify the prosecutor by name.

3d at 937. The prosecutor's explanation for excusing African Americans was that they were opposed to the death penalty. *Id*. at 937-38. The trial court denied defendant's motion. The California Supreme Court affirmed and found that even assuming that a prima facie case of discrimination had been established, it was "clear from the record, as the trial court expressly found, that each of the prosecutor's challenges had an adequate legal basis other than group bias." *Id*. at 937. No *Wheeler* violation was found.

In *Brown*, petitioner claimed in his federal habeas petition that during jury selection, the prosecutor's use of peremptory challenges to remove African American jurors violated his constitutional rights. After the prosecutor challenged four African American jurors, only one African American venireperson remained. 158 F. Supp. 2d at 1083. The defense moved to dismiss the panel on the ground that the prosecution was exercising discriminatory challenges. The trial court determined that a prima facie showing of bias may have been made only with respect to one juror, Bertram Jones, and invited the prosecution to comment. In response, the prosecutor offered various reasons for challenging Jones. Based on these explanations, the trial judge denied the defense's *Wheeler* motion. *Id*. at 1084. The California Court of Appeal affirmed and found that race-neutral reasons supported the prosecutor's peremptory challenge. On federal habeas review, the United States District Court for the Northern District of California determined that the state court's denial of petitioner's claim was reasonable, and that the trial court's findings of fact were supported by the record and deserved deference. *Id*. at 1085.

*Welch*, *Mason* and *Brown* do not show that Anderson used peremptory challenges in a discriminatory manner. These cases fail to support Petitioner's allegations.

For the above-mentioned reasons, summary judgment as to claim 24 is granted.

**B. Claim 31**

In Claim 31, Petitioner alleges that the trial court violated his constitutional rights when it learned of information that would have exculpated Petitioner during an ex parte *Marsden*[4] hearing

---

[4] *People v. Marsden*, 2 Cal. 3d 118 (1970), allows for a defendant, out of the presence of the jury, to seek substitution of counsel based on counsel's allegedly inadequate performance.

of co-defendant McDonald, but failed to disclose the information to Petitioner, failed to sua sponte order a new trial, and failed to grant severance.  Petitioner further alleges that upon learning the information, the trial court should have recused itself, and that the *Marsden* procedure denied Petitioner a public trial.  The California Supreme Court summarily denied this claim on the merits.  Respondent contends that the California Supreme Court's decision was reasonable.

During McDonald's ex parte *Marsden* hearing, McDonald complained about the performance of his attorney, Spencer Strellis, and stated to the trial judge:

> In Mr. Strellis' defense and closing argument, he did not do and say all that he said to me that he would in my behalf.  I was told not to testify and feel denied the right to testify predicated upon his assurances that he would expound on, clarify and summarize the many aspects of this case including but not limited to his portraying the threats against Carlene and my children, which he barely touched upon, particularly my daughter Cathlene, and the admitted extortion therewith and my noninvolvement in Carlene's death.
>
> *It seems in all fairness, that I should relay to the jury what Armond Jack said to me in admitting he caused Carlene's death while he was continuing his extortion demands.*
>
> My rights are prejudiced at this time.  I must object to not being allowed to testify and/or speak in closing and request I be heard now before the jury.

ECF Doc. 33, Ex. 65 at RT 11580-81 (emphasis added).

Petitioner asserts that McDonald's testimony regarding Armond Jack's involvement would have exonerated Petitioner as it would have refuted the prosecution's claim that it was Petitioner who actually killed Carlene.  Petitioner contends that under *Brady v. Maryland*, 373 U.S. 83 (1963), defendants must be given access to all exculpatory evidence.  Petitioner further argues that the California Supreme Court's exclusion of McDonalds' testimony constituted an unreasonable application of *Chambers v. Mississippi*, 410 U.S. 284 (1973).

Armond Jack was a prosecution witness who testified under a grant of immunity to his and Petitioner's involvement in Carlene's murder.  Jack testified that he had driven Petitioner to meet with McDonald to negotiate a price for killing Carlene, that Jack was present when Petitioner and co-defendant Robinson searched for Carlene's car in a BART parking lot, and confirmed that

11
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 24 AND 31

1   McDonald agreed to pay Petitioner and Robinson $2,500 for Carlene's murder.  *Ervin*, 22 Cal. 4th
2   at 66-67.  Jack further testified that he drove Petitioner and Robinson to Carlene's apartment on
3   the night of the murder, and that on the way, Petitioner asked for and received a knife from
4   Robinson.  *Id*. at 67.

5   Petitioner fails to demonstrate that in denying this claim, the California Supreme Court
6   unreasonably applied *Chambers*.  In *Chambers*, after petitioner Leon Chambers was arrested for
7   murder, another man, Gable McDonald, admitted to committing the murder on three separate
8   occasions, each time to a different friend.  At trial, Chambers was not permitted to cross-examine
9   Gable McDonald, whom Chambers had called as a witness, because Mississippi's  common law
10  "voucher" rule prohibited a party from impeaching its own witness.  410 U.S 295.  Chambers was
11  also precluded from introducing the testimony of the three friends to whom Gable McDonald had
12  confessed because their testimony was deemed inadmissible hearsay by the trial court.  *Id*. at 298.
13  The United States Supreme Court held that the trial court's exclusion of the exculpatory testimony
14  of Chambers' three friends, as well as the denial of the opportunity to cross-examine Gable
15  McDonald, violated Chambers' right to due process.  *Id*. at 302-03.

16  *Chambers* is inapposite because *Chambers* focused on the constitutional impact of the
17  exclusion of critical evidence.  The gravamen of Petitioner's claim, however, is that the trial
18  court's failure to sua sponte take any action when it heard McDonald's testimony in a closed
19  *Marsden* hearing violated Petitioner's right to due process.  *Chambers* does not impose any duty
20  on trial courts hearing testimony during *Marsden* hearings.  *Chambers* therefore lends no support
21  to Petitioner's claim.

22  Petitioner's reliance on *Brady* is also unavailing.  In *Brady*, the United States Supreme
23  Court held that "the suppression by the prosecution of evidence favorable to an accused upon
24  request violates due process where the evidence is material either to guilt or to punishment,
25  irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  *Brady* thus requires
26  the disclosure of exculpatory evidence by the prosecution.  Petitioner fails to cite any authority
27  establishing that *Brady* imposes any obligation on a trial court.  Petitioner's reliance on *Brady* is

misplaced.

Petitioner further fails to cite any clearly established United States Supreme Court authority establishing that in light of McDonald's testimony at McDonald's *Marsden* hearing, the trial court was obligated to sua sponte grant Petitioner a new trial or severance. Moreover, this Court has already determined that the trial court did not deprive Petitioner of his constitutional rights by failing to order separate trials when conflicts purportedly arose during trial. ECF No. 271 at 7-10. Petitioner's reliance on allegations previously rejected by this Court is unavailing.

Petitioner also fails to cite United States Supreme Court authority demonstrating that McDonald's *Marsden* hearing denied Petitioner his constitutional right to a public trial. Petitioner cites *Waller v. Georgia*, 467 U.S. 39 (1984), in support of his allegation. In *Waller*, the United States Supreme Court held that a defendant's Sixth Amendment right to a public trial extends to a suppression hearing conducted prior to the presentation of evidence to the jury. *Id*. at 46. The United States Supreme Court held that, before public access to a courtroom in a criminal case may be restricted, "[1] a party seeking to close a court proceeding must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] [the court] must make findings adequate to support the closure." *Id*. at 48. The United States Supreme Court found the need for an open proceeding to be "particularly strong with respect to suppression hearings" and concluded that the trial court had failed to give proper weight to the defendant's Sixth Amendment concerns. *Id*.

*Waller* is inapposite because Petitioner's allegations do not stem from Petitioner's suppression hearing, but from co-defendant McDonald's hearing concerning McDonald's dissatisfaction with counsel. Petitioner fails to establish that under *Waller*, McDonald's *Marsden* hearing violated Petitioner's right to a public trial.

Petitioner fails to cite any clearly established United States Supreme Court authority that supports Petitioner's claim. Thus, the Court concludes that Petitioner fails to demonstrate that the California Supreme Court's denial of claim 31 was contrary to, or an unreasonable application of

clearly established federal law.  Accordingly, summary judgment as to claim 31 is granted.

## IV. CONCLUSION

For the foregoing reasons, Respondent's motion for summary judgment as to claims 24 and 31 is GRANTED.

**IT IS SO ORDERED.**

Dated:  August 17, 2016.

_____
LUCY H. KOH
United States District Judge