UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CURTIS LEE ERVIN,<br><br>               Petitioner,<br><br>     v.<br><br>RON DAVIS, Warden, California State Prison at San Quentin,<br><br>             Respondent. | Case  No. 00-CV-01228-LHK<br><br>**ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30**<br><br>Re: Dkt. No. 213 |

In 1991, Petitioner Curtis Lee Ervin ("Petitioner") was convicted of the murder of Carlene McDonald and sentenced to death.  On September 7, 2007, Petitioner filed an amended petition for a writ of habeas corpus before this Court, which included 37 claims in total.  ECF No. 97 ("Pet.").  Before the Court is Respondent's motion for summary judgment as to all 37 claims in Petitioner's amended habeas petition.  ECF No. 213 ("Mot.").  Petitioner opposes Respondent's motion and requests an evidentiary hearing on 15 of Petitioner's 37 claims.  This Court has ruled on 29 of the 37 claims.

This Order addresses claims 19, 20, and 30 in Petitioner's amended habeas petition. Petitioner does not request an evidentiary hearing on claims 19 or 30.  Petitioner requests an

evidentiary hearing on claim 20.  For the reasons discussed below, Respondent's motion for summary judgment as to claims 19, 20, and 30 is GRANTED, and Petitioner's request for an evidentiary hearing as to claim 20 is DENIED.

# I.      BACKGROUND

## A.  Factual Background[1]

On February 21, 1991, a jury convicted Petitioner of first degree murder with the special circumstance finding of murder for financial gain.  Evidence presented at Petitioner's trial established that Robert McDonald ("McDonald"), the former spouse of Carlene McDonald ("Carlene"), had hired Petitioner and Arestes Robinson ("Robinson"), to kill Carlene for $2,500.

At trial, Armond Jack ("Jack") testified that he had driven with Petitioner to meet McDonald to negotiate the price for killing Carlene.  Jack also testified that he had driven Petitioner and Robinson to Carlene's apartment on November 7, 1986, the night of the murder.  While Petitioner, Robinson, and Jack were driving to Carlene's apartment, Petitioner asked for and received a knife from Robinson.  With the assistance of a BB gun, Petitioner and Robinson kidnapped Carlene and used Carlene's vehicle to take Carlene to Tilden Park, where Petitioner stabbed Carlene to death with Robinson's assistance.  A patrol officer found Carlene's body the following afternoon.

Petitioner and Robinson met with McDonald the day after Carlene's murder and presented McDonald with Carlene's driver's license as proof of the murder.  McDonald paid Petitioner $2,500, which Petitioner shared with Robinson and others to purchase cocaine.  A few weeks after Carlene's murder, McDonald paid Petitioner an additional $1,700.  Sharon Williams ("Williams"), Petitioner's girlfriend, testified that Petitioner gave her a watch and ring later identified as belonging to Carlene.

In addition to the physical evidence linking Petitioner to Carlene's murder, Petitioner also

---

[1] The following facts are drawn from the California Supreme Court's opinion on Petitioner's direct appeal.  *People v. Ervin*, 990 P.2d 506, 513–14 (Cal. 2000); *cf. Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

United States District Court
Northern District of California

admitted various incriminating aspects of the crime to David Willis ("Willis"), Zane Sinnott ("Sinnott"), and the investigating police officer, Sergeant Dana Weaver ("Weaver").  According to these witnesses, Petitioner admitted that he and Robinson had confronted Carlene, had pointed the BB gun at her, had forced her into her car, and had driven her to Tilden Park.  Petitioner further admitted to stabbing Carlene to death at Tilden Park while Robinson held her.  The prosecution also introduced testimony from Robinson's girlfriend, Gail Johnson ("Johnson"), who stated that Robinson had admitted to participating in Carlene's murder.

Robinson, McDonald, and Petitioner were tried together.  Petitioner made no claims of innocence, but sought to impeach the testimony of prosecution witnesses Jack, Sinnott, and Willis.  In addition, Dr. Fred Rosenthal ("Rosenthal"), a psychiatrist, testified that Petitioner's cocaine consumption might have impaired Petitioner's thought process and that Petitioner thus did not appreciate the seriousness and finality of killing someone for money.  The jury found Petitioner's defenses unavailing and convicted Petitioner of first degree murder.  During the penalty phase of Petitioner's trial, the prosecution introduced evidence of a prior bank robbery conviction and some jail disciplinary problems.  Petitioner introduced mitigating evidence regarding his character, employment, family, drug use, religious involvement, and musical skills.  McDonald and Robinson also introduced mitigating evidence.  The jury returned death verdicts for Petitioner and McDonald, but chose life imprisonment without parole for Robinson.

### B. Procedural History

On January 6, 2000, the California Supreme Court affirmed Petitioner's conviction and sentence on direct appeal.  *People v. Ervin*, 990 P.2d 506, 537 (Cal. 2000).  The United States Supreme Court denied certiorari on October 2, 2000.  *Ervin v. California*, 531 U.S. 842 (2000).  On November 12, 2002, Petitioner filed a federal habeas petition before this Court.  ECF No. 32.  On January 22, 2003, Petitioner filed a corrected federal habeas petition.  ECF No. 45.  That same day, the Court stayed all federal habeas proceedings so that Petitioner could exhaust his claims in state court.  Petitioner filed a state habeas petition on October 1, 2003, and on December 14, 2005, the California Supreme Court denied Petitioner's state habeas petition.

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

United States District Court
Northern District of California

1    Following the California Supreme Court's decision, Petitioner filed an amended federal

2    habeas petition.  ECF No. 97.  Respondent filed a response on March 7, 2008, ECF No. 110, and

3    Petitioner filed a traverse on November 13, 2008.  ECF No. 133.

4        On February 14, 2012, Respondent filed the instant motion for summary judgment.  On

5    January 8, 2013, Petitioner filed an opposition and a request for an evidentiary hearing.  ECF No.

6    249 ("Opp'n").  Respondent filed a reply on May 10, 2013, which included an opposition to

7    Petitioner's request for an evidentiary hearing. ECF No. 259 ("Resp. Reply").  On August 16,

8    2013, Petitioner filed a reply to Respondent's opposition to Petitioner's request for an evidentiary

9    hearing.  ECF No. 266 ("Pet. Reply").  Petitioner's reply specified that Petitioner sought an

10   evidentiary hearing on claims 7–10, 20, 26–29, and 32–34. *Id.* at 5.

11       On January 7, 2015, the instant action was reassigned from U.S. District Judge Claudia

12   Wilken to the undersigned judge.  ECF No. 268.  On March 16, 2015, the Court stayed

13   Petitioner's penalty phase claims pending the Ninth Circuit's decision of an appeal filed in *Jones*

14   *v. Chappell*, 31 F. Supp. 3d 1050 (C.D. Cal. 2014).  ECF No. 269.  The Ninth Circuit decided

15   *Jones* on November 12, 2015, and determined that the district court had erred in finding

16   California's post-conviction system of review in violation of the Eighth Amendment.  *Jones v.*

17   *Davis*, 806 F.3d 538 (9th Cir. 2015).  In the wake of the Ninth Circuit's decision in *Jones*, all of

18   Petitioner's claims are now ripe for review.

19       On December 11, 2015, this Court issued an order granting Respondent's motion for

20   summary judgment as to claims 1–5.  ECF No. 271.  On March 28, 2016, this Court issued an

21   order granting Respondent's motion for summary judgment as to claims 14–15 and 17–18.  ECF

22   No. 281.  On March 29, 2016, this Court issued an order granting Respondent's motion for

23   summary judgment as to claims 7–13.  On June 14, 2016, this Court issued an order granting

24   Respondent's motion for summary judgment as to claims 21, 35, and 36.  ECF No. 283.  On June

25   15, 2016, this Court issued an order granting Respondent's motion for summary judgment as to

26   claims 6 and 16.  ECF No. 284.  On June 16, 2015, this Court issued an order granting

27   Respondent's motion for summary judgment as to claims 22 and 23.  ECF No. 285.  On July 8,

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

United States District Court
Northern District of California

1    2016, this Court issued an order granting Respondent's motion for summary judgment as to claims

2    32 and 33.  ECF No. 286.  On August 15, 2016, this Court issued an order granting Respondent's

3    motion for summary judgment as to claims 28 and 29.  ECF No. 287.  On August 17, 2016, this

4    Court issued an order granting Respondent's motion for summary judgment as to claims 24 and

5    31.  ECF No. 288.

6    **II.    LEGAL STANDARD**

7       **A.  Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2254(d))**

8            Because Petitioner filed his original federal habeas petition in 2002, the Anti-Terrorism

9    and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action.  *See Woodford*

10   *v. Garceau*, 538 U.S. 202, 210 (2003) (holding that AEDPA applies whenever a federal habeas

11   petition is filed after April 24, 1996).  Pursuant to AEDPA, a federal court may grant habeas relief

12   on a claim adjudicated on the merits in state court only if the state court's adjudication "(1)

13   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

14   established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

15   in a decision that was based on an unreasonable determination of the facts in light of the evidence

16   presented in the State court proceeding."  28 U.S.C. § 2254(d).

17      **1. Contrary To or Unreasonable Application of Clearly Established Federal Law**

18          As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs

19   have separate and distinct meanings.  *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section

20   2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas

21   relief with respect to a claim adjudicated on the merits in state court.").  A state court's decision is

22   "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to

23   that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case

24   differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts."  *Id*. at

25   412–13.

26          A state court's decision is an "unreasonable application" of clearly established federal law

27   if "the state court identifies the correct governing legal principle . . . but unreasonably applies that

28

principle to the facts of the prisoner's case." *Id.* at 413.  "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  A state court's determination that a claim lacks merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Holdings of the U.S. Supreme Court at the time of the state court decision are the sole determinant of clearly established federal law. *Williams*, 529 U.S. at 412.  Although a district court may "look to circuit precedent to ascertain whether [the circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam), "[c]ircuit precedent cannot refine or sharpen a general principle of [U.S.] Supreme Court jurisprudence into a specific legal rule," *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam) (internal quotation marks omitted).

### 2. Unreasonable Determination of the Facts

In order to find that a state court's decision was based on "an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (internal quotation marks omitted).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  That said, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or § 2254(d)(2), a federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  In the event

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

United States District Court
Northern District of California

that a federal court "determine[s], considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts," the federal court evaluates the petitioner's claim *de novo*. *Hurles*, 752 F.3d at 778. If error is found, habeas relief is warranted if that error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

**B. Federal Evidentiary Hearing (28 U.S.C. § 2254(e))**

Under *Cullen v. Pinholster*, habeas review under AEDPA "is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 180–81. The Ninth Circuit has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on claims adjudicated on the merits in state court. *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court has declined to decide whether a district court may ever choose to hold an evidentiary hearing *before* it determines that § 2254(d) has been satisfied . . . an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief.") (internal quotation marks and citation omitted).

**C. Summary Judgment**

Summary judgment is appropriate if, when viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

United States District Court
Northern District of California

United States District Court
Northern District of California

a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Whereas the party opposing summary judgment will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## III.   DISCUSSION

### A. Claim 19

Petitioner alleges that Petitioner's constitutional rights were violated by "numerous acts of prosecutorial misconduct" during the guilt and penalty phases of Petitioner's trial. The alleged acts of prosecutorial misconduct during the guilt phase are: (1) the admission of Armond Jack's perjured testimony about the knife; (2) improperly granting financial and other benefits to Zane Sinnott to secure Sinnott's testimony; (3) referring to the fee paid to Dr. Rosenthal; (4) reading Gail Johnson's preliminary hearing testimony into the record; and (5) making references in closing argument to matters outside the record.

The alleged acts of prosecutorial misconduct during the penalty phase are: (1) making arguments related to Petitioner's future dangerousness; (2) making a reference to Charles Manson; (3) making biblical references; and (4) minimizing the jury's responsibility for a death verdict. Petitioner additionally alleges that the aggregate effect of all of the alleged prosecutorial misconduct deprived Petitioner of his constitutional rights. Respondent contends that the California Supreme Court reasonably denied this claim.

The Court first addresses the allegations of prosecutorial misconduct during the guilt phase and then addresses the allegations of prosecutorial misconduct during the penalty phase.

### 1.  Guilt Phase

Petitioner divides the guilt phase prosecutorial misconduct alleged in claim 19 into five categories of alleged misconduct by the prosecution.  Three of these categories are duplicative of other claims in Petitioner's petition, each of which the Court has already rejected.  The remaining two are presented only in claim 19.  The Court addresses the categories of misconduct the Court has already rejected before turning to the categories of misconduct that the Court has not previously addressed.

### a.  Arguments Previously Addressed by the Court

Three of Petitioner's arguments for prosecutorial misconduct at the guilt phase are duplicative of claims the Court has already addressed: (1) the challenge to Jack's perjured testimony about the knife; (2) the challenge to benefits given to Sinnott; and (3) the challenge to the reading of Johnson's preliminary hearing testimony.  The California Supreme Court rejected each of these arguments on the merits and additionally held that Petitioner had waived each of these arguments regarding prosecutorial misconduct during the guilt phase by failing to object. The Court addresses each of these challenges before turning to Petitioner's remaining two arguments for prosecutorial misconduct at the guilt phase.

First, Petitioner's challenge to the admission of Jack's testimony reiterates allegations raised in claim 7, which alleges that the failure to strike Jack's testimony violated Petitioner's due process rights.  In granting summary judgment on claim 7, this Court determined that the evidence does not clearly establish that Jack committed perjury at trial.  ECF No. 282 at 10.  For the reasons outlined in this Court's order granting summary judgment on claim 7, Petitioner's subclaim lacks merit.  Summary judgment as to this subclaim is granted.

Second, Petitioner's challenge to the benefits given to Sinnott in exchange for Sinnott's testimony reiterates allegations raised in claim 10, which alleges that Petitioner's due process rights were violated by the benefits given to Sinnott in exchange for Sinnott's testimony.  Indeed, Petitioner's opposition to Respondent's motion for summary judgment as to Sinnott's testimony adds no new arguments but instead incorporates by reference Petitioner's opposition to summary

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

1  judgment on claim 10.  Opp'n at 78.  In granting summary judgment on claim 10, this Court

2  determined that "the prosecution's decision to provide benefits in exchange for a witness's

3  testimony does not render such testimony constitutionally improper."  ECF No. 282 at 20.  For the

4  reasons outlined in this Court's order granting summary judgment on claim 10, Petitioner's

5  subclaim lacks merit.  Summary judgment as to this subclaim is granted.

6       Third, Petitioner's challenge to the reading of Johnson's preliminary hearing testimony

7  reiterates allegations raised in claim 9, which alleges that the admission of Johnson's preliminary

8  hearing testimony violated Petitioner's Sixth and Eighth Amendment rights.  As with Petitioner's

9  objection to Sinnott's testimony, Petitioner's opposition to Respondent's motion for summary

10  judgment as to Johnson's preliminary hearing testimony merely incorporates by reference

11  Petitioner's opposition to summary judgment on claim 9.  Opp'n at 78.  In granting summary

12  judgment on claim 9, this Court determined that the California Supreme Court's ruling upholding

13  the reading of Johnson's preliminary hearing testimony was neither contrary to nor an

14  unreasonable application of clearly established federal law.  ECF No. 282 at 18.  For the reasons

15  outlined in this Court's order granting summary judgment on claim 9, Petitioner's subclaim lacks

16  merit.  Summary judgment as to this subclaim is granted.

17       **b.  Arguments Not Previously Addressed by the Court**

18       Petitioner's remaining two arguments for prosecutorial misconduct during the guilt phase

19  have not been previously addressed by the Court: (1) the challenge to the reference to Dr.

20  Rosenthal's fee; and (2) the challenge to the use of arguments allegedly inviting jurors to venture

21  beyond the record.

22       **i.  Dr. Rosenthal's Fee**

23       As to Dr. Rosenthal's fee, Petitioner claims that the prosecution committed prosecutorial

24  misconduct by improperly characterizing Dr. Rosenthal's fee.  Hab. Pet. at 219.  Specifically, in

25  closing argument, the prosecutor used Dr. Rosenthal's testimony regarding Dr. Rosenthal's hourly

26  rate to calculate that Dr. Rosenthal's total fee was $2625.  The prosecutor then commented that

27  $2625 was "more than the price tag that Mr. McDonald and the others settled for killing a human

28  

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

United States District Court
Northern District of California

1    being . . . more than they paid for the car cast [sic] of Carlene McDonald.  That is chilling.  Is his

2    testimony worth more than Carlene's life?  I hardly think so."  ECF No. 277-1 at 446-47.  In the

3    prosecution's rebuttal argument, the prosecutor reiterated that Dr. Rosenthal's testimony "cost

4    more than the body of Carlene McDonald dead." *Id.* at 90.

5          Petitioner asserts that, by repeatedly discussing the fact that Dr. Rosenthal's fee was

6    greater than the amount Petitioner allegedly received for Carlene's murder, the prosecution

7    "expressed the concept that Dr. Rosenthal's testimony was a waste of public funds" and thereby

8    prejudiced Petitioner's case. *Id.* at 219–20.

9          The California Supreme Court's holding that the references to Dr. Rosenthal's fee did not

10   constitute prosecutorial misconduct is neither contrary to nor an unreasonable application of

11   clearly established federal law, notwithstanding the California Supreme Court's conclusion that

12   the references may have been unfair.  "Improper argument does not, per se, violate a defendant's

13   constitutional rights." *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993).  In evaluating a

14   claim of prosecutorial misconduct based on allegedly improper argument, the Court must

15   determine if the allegedly improper remarks "rendered the proceedings fundamentally unfair." *Id.*

16   (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

17         In the instant case, the California Supreme Court concluded that the references to Dr.

18   Rosenthal's fee "were factually accurate and not so disparaging of the witness as to constitute

19   misconduct."  990 P.2d at 530.  The record supports the California Supreme Court's finding that

20   the references to Dr. Rosenthal's fee were factually accurate. *See* ECF No. 277-1 at 446

21   (prosecution's calculation of Dr. Rosenthal's fee based upon Dr. Rosenthal's testimony).

22   Furthermore, the prosecutor's comments regarding Dr. Rosenthal's fee were not a primary focus

23   of the prosecutor's closing argument.  Additionally, the comments were based on Dr. Rosenthal's

24   testimony regarding Dr. Rosenthal's rate, and Petitioner does not argue that Dr. Rosenthal's

25   testimony regarding his rate was improper. *Cf. Fears v. Bagley*, No. 1:01-cv-183, 2008 WL

26   2782888, at *65 (S.D. Ohio July 15, 2008) ("The comment [regarding the expert's fee] was

27   isolated and unlikely to prejudice the jurors against the accused, since the source of funding for

28

United States District Court
Northern District of California

11

1    [the expert's] services had been explored in his testimony without objection from defense counsel,

2    and that line of questioning is not now argued to have been improper." (citations omitted)).  Thus,

3    the references did not "render[] the proceedings fundamentally unfair."  *Jeffries*, 5 F.3d at 1191.

4    Petitioner cites no case law to the contrary.  *See* Opp'n at 79.  Accordingly, the California

5    Supreme Court's ruling on Petitioner's allegation of prosecutorial misconduct based on the

6    references to Dr. Rosenthal's fee were not based upon an unreasonable determination of the facts,

7    and summary judgment as to this subclaim is granted.

8                    **ii.  Arguments Beyond the Record**

9           As to the alleged arguments beyond the record, Petitioner argues that the prosecution

10   engaged in misconduct "by inviting the jurors to venture outside the strictures carefully placed on

11   the consideration of evidence" through argument that "Robinson was aware of the plan to kill Mrs.

12   McDonald from being told this by Petitioner."  Hab. Pet. at 221–22.[2]  Petitioner asserts that "there

13   was no evidence that Petitioner told Robinson about any plan to kill anyone."  *Id.* at 222.

14          The California Supreme Court held that the argument that Petitioner told Robinson about

15   the plan to kill Carlene was "a fair inference drawn from the evidence and, in any event, the

16   prosecutor's comment was too minor to have prejudiced defendant."  990 P.2d at 531.  Petitioner

17   argues that the California Supreme Court's holding was "unsupported in both fact and law."

18   Opp'n at 79.

19          First, the California Supreme Court's statement that the prosecutor's argument was "a fair

20   inference drawn from the evidence" is supported by the record.  Specifically, Armond Jack

21

---

22   [2] Petitioner's habeas petition appears to additionally assert that the prosecution improperly argued
     that "Petitioner and Robinson used a fake .45 to force Carlene McDonald into her car."  Hab. Pet.
23   at 222.  However, Petitioner's opposition to the instant motion discusses only the second allegedly
     improper argument, namely, the argument that Petitioner told Robinson about the plan to kill
24   Carlene.  Opp'n at 79.  Petitioner thus has waived his argument about the fake .45 gun.  *Dimitrov
     v. Seattle Times Co.*, 230 F.3d 1366 (9th Cir. 2000) (unpublished) (failure to raise argument in
25   opposition to summary judgment motion waives the issue).  Moreover, even if Petitioner had not
     waived the argument, Petitioner's argument is without merit.  The evidence introduced at trial
26   included evidence that Petitioner admitted to Weaver and Sinnott that Petitioner pointed a BB gun
     at Carlene when Petitioner and Robinson confronted Carlene and forced her into her car.  Thus,
27   the prosecution's argument regarding the use of a fake gun to force Carlene into her car did not
     invite the jurors to venture beyond the record.

28                                                                                    12
     Case No. 00-CV-01228-LHK
     ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

*United States District Court*
*Northern District of California*

1   testified that Jack first drove with Petitioner when Petitioner met with McDonald to negotiate the

2   price for killing Carlene, then later drove both Petitioner and Robinson together to Carlene's

3   apartment when Petitioner and Robinson together kidnapped Carlene.  *Ervin*, 990 P.2d at 513.

4   Jack further testified that the day of the murder, Petitioner asked for a knife and Robinson gave

5   him one.  *Id.*  Additionally, David Willis testified that the day after the murder, Petitioner admitted

6   to Willis that Petitioner had stabbed Carlene while Robinson held her.  *Id.* at 524.  From this

7   evidence, it is reasonable to infer that, between the time Petitioner negotiated with McDonald to

8   kill Carlene and the time Robinson assisted Petitioner in carrying out the plan to kill Carlene,

9   Petitioner told Robinson about the plan.  Thus, the California Supreme Court's decision is not

10  based upon an unreasonable determination of the facts.

11      Furthermore, the Court concludes that the California Supreme Court's decision was neither

12  contrary to nor an unreasonable application of clearly established federal law.  The California

13  Supreme Court reasonably determined that the prosecutor's argument was both a fair inference

14  from the record and too minor to have prejudiced Petitioner.  Thus, the argument did not render

15  Petitioner's trial "fundamentally unfair."  *See Jeffries*, 5 F.3d at 1191 (in evaluating a claim of

16  prosecutorial misconduct based on allegedly improper argument, the Court must determine if the

17  allegedly improper remarks "rendered the proceedings fundamentally unfair").  Accordingly,

18  summary judgment as to this subclaim is granted.

19      Having rejected Petitioner's arguments in claim 19 regarding prosecutorial misconduct

20  during the guilt phase, the Court turns to Petitioner's arguments regarding prosecutorial

21  misconduct during the penalty phase.

22      **2.  Penalty Phase**

23      Petitioner's claim of prosecutorial misconduct during the penalty phase raises four

24  challenges to arguments made by the prosecutor, each of which was considered and rejected on the

25  merits by the California Supreme Court on direct appeal.  990 P.2d at 534–36.  The four

26  challenges to arguments made during the penalty phase are that: (1) "[t]he prosecutor made highly

27  inflammatory and improperly prejudicial comments regarding Petitioner's future dangerousness;"

28

13

United States District Court
Northern District of California

(2) the prosecutor improperly referred to Charles Manson; (3) the prosecutor made several references to Bible passages; and (4) the prosecutor minimized the jury's responsibility for a death verdict.  Hab. Pet. at 222–26.  The Court addresses each in turn.

### a.   Petitioner's Future Dangerousness

Petitioner contends that the prosecution engaged in misconduct by arguing that Petitioner would "not be able to have a guitar in prison" because "those guitar strings can be used for a lot more than just playing," and by arguing that Petitioner would pose an ongoing disciplinary problem in prison if given a sentence of life without parole because he "can try to get away with anything, and no one can give him one more day's time."  Hab. Pet. at 222–23.

The California Supreme Court rejected Petitioner's claim on the merits, stating that "prosecutorial argument regarding defendant's future dangerousness is permissible when based on evidence of the defendant's conduct rather than expert opinion."  990 P.2d at 534.  The California Supreme Court held that "the prosecutor's remarks were proper argument derived from evidence indicating that defendant might cause disciplinary problems if sentenced to life imprisonment. The 'guitar strings' argument was perhaps speculative but too trivial to have prejudiced the defense."  *Id.*

Petitioner's challenge to the prosecutor's discussion of "guitar strings" closely parallels allegations raised in claim 16, which alleges that the trial court improperly allowed the prosecutor to comment that Petitioner would not be allowed a guitar in prison but did not allow Petitioner to present the testimony of a prison consultant regarding the prison conditions for defendants sentenced to life imprisonment without the possibility of parole.  ECF No. 284 at 11-12.  In granting summary judgment on claim 16, this Court determined that the California Supreme Court's rejection of this argument was neither contrary to nor an unreasonable application of clearly established federal law.  *Id.* at 13.  For the reasons outlined in this Court's order granting summary judgment on claim 16, Petitioner's argument here that the prosecution's "guitar strings" argument was improper lacks merit.

Additionally, the California Supreme Court reasonably determined that the prosecutor's

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

1   argument regarding Petitioner's future dangerousness was derived from evidence of Petitioner's

2   past conduct.  Petitioner has made no argument to the contrary.  Moreover, Petitioner has not

3   identified any case law or made any argument that comments regarding Petitioner's future

4   dangerousness derived from evidence of Petitioner's past conduct could have rendered Petitioner's

5   penalty phase trial "fundamentally unfair."  *See Jeffries*, 5 F.3d at 1191 (in evaluating a claim of

6   prosecutorial misconduct based on allegedly improper argument, the Court must determine if the

7   allegedly improper remarks "rendered the proceedings fundamentally unfair").  Furthermore, as "a

8   single, isolated incident rather than an extensive tactic by the prosecution," the guitar strings

9   comment did not render Petitioner's trial "fundamentally unfair."  *Jeffries*, 5 F.3d at 1191–92.

10          Therefore, summary judgment as to this subclaim is granted.

11                **b.  Reference to Charles Manson**

12          Petitioner contends that the prosecution engaged in misconduct by responding to

13   Petitioner's mother's statement that Petitioner is a "nice person" by stating that "[t]o say

14   [Petitioner] is a nice person is like saying Charles Manson is the Messiah."  Hab. Pet. at 223.

15          The California Supreme Court rejected Petitioner's claim on the merits, stating that "the

16   prosecutor's comment, which simply used Manson's name to illustrate a point, was within the

17   scope of fair comment on the evidence indicating that defendant helped kidnap and kill Carlene

18   McDonald and committed other crimes."  990 P.2d at 535.

19          The California Supreme Court's decision was neither contrary to nor an unreasonable

20   application of federal law.  Petitioner cites no U.S. Supreme Court authority to support Petitioner's

21   contention that the reference to Charles Manson constituted prosecutorial misconduct.  Instead, the

22   sole case cited by Petitioner in support of Petitioner's challenge to the reference to Charles

23   Manson is *Newlon v. Armontrout*, 885 F.2d 1328 (8th Cir. 1989), *cert. denied*, 497 U.S. 1038

24   (1990).  In *Newlon*, the Eighth Circuit affirmed the district court's finding that the prosecution had

25   rendered the penalty phase of the petitioner's trial fundamentally unfair by comparing the

26   petitioner to Charles Manson in a way that portrayed the petitioner's crimes as "more egregious"

27   than those of Charles Manson and other mass murderers and by "invit[ing] the jurors to give

28
                                                    15

United States District Court
Northern District of California

1  petitioner death as punishment for the crimes of Manson, Speck and Son of Sam." *Id.* at 1337–38;

2  *Newlon v. Armontrout*, 693 F. Supp. 799, 806.  By contrast, in the instant case, the prosecution did

3  not argue that Petitioner's crimes were equivalent to, let alone surpassing in egregiousness, those

4  of Charles Manson, and the prosecution did not invite jurors to punish Petitioner for Charles

5  Manson's crimes.  Thus, *Newlon* does not support finding that the passing reference made by the

6  prosecution to Charles Manson in Petitioner's case rendered Petitioner's trial fundamentally

7  unfair.  Summary judgment as to this subclaim is granted.

8      **c.  Biblical References**

9      Petitioner contends that the prosecution's references to Bible passages during the penalty

10  phase constitute prosecutorial misconduct.  Hab. Pet. at 224–25.  Petitioner objects specifically to

11  the prosecution's discussion of the "good thief" crucified next to Jesus and quotation of Old

12  Testament passages on imposition of the death penalty during closing argument.  *Id.*

13      The California Supreme Court found that the prosecution's reference to the "good thief"

14  violated a previous court order made during cross-examination, and that the use of biblical

15  references as support for the death penalty was against California authority condemning such

16  references.  990 P.2d at 535.  Nevertheless, the California Supreme Court rejected Petitioner's

17  challenge to the prosecution's biblical references on the merits and because Petitioner failed to

18  object to the prosecutor's arguments.  *Id.*[3]  As to the merits, the California Supreme Court held

19

20  ───────────────

21  [3] The California Supreme Court held that Petitioner's claim for prosecutorial misconduct based
    upon improper biblical references was procedurally defaulted because Petitioner failed to
22  contemporaneously object to the prosecutor's argument.  *Ervin*, 990 P.2d at 535.  This Court may
    not grant habeas relief to Petitioner on the defaulted claim unless Petitioner can overcome the
23  procedural bar.  *Rich v. Calderon*, 187 F.3d 1064, 1070 (9th Cir. 1999) (holding that failure to
    contemporaneously object is a procedural bar, and that a federal court may not review a
24  procedurally defaulted claim unless the petitioner can overcome the validity of the procedural
    default); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999) (holding that where the
25  California Court of Appeal denied a claim as procedurally barred for failure to contemporaneously
    object, habeas petitioner was not entitled to relief unless the petitioner could demonstrate cause
26  and prejudice).  Because determining whether a procedural default can be excused turns on
    whether the error prejudiced Petitioner, the Court focuses its analysis on whether the prosecutor's
27  biblical references prejudiced Petitioner.

28
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

1  that "in light of the court's standard sentencing instructions and defense counsel's own reliance on

2  biblical text, we find defendant was not prejudiced by the prosecutor's misconduct." *Id.*

3       The California Supreme Court correctly concluded that the prosecution's discussion and

4  quotation of Bible passages was improper.  Indeed, "religious arguments have been condemned by

5  virtually every federal and state court to consider their challenge." *Sandoval v. Calderon*, 241

6  F.3d 765, 777 (9th Cir. 2000).  However, "[t]o warrant habeas relief, [Petitioner] must show that

7  the prosecutor's improper argument 'had [a] substantial and injurious effect or influence in

8  determining the jury's verdict.'" *Id.* at 778 (quoting *Brecht*, 507 U.S. at 638).

9       Whether a prosecutor's improper invocation of religious authority was prejudicial must be

10  determined "in the context of the entire trial." *Roybal v. Davis*, 148 F. Supp. 3d 958, 1047 (S.D.

11  Cal. 2015 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 639 (1974)).  In the instant case, the

12  California Supreme Court held that the prosecutor's Bible-based arguments were not prejudicial

13  based on "the court's standard sentencing instructions and defense counsel's own reliance on

14  biblical text."  990 P.2d at 535.

15       Although the trial court did not give a curative instruction specifically directed to the

16  biblical references because Petitioner did not object to the prosecutor's arguments, the trial court

17  did instruct the jury that the jury "must determine what the facts are from the evidence received

18  during the entire trial" and that "statements made by the attorneys during the trial are not

19  evidence."  ECF No. 277-5 at 49, 51.  The trial court further correctly instructed the jury on the

20  permissible aggravating and mitigating factors for determining whether to return a death sentence.

21  The jury is presumed to follow its instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

22       Additionally, Petitioner's counsel responded to the prosecution's Bible-based arguments in

23  favor of the death penalty by citing specific stories and verses in the Bible that counsel against the

24  death penalty.  In fact, Petitioner's counsel argued that the Bible passages weighing against the

25  death penalty superseded those cited by the prosecutor because the prosecutor relied primarily

26  upon passages from the Old Testament whereas Petitioner's counsel relied upon the New

27  Testament.  The fact that Petitioner's counsel responded directly to the prosecution's improper

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

biblical references through the use of further biblical references supports finding that the prosecutor's improper argument did not have a "substantial and injurious" effect on the jury. *Cf. Ybarra v. McDaniel*, 656 F.3d 984, 999-1000 (9th Cir. 2011) (finding no prejudice where prosecutor's Bible references in closing argument were made only after defense counsel "opined that the death penalty contravened the teachings of the New Testament and was opposed by Christian churches"); *Fields v. Brown*, 503 F.3d 755, 799 (9th Cir. 2007) (en banc) (holding that biblical references made by the prosecutor in closing argument have less potential for a prejudicial effect than biblical arguments raised by jurors during deliberation because the defendant can respond to improper prosecutorial argument "by tailoring his closing argument to account for the religious arguments or by insuring that the judge instructs the jury to consider only the relevant statutory factors") (Berzon, J., dissenting); *Roybal*, 148 F. Supp. 3d at 1050 (finding improper biblical references prejudicial in part because no attempt was "made to curtail or mitigate the impact of the misconduct"); *Vieira v. Chappell*, No. 05-CV-01492-AWI-SAB, 2015 WL 641433, at *80 (E.D. Cal. Feb. 5, 2015) (denying a claim for ineffective assistance of counsel based on failure to object to prosecutor's biblical references in closing argument because defense counsel "chose instead to address the argument in his own closing remarks" and "turned the argument against the prosecutor" by relating the story of Cain and Abel, which counsels against the death penalty).

Furthermore, as discussed in Section I.A. (Background) and Section III.B.6. (Failure to Request Redaction), the record shows that this was not a close case. For example, ample physical evidence connected Petitioner to Carlene's murder. Before Carlene's murder, Petitioner was spotted with the knife used to kill Carlene. *Ervin*, 990 P.2d at 522. After Carlene's murder, Petitioner retained Carlene's vehicle, parking it and seeking to have it "stripped, cleaned, or burned shortly after the murder." *Id.* at 514. Williams, Petitioner's girlfriend, testified that Petitioner gave Williams a watch and ring later identified as belonging to Carlene. *Id.* at 513. Likewise, there were substantial aggravating circumstances supporting the jury's verdict of a death sentence, including Petitioner's conviction in the instant case for the "planned and brutal stabbing

18

1   and murder for hire of a defenseless victim," evidence that Petitioner had previously been

2   convicted of armed robbery, and the absence of evidence of remorse. *Ervin*, 990 P.2d at 536-37.

3   Additionally, the jury deliberated for only five court days, during which the jury unanimously

4   decided the appropriate sentences for Petitioner and Petitioner's two co-defendants.  During those

5   five days, the jury did not ask to revisit any of the evidence or hear read-backs of any of the

6   testimony from the trial.  The strength of the evidence and the jury's straightforward deliberation

7   process indicate that the prosecutor's improper arguments were not prejudicial.  *See Fields*, 503

8   F.3d at 782-83 (finding no prejudice from jury foreperson's introduction of list of Bible verses

9   during deliberations due to the strength of the aggravating evidence); *Wheaton v. McDaniel*, 412

10  Fed. App'x 965, 966 (9th Cir. 2011) (finding no prejudice from prosecutor's biblical reference due

11  to the trial court's instruction to the jury to ignore the reference and the overwhelming evidence

12  against the petitioner); *cf. Roybal*, 148 F. Supp.3d at 1050 (finding prosecutor's biblical references

13  prejudicial based in part upon the substantial mitigating evidence and the fact that the jury

14  deliberated for six days, during which the jury requested read-backs of trial testimony and twice

15  indicated that the jury was deadlocked).

16       Accordingly, the California Supreme Court's determination that the prosecutor's improper

17  biblical references were not prejudicial was neither contrary to nor an unreasonable application of

18  clearly established federal law.  Summary judgment as to this subclaim is granted.

19              **d.  Minimizing the Jury's Responsibility for a Death Verdict**

20       Finally, Petitioner contends that the prosecution engaged in misconduct by minimizing the

21  jury's responsibility for a death verdict in closing argument.  Hab. Pet. at 226.  The prosecution

22  first told the jurors "You will not be the grim reapers.  You will not be the executioners."

23  Following an objection, the judge reminded the jury that "it is your individual decisions which

24  will determine whether these defendants live or die.  You are the ones who have to make that

25  decision personally, each of you.  The responsibility rests with you."  ECF No. 277-4 at 357.

26  Following the judge's clarification, the prosecution told the jury "You will decide, but you won't

27  be the ones to strap him in and do it, okay?  There is a big, big difference.  So if the defense gets

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

1   up and tells you, you're the executioners, you will know who is telling you the truth.  Your

2   function is to decide the penalty as the court indicated, not to enforce it." *Id.* at 358.

3           The California Supreme Court held that the prosecutor's statement that the jurors would

4   not be the executioners was accurate but potentially misleading in violation of *Caldwell v.*

5   *Mississippi*, 472 U.S. 320, 330 (1985).  However, the California Supreme Court concluded that

6   "the court's standard sentencing instructions and special admonition were sufficient to explain the

7   jury's ultimate responsibility for making the penalty determination," such that there was no

8   prejudice to Petitioner.  990 P.2d at 535–36.

9           The California Supreme Court's holding was neither contrary to nor an unreasonable

10  application of clearly established federal law.  In *Caldwell*, the sole case relied upon by Petitioner,

11  the judge failed to correct the prosecution's efforts to minimize the role of the jury by arguing that

12  the jurors would not make the final decision.  472 U.S. at 325.  Furthermore, the judge in *Caldwell*

13  condoned the prosecution's argument and stated on the record that the judge believed it was

14  important for the jurors to understand that the jury's decision would be reviewed on appeal.  *Id.* at

15  325–26.  By contrast, in the instant case, the judge gave the jury a special admonishment that,

16  notwithstanding the prosecution's argument, the jury would bear the responsibility for determining

17  whether Petitioner would live or die.  The jury is presumed to follow its instructions.  *Weeks*, 528

18  U.S. at 234.

19          The California Supreme Court also did not make an unreasonable determination of fact.

20  The judge admonished the jury that the jury bore the responsibility to determine whether

21  Petitioner would live or die after the prosecution argued that the jurors would not be the

22  executioners.  Immediately after the judge's admonishment, the prosecution reiterated that the

23  jurors would not carry out the act of killing Petitioner but clarified that the jurors' function "is to

24  decide the penalty as the court indicated, not enforce it."  ECF No. 277-4 at 357-58.  It was not

25  unreasonable for the California Supreme Court to conclude that the prosecutor's statement was not

26  prejudicial in light of the judge's admonition.

27          Therefore, the Court finds that none of the alleged acts of prosecutorial misconduct in

28
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

1    claim 19, considered separately or together, merit habeas corpus relief.  Accordingly,

2    Respondent's motion for summary judgment as to claim 19 is GRANTED.

3        **B.  Claim 20**

4        In Claim 20 of Petitioner's amended habeas petition, Petitioner contends that "[t]he record

5    establishes numerous examples of ineffective assistance of Petitioner's trial counsel."  Pet. at 228.

6    Petitioner asserts that these examples, "[w]hether considered single or together, . . . undermine

7    confidence in the outcome" of Petitioner's guilt phase and penalty phase trials.  *Id.*

8        The U.S. Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984),

9    governs claims of ineffective assistance of trial counsel.  To prevail on a claim under *Strickland*,

10   Petitioner must establish two things.  First, he must establish that counsel's representation was

11   deficient, i.e., that it "fell below an objective standard of reasonableness" under prevailing

12   professional norms.  *Strickland,* 466 U.S. at 687–88.  A court "must indulge a strong presumption

13   that counsel's conduct falls within the wide range of reasonable professional assistance," including

14   a presumption that counsel's action "might be considered sound trial strategy."  *Id.* at 689 (internal

15   quotation marks and citation omitted).  Second, Petitioner must establish that he was prejudiced by

16   counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's

17   unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A

18   reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

19   Review of a *Strickland* claim under § 2254(d) is "doubly deferential."  *Yarborough v. Gentry*, 540

20   U.S. 1, 6 (2003).

21       The Court addresses each of Petitioner's arguments under this claim in turn.

22       **1.  Failure to Object to Fact-Specific Voir Dire**

23       Petitioner asserts that counsel's performance was constitutionally deficient for failing to

24   object to the prosecutor "pos[ing], on a repeated basis, fact-specific voir dire during the individual

25   qualification of prospective jurors."  Pet. at 228.  According to Petitioner, this voir dire resulted in

26   the disqualification of prospective jurors who could have imposed the death penalty "in a murder-

27   for-hire situation," but not for a defendant with "McDonald's pristine background."  *Id.*  The

28
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

*United States District Court*
*Northern District of California*

failure of Petitioner's trial counsel to object "vociferously on *Witherspoon* grounds" each time the prosecutor posed these questions eliminated "middle-of-the-spectrum jurors" and resulted in a death-prone jury.  Pet. at 229.

Petitioner's challenge to the fact-specific voir dire reiterates allegations raised in claim 2, which alleges that several jurors were improperly excused due to their answers to fact-specific voir dire questions.  In granting summary judgment on claim 2, this Court determined that the voir dire questions were appropriately aimed at "determining whether the prospective jurors would invariably decline to vote for death in a murder-for-hire case," such that the dismissal of the jurors was not based on the jurors' evaluation of the specific facts of the case.  ECF No. 271 at 12-13.  For the reasons outlined in this Court's order granting summary judgment on claim 2, Petitioner's subclaim lacks merit.  Summary judgment as to this subclaim is granted.

### 2.  Agreeing to a Preliminary Jury Screening Procedure

Petitioner asserts that participation by Petitioner's trial counsel "in the questionnaire vetting process" resulted in a death-prone venire and undermined confidence in the outcome of the trial.  Pet. at 229–30.  Petitioner asserts that trial counsel used "vague answers on vague questionnaires to eliminate prospective jurors," without Petitioner's presence or advance approval.  *Id.* at 229.  According to Petitioner, "the record is devoid of any indication that said informal vetting process was an informed tactical choice."  *Id.*  Petitioner observes that "[a]ll 158 prospective jurors who indicated" no support for the death penalty were eliminated during this screening procedure, but "68 of those jurors who responded that they strongly favored or supported the death penalty" remained in the jury pool through this procedure.  *Id.* at 229–30.

Petitioner's challenge to the use of the questionnaire vetting process reiterates allegations raised in claim 4, which alleges that the use of the questionnaires violated Petitioner's statutory and constitutional rights.  In granting summary judgment on claim 4, this Court determined that use of the questionnaire did not frustrate the fairness of the proceedings.  ECF No. 271 at 23.  For the reasons outlined in this Court's order granting summary judgment on claim 4, Petitioner's subclaim lacks merit.  Summary judgment as to this subclaim is granted.

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

United States District Court
Northern District of California

### 3.   Failure to Assert Various Grounds for Severance at Trial

Petitioner asserts that his trial counsel "failed to prepare and assert meritorious grounds for severance of trial prior to jury selection." Pet. at 230. Petitioner provides multiple reasons that trial counsel should have moved for severance: (1) cultural and economic differences between McDonald and codefendants; (2) conflicts in the admissibility of testimony for one codefendant but not another; and (3) different prospective juror attitudes for imposing the death penalty on someone who actually killed the victim and someone who hired the killer. Pet. at 231–33.

Petitioner's challenge to the failure to move to sever reiterates allegations raised in claim 1, which alleges that the failure to sever Petitioner's trial violated Petitioner's constitutional rights. In granting summary judgment on claim 1, this Court determined that the failure to sever Petitioner's trial did not render Petitioner's trial fundamentally unfair. ECF No. 271 at 8-10. For the reasons outlined in this Court's order granting summary judgment on claim 1, Petitioner's subclaim lacks merit. Summary judgment as to this subclaim is granted.

### 4.   Failure to Object to Admission of Johnson's Prior Testimony

Petitioner contends that trial counsel was deficient for failing to object to the reading of Johnson's preliminary hearing testimony. Pet. at 234. Petitioner argues that trial counsel should have objected both on *Aranda-Bruton* and Confrontation Clause grounds. *Id.*

Petitioner's challenge to the failure to object to the reading of Johnson's preliminary hearing testimony reiterates allegations raised in claim 9, which alleges that the reading of Johnson's preliminary hearing testimony at Petitioner's guilt phase trial violated Petitioner's Sixth and Eighth Amendment rights. In granting summary judgment on claim 9, this Court determined that the California Supreme Court's ruling upholding the reading of Johnson's preliminary hearing testimony was neither contrary to nor an unreasonable application of clearly established federal law. ECF No. 282 at 18. For the reasons outlined in this Court's order granting summary judgment on claim 9, Petitioner's subclaim lacks merit. Summary judgment as to this subclaim is granted.

### 5.   Failure to Request a Hearing on the Admissibility of Willis's Statement

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

1    Petitioner asserts that his trial counsel failed "to request an Evidence Code section 402

2 hearing in regards to the admissibility of David Willis's statement, to move to strike that

3 [statement] or to request a cautionary instruction as to how it could be considered by the jury."

4 Pet. at 237.  Petitioner observes that the record does not indicate that "defense counsel moved to

5 strike this taped statement on the grounds that it was coerced, the product of police misconduct,

6 and therefore, unreliable."  *Id.*

7    Petitioner's challenge to the failure to request a section 402 hearing reiterates allegations

8 raised in claim 8, which alleges that Willis's statement was obtained through unlawful and

9 coercive police conduct.  In granting summary judgment on claim 8, this Court determined that the

10 California Supreme Court's ruling upholding the admission of Willis's statement was neither

11 contrary to nor an unreasonable application of clearly established federal law.  ECF No. 282 at 14–

12 15.  For the reasons outlined in this Court's order granting summary judgment on claim 8,

13 Petitioner's subclaim lacks merit.  Summary judgment as to this subclaim is granted.

14    **6.  Failure to Request Redaction of Statements by Sinnott Implicating Petitioner**

15    Petitioner asserts that trial counsel "failed to request redaction of [Sinnott's] untaped

16 conversations with McDonald."  Pet. at 239.  Although "trial counsel did object to admission of

17 Sinnott's taped conversation with McDonald on *Aranda* grounds," trial counsel failed to object to

18 "Sinnott's [testimony] that McDonald knew Petitioner as 'Turk,' or that McDonald, during their

19 first conversation, told Sinnott [that McDonald] was thrifty in dealing with 'Curtis' and admitted

20 to the fact that [McDonald] had given 'Mr. Ervin' keys to his ex-wife's house."  Pet. at 239; *see*

21 EFC No. 277 at 12, 67–68; EFC No. 276-4 at 445–47.

22    Petitioner's claim was considered and rejected on the merits by the California Supreme

23 Court on direct appeal.  *Ervin*, 990 P.2d at 531.  As the California Supreme Court observed, the

24 "trial court limited admission of [Sinnott and McDonald's taped] conversations to the case against

25 McDonald."  *Id.* at 527; *see* EFC No. 277 at 13 ("You must not consider that tape recording as

26 evidence against [Petitioner] or [Robinson] nor may you consider the testimony of [Sinnott] with

27 regard to that particular conversation as evidence against either [Petitioner] or [Robinson].").  The

28

24

United States District Court
Northern District of California

California Supreme Court concluded that trial counsel's failure to object to the supposedly inadequate redaction of Sinnott's taped statements "could not have prejudiced defendant in light of the other incriminating evidence in this case." *Id.* at 531.

Petitioner's challenge to the failure to object to Sinnott's testimony reiterates in part allegations raised in claim 11, which alleges, *inter alia*, that Petitioner's Sixth and Fourteenth Amendment rights were violated by the admission of Sinnott's taped conversation indicating that McDonald knew Petitioner as "Turk." In granting summary judgment on claim 11, this Court determined that Sinnott's statements were properly admitted. ECF No. 282 at 23-24. For the reasons outlined in this Court's order granting summary judgment on claim 8, Petitioner's subclaim as to the "Turk" reference lacks merit.

Moreover, Petitioner fails to establish prejudice resulting from admission of the conversations between Sinnott and McDonald because the trial court admonished the jury not to consider either Sinnott's taped conversation referring to Petitioner as "Turk" or Sinnott's testimony related to that conversation as evidence against Petitioner. EFC No. 277 at 13. Petitioner has not offered any indication that the jury failed to follow these instructions, and the jury is presumed to follow its instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Furthermore, any prejudice suffered by Petitioner because of Sinnott's testimony would not have created a reasonable probability of Petitioner's acquittal in light of the other evidence against Petitioner. Specifically, ample physical evidence connected Petitioner to Carlene's murder. Before Carlene's murder, Petitioner was spotted with the knife used to kill Carlene. *Ervin*, 990 P.2d at 522. After Carlene's murder, Petitioner gave Carlene's watch and ring to Petitioner's girlfriend and retained Carlene's vehicle, parking it and seeking to have it stripped, cleaned, or burned. *Id.* at 514.

Additionally, testimony unrelated to Petitioner's possible identity as Turk from four witnesses—Willis, Sinnott, Weaver, and Jack—all supported Petitioner's role in the murder of Carlene for Petitioner's financial gain. In a recorded statement, Willis stated that Petitioner, on the night of the murder, "admitted killing a woman and showed Carlene's driver's license, watch, and

25

1  ring to Willis." *Ervin*, 990 P.2d at 524.  Willis also stated that, on the next morning, Petitioner

2  admitted to stabbing Carlene while Robinson held her.  *Id.*  At the guilt phase trial, Sinnott

3  testified that he overheard Petitioner admit to "killing a woman with a knife, after using a toy gun

4  to abduct her." *Id.* at 526.  Sinnott also testified that he heard Jack and Petitioner discuss their

5  efforts to obtain more money from McDonald.  *Id.*  Weaver testified that when Weaver showed

6  Petitioner a toy gun, Petitioner stated that the toy gun resembled the one Petitioner and Robinson

7  used to force Carlene into her car to abduct her.  *Id.* at 527.  Jack testified that he and Petitioner

8  together learned that McDonald would pay to have McDonald's ex-wife killed.  *Id.* at 522.  Jack

9  further testified about Petitioner's involvement in negotiating with McDonald about payment for

10  Carlene's murder, searching for Carlene's car in a BART parking lot, and driving to Carlene's

11  apartment.  *Id.*  At Carlene's apartment, Jack observed Petitioner ask for a knife and receive one

12  from Robinson.  *Id.*  Jack testified that Petitioner admitted to Jack that "[Petitioner] did it." *Id.*

13  On two occasions, Jack received from Petitioner portions of McDonald's payment for the killing

14  of Carlene.  *Id.*

15        Weighed against this ample evidence, the California Supreme Court did not unreasonably

16  apply or make a decision contrary to clearly established federal law in finding insufficient

17  prejudice.  *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by

18  the record is more likely to have been affected by errors than one with overwhelming record

19  support.").  Summary judgment is granted as to this subclaim.

20        **7.  Ineffective Cross-Examination of Gwyn Willis**

21        Petitioner contends that trial counsel's cross-examination of Gwyn Willis ("Gwyn"), a

22  witness for the prosecution at the guilt phase trial, was ineffective.  Pet. at 240.  Petitioner

23  acknowledges that trial counsel attempted to impeach Gwyn.  *Id.*  Petitioner contends that the

24  attempted impeachment only reinforced Gwyn's testimony on direct examination.  *Id.*  Petitioner's

25  trial counsel inadvertently elicited from Gwyn that Gwyn saw Petitioner with "[a] woman's watch

26  to give to [Petitioner's] girlfriend" on the night of November 6th, 1986, the night of Carlene's

27  murder.  ECF No. 276-3 at 529.  The prosecution, on redirect examination, relied on this elicited

28

1    testimony to have Gwyn identify the watch as the same watch previously identified as belonging

2    to the murder victim.  ECF No. 276-4 at 40.  Petitioner asserts that "[t]here could be no tactical

3    advantage to bringing out" this evidence on cross-examination.  Pet. at 241.

4            Petitioner's claim was considered and rejected on the merits by the California Supreme

5    Court on direct appeal.  *Ervin*, 990 P.2d at 531.  The California Supreme Court stated, "We rarely

6    second-guess counsel's cross examination tactics, despite the elicitation of seemingly damaging

7    testimony."  *Id.*  The court also reasoned that Petitioner "does not assert the evidence elicited from

8    [Gwyn] was untruthful, nor does [Petitioner] explain how counsel's cross examination in these

9    areas could have prejudiced Petitioner in light of the other substantial incriminating evidence in

10   the case."  *Id.*

11           The California Supreme Court's decision was neither contrary to nor an unreasonable

12   application of clearly established federal law.  Petitioner attacks the results of trial counsel's cross-

13   examination of Gwyn.  However, trial counsel was engaged in an attempt to impeach Gwyn based

14   on statements she had previously made to law enforcement about Petitioner's "normal" or clean

15   appearance the night of the murder, November 6, 1986.  ECF No. 276-3 at 528– 38.  This line of

16   questioning elicited the statement from Gwyn that Gwyn saw Petitioner with "[a] woman's watch

17   to give to [Petitioner's] girlfriend."  *Id.* at 529.

18           Under *Strickland*, the Court "must indulge a strong presumption that counsel's conduct

19   falls within the wide range of reasonable professional assistance" and "might be considered sound

20   trial strategy."  *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted).

21   Petitioner has not overcome that presumption.  Petitioner does not assert that trial counsel was

22   ineffective for exercising a strategic decision to impeach a prosecution witness.  Instead, Petitioner

23   argues that the result of this attempted impeachment prejudiced Petitioner.  Petitioner's argument

24   does not address at all trial counsel's strategic decision to impeach Gwyn as a prosecution witness.

25           Additionally, Petitioner fails to show prejudice under *Strickland*.  Petitioner does not

26   establish that, but for Gwyn's testimony about seeing Petitioner with the victim's watch, there was

27   a reasonable probability that the jury would have acquitted Petitioner.  The California Supreme

28

United States District Court
Northern District of California

27

1    Court was not unreasonable in holding that Gwyn's testimony did not prejudice Petitioner when

2    weighed against the other evidence of Petitioner's guilt.  As discussed above, ample physical

3    evidence and testimony connected Petitioner to Carlene's murder.  *See supra.*

4        Under these circumstances, the California Supreme Court did not unreasonably apply or

5    make a decision contrary to clearly established federal law.  Summary judgment as to this

6    subclaim is granted.

7        **8.   Ineffective Cross-Examination of D'Mondre Theus**

8        Petitioner asserts that trial counsel "was ineffective in [counsel's] cross-examination of

9    D'Mondre Theus."  Pet. at 241.  On cross-examination, Petitioner's trial counsel and Theus had

10   the following exchange regarding Theus's recollection of November 7, 1986:

11           Q:  On that morning, you never saw Curtis Ervin or Skip Robinson
                with any weapons, is that correct?
12           A:  No.
             Q:  You didn't see a BB gun or knife or anything like that, is that
13              correct?
             A:  I saw a BB gun.
14
     ECF No. 276-3 at 380.  Petitioner's counsel attempted to ask Theus if Willis had told Theus that

15   the BB gun belonged to Willis; however, the prosecution successfully objected to this questioning

16   on hearsay grounds.  *Id.* at 380–81.  Through continued questioning, Petitioner's trial counsel

17   confirmed that Theus did have a conversation about a BB gun with Willis, and that Theus had no

18   reason to believe that the BB gun belonged to either Petitioner or Robinson.  *Id.* at 384–85.

19       Petitioner contends that there "was no possible tactical advantage to bringing out this

20   information."  Pet. at 242.  Petitioner also contends that Theus's testimony about the BB gun

21   prejudiced Petitioner because this testimony corroborated a recorded statement by Willis and

22   testimony by Weaver indicating that Petitioner and Robinson had used a "fake pistol" to kidnap

23   Carlene.  *Id.*; *see* ECF No. 276-4 at 125.

24       The California Supreme Court rejected Petitioner's claim on the merits on direct appeal.

25   *Ervin*, 990 P.2d at 531–32.  According to that court, "Cross-examination is always a risky

26   process–even experienced counsel conducting a brilliant cross-examination might inadvertently

1    elicit damaging disclosures, a risk inherent in the tactical decision to conduct cross-examination."

2    *Id.* at 531.  The California Supreme Court also found that Theus's testimony on the BB gun "was

3    cumulative to similar evidence in the case, particularly Willis's statement, and was not likely to

4    have prejudiced [Petitioner]."  *Id.* at 532.

5         The California Supreme Court's decision was neither contrary to nor an unreasonable

6    application of clearly established federal law.  Petitioner contends that trial counsel was "not

7    satisfied" with Theus's answer of "No" to the question, "[Y]ou never saw [Petitioner] or

8    [Robinson] with any weapons, is that correct?"  ECF No. 276-3 at 380.  Petitioner contends that

9    there "was no possible tactical advantage" to continue this line of questioning.  Pet. at 242.

10   However, the trial transcript does not clearly indicate what question Theus had answered: whether

11   Theus had seen Petitioner or Robinson with any weapons, or whether it was "correct" that Theus

12   had never seen Petitioner or Robinson with any weapons.  Moreover, Petitioner's counsel

13   succeeded in eliciting Theus's testimony that Theus had no reason to believe that either Petitioner

14   or Robinson owned the BB gun in question.  This evidence was helpful to Petitioner's case.  In

15   light of the question's format and counsel's successful further inquiry regarding the BB gun's

16   ownership, Petitioner fails to overcome the "strong presumption that counsel's conduct falls

17   within the wide range of reasonable professional assistance" when trial counsel pursued more

18   detailed follow-up questioning on what Theus meant by his "No" answer.  *Strickland*, 466 U.S. at

19   689.

20        Furthermore, the California Supreme Court's finding that the evidence "was not likely to

21   have prejudiced [Petitioner]" was not unreasonable.  *Ervin*, 990 P.2d at 532.  Theus's testimony

22   that he had seen a BB gun in the Willis home was merely cumulative of the substantial other

23   evidence that Petitioner had used a BB gun to kidnap Carlene.[4]  For instance, at the guilt phase

24   trial, Sinnott testified that he overheard Petitioner admit to "killing a woman with a knife, after

25   using a toy gun to abduct her."  *Ervin*, 990 P.2d at 526.  Weaver testified that when Weaver

26

27   _____

     [4] The California Supreme Court uses the phrases "BB gun" and "toy gun" interchangeably.

28
     Case No. 00-CV-01228-LHK
     ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

1    showed Petitioner a toy gun, Petitioner stated that the toy gun resembled the one Petitioner and

2    Robinson used to force Carlene into her car to abduct her.  *Id.* at 527.  Additionally, as Petitioner

3    acknowledges, Willis's recorded statement indicated that Petitioner had told Willis "the night of

4    the homicide that a 'fake pistol' had been used to make [Carlene] get into her car . . . ."  Pet. at

5    242.  Petitioner has therefore failed to show that, but for Theus's testimony that Theus observed a

6    BB gun, there was a reasonable probability that Petitioner's guilt phase trial result would have

7    been different.

8         Under these circumstances, the California Supreme Court did not unreasonably apply or

9    make a decision contrary to clearly established federal law.  Summary judgment as to this

10   subclaim is granted.

### 9.  Failure to Request Special Instruction on Substance Abuse Disorder

12        Petitioner argues that trial counsel rendered ineffective assistance at the guilt phase trial by

13   failing "to request a special instruction relating to Petitioner's mental disorder defense to the

14   testimony of [Petitioner's] psychiatric expert."  Pet. at 243.  At the guilt phase trial, Petitioner's

15   expert Dr. Rosenthal, a psychiatrist, "testified that Petitioner was suffering from substance abuse

16   disorder at the time of the offense, a mental disorder that lessened the possibility that Petitioner

17   deliberated and premeditated the murder of [Carlene]."  *Id.*  Petitioner contends that "jurors were

18   not told they could consider evidence of factors other than intoxication relative to Petitioner's

19   alleged deliberation and premeditation."  *Id.* at 245.

20        Petitioner's claim was rejected by the California Supreme Court on direct appeal.  *Ervin*,

21   990 P.2d at 532.  The California Supreme Court relied on "similar reasoning" in its rejection of

22   Petitioner's argument that the trial court erred in failing to instruct sua sponte on Petitioner's

23   mental disorder.  *Id.*  As the California Supreme Court summarized, "The [trial] court did instruct

24   the jury on various mental states and specific intents required to establish the various crimes

25   charged . . . ."  *Id.* at 528.  The trial court also explained "that if the evidence regarding an intent or

26   mental state is susceptible of two reasonable interpretations, the jury must adopt the one favorable

27   to the [Petitioner]."  The court also instructed that the jury could consider whether Petitioner "was

28

1    intoxicated by liquor or drugs at the time of the crime," and any reasonable doubt would require

2    the jury "to find [Petitioner] did not have that intent or mental state." *Id.*[5]

3            Petitioner's claim regarding trial counsel's failure to request a jury instruction on substance

4    abuse disorder parallels allegations raised in claim 13, which alleges that the trial court should

5    have *sua sponte* instructed the jury on substance abuse disorder.  In granting summary judgment

6    on claim 13, this Court determined that the trial court did not err in omitting a jury instruction on

7    substance abuse.  ECF No. 282 at 28-30.  For the reasons outlined in this Court's order granting

8    summary judgment on claim 9, Petitioner's subclaim lacks merit.

9            Furthermore, the California Supreme Court reasonably found that any possible error "was

10   harmless in light of the other instructions in the case." *Ervin*, 990 P.2d at 529.  The trial court "did

11   instruct the jury that [Petitioner's] drug intoxication *at the time of the crime* could be considered in

12   determining whether [Petitioner] had the requisite specific intent or mental state." *Id.* (emphasis in

13   original).  Nothing in that instruction "or any other instruction limited the jury's consideration of

14   [Petitioner's] psychiatric evidence to [Petitioner's] intoxication at the time of the crime." *Id.*

15   Moreover, "the jury was free to consider both the long-term and immediate effects of substance

16   abuse on [Petitioner's] formation of the requisite mental state." *Id.*

17           Additionally, Petitioner's trial counsel urged the jury in closing argument "to find that

18   [Petitioner], being 'saturated with drugs,' at the time of the murder, lacked the ability to

19   premeditate or deliberate." *Ervin*, 990 P.2d at 529.  The trial court's instructions and trial

20   counsel's arguments did focus on Petitioner's drug intoxication at the time of the crime; however,

21   it was "unlikely [that] additional focus on [Petitioner's] past abuses would have resulted in a more

22   favorable verdict."  Thus, the California Supreme Court reasonably concluded that "[i]t was not

23   reasonably probable the jury would have reached a different verdict had the court given [the

24

25   [5] Specifically, the trial court instructed the jury that the jury could consider "whether or not the
     offense was committed while the defendant was under the influence of extreme mental or
26   emotional disturbance" and "whether or not at the time of the offense, the capacity of the
     defendant to appreciate the criminality of his conduct or to conform his conduct to the
27   requirements of law was impaired as a result of mental disease or defect or the effects of
     intoxication."  ECF No. 277-5 at 57-58.

28
     Case No. 00-CV-01228-LHK
     ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

1    alternate instruction].” *Id.* at 530.

2           Accordingly, summary judgment as to this subclaim is granted.

3           **10. Failure to Obtain Discovery of Codefendants' Witnesses**

4           Petitioner asserts that trial counsel was ineffective because counsel failed “to obtain

5    discovery of codefendant's penalty phase witnesses.”  Pet. at 245.  Petitioner alleges that this

6    failure resulted in an untimely penalty phase motion to sever by Petitioner and Robinson's trial

7    counsel.  *Id.* at 245–46.  Petitioner relies on a prosecutor's entitlement to a witness list from the

8    defense to contend that “an argument can at least be made that it is within the power of the court to

9    compel” the same information be disclosed “to other defendants.”  *Id.* at 246.  Without a severed

10   penalty phase trial, Petitioner was prejudiced by “McDonald's almost pristine and exemplary life

11   history,” as well as “the proposition that Robinson was of subpar mentality and was dominated by

12   Petitioner.”  *Id.* at 247.

13          On direct appeal, the California Supreme Court rejected Petitioner's claim on the merits.

14   *Ervin*, 990 P.2d at 536.  According to the California Supreme Court, Petitioner had acknowledged

15   that “no statutory basis exists for the discovery of codefendants' penalty phase witnesses.”  *Id.*

16   (citing Cal. Penal Code §§ 1054–1054.7).  Additionally, Petitioner's claim “is too speculative to

17   establish prejudice arising from counsel's omission.”  *Id.*

18          The California Supreme Court's decision was not contrary to or an unreasonable

19   application of federal law.  Petitioner cites no statutory or U.S. Supreme Court authority to

20   establish that trial counsel's failure to obtain certain discovery “fell below an objective standard of

21   reasonableness” under prevailing professional norms, *Strickland,* 466 U.S. at 687–88, and the

22   statutory authority and case law relied upon by Petitioner are inapposite.  Petitioner cites

23   California Penal Code § 1054.3, which merely compels a defendant “and his or her attorney” to

24   disclose “names and addresses” of potential “witnesses at trial” to the prosecuting attorney, but

25   does not require a defense attorney to request discovery regarding a codefendant's witnesses.  Cal.

26   Penal Code § 1054.3(a).

27          Petitioner also relies on two California cases.  The first, *Clinton K.* v. *Superior Court,* 37

28

32

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Cal.App.4th 1244 (1995), involved the trial court's authority in a case involving a juvenile

2    defendant to order compliance with a prosecutor's discovery request prior to a hearing on whether

3    the defendant should be tried as an adult. *Id.* at 1246. *Clinton K.* does not address whether a

4    defendant's trial counsel must request discovery regarding a codefendant's witnesses. Likewise,

5    the other case Petitioner cites, *People v. Superior Court (Sturm)*, 9 Cal.App.4th 172 (1992),

6    involved defense counsel's refusal to cooperate with the prosecution's discovery request and does

7    not address the issue presented in the instant case. *Id.* at 176. Thus, the cases cited by Petitioner

8    fail to show how trial counsel was deficient under prevailing professional norms for not seeking to

9    compel discovery from codefendants before the penalty phase trial.

10       Additionally, the California Supreme Court was not unreasonable in finding Petitioner's

11   claim "too speculative to establish prejudice." *Ervin*, 990 P.2d at 536. Petitioner contends that

12   trial counsel's failure to compel discovery delayed Petitioner and Robinson's motion for

13   severance. Pet. at 245. However, as Petitioner concedes in his own petition, the trial court denied

14   the severance motion on multiple grounds, including untimeliness. Pet. at 245. Specifically, the

15   trial court held that "the timeliness of the motion is a factor in my decision not to grant the

16   motions, and also the other reasons I have given on the merits as well." ECF No. 277-2 at 440.

17   The trial court's denial of Petitioner's severance motion on the merits eliminates the possibility,

18   much less a reasonable probability, that Petitioner's trial counsel could have succeeded on

19   Petitioner's motion to sever had counsel compelled discovery from codefendants to enable a

20   timely severance motion.

21       Accordingly, summary judgment as to this subclaim is granted.

22       **11. Failure to Object to Rebuttal Evidence of Petitioner's Disciplinary Record**

23       Petitioner contends that trial counsel "ineffectively failed to move in limine before opening

24   the door to rebuttal evidence" to Petitioner's penalty phase evidence of Petitioner being "a

25   satisfactory worker while incarcerated in North County Jail." Pet. at 247. Petitioner argues that

26   "[t]here was no downside" to a motion in limine "for a ruling as to the proper scope of rebuttal" to

27   proposed testimony as to Petitioner's good conduct in North County Jail. *Id.* at 248. Additionally,

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

1    Petitioner argues that trial counsel "failed to object on Evidence Code section 352 grounds to the

2    rebuttal evidence introduced by the prosecution." *Id.* at 249.  Last, Petitioner contends that trial

3    counsel "failed to request a limiting instruction with regard to the prejudicial rebuttal evidence."

4    *Id.* at 250.

5            On direct appeal, the California Supreme Court denied Petitioner's claim on the merits.

6    *Ervin*, 990 P.2d at 536.  The California Supreme Court concluded that the rebuttal evidence

7    regarding Petitioner's conduct in jail "was properly admitted to rebut [Petitioner's] showing of his

8    good conduct in county jail while awaiting trial." *Id.* at 536.  The California Supreme Court also

9    concluded that trial counsel's decision either to withhold "the good conduct evidence" or "open

10   the door to rebuttal" was "clearly a tactical" decision that the California Supreme Court could not

11   "properly second guess." *Id.* at 536.

12           Petitioner's challenge to the failure to object to the rebuttal evidence regarding Petitioner's

13   conduct in jail reiterates in part allegations raised in claim 15, which alleges that the trial court

14   improperly admitted the rebuttal evidence.  In granting summary judgment on claim 15, this Court

15   determined that the trial court's admission of the rebuttal evidence was neither contrary to nor an

16   unreasonable application of clearly established federal law.  ECF No. 281 at 10.  For the reasons

17   outlined in this Court's order granting summary judgment on claim 15, Petitioner's subclaim as to

18   the failure to object to the rebuttal evidence lacks merit.  This same reasoning applies to the failure

19   to request a limiting instruction as to the rebuttal evidence.

20           As to Petitioner's argument that trial counsel should have moved in limine to determine the

21   scope of rebuttal evidence in advance, although Petitioner contends that "[t]here was no

22   downside" to a motion in limine regarding the scope of rebuttal, Pet. at 248, the U.S. Supreme

23   Court has never required trial counsel to pursue every nonfrivolous claim or defense, regardless of

24   its merit, viability, or realistic chance of success.  *See Knowles v. Mirazayance*, 556 U.S. 111, 125,

25   127 (2009).  Additionally, the California Supreme Court ruled that the rebuttal evidence was

26   properly admitted.  Petitioner therefore cannot establish that counsel was deficient for failing to

27   raise a meritless objection.  *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).

28
     Case No. 00-CV-01228-LHK
     ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

United States District Court
Northern District of California

1      Petitioner has also failed to show prejudice under *Strickland*.  The prosecutor's rebuttal

2    evidence merely rebutted one piece of mitigating evidence by Petitioner—evidence of Petitioner's

3    good conduct while incarcerated during trial.  Petitioner still introduced "mitigating background

4    evidence regarding his character, employment, family, drug use, religious involvement, and

5    musical skills." *Ervin*, 990 P.2d at 514.  Petitioner fails to show that, but for the prosecutor's

6    rebuttal of Petitioner's evidence of good conduct while incarcerated, Petitioner would not have

7    received the death penalty in light of Petitioner's prior bank robbery conviction and his lack of

8    remorse for what the California Supreme Court described as a "planned and brutal stabbing and

9    murder for hire of a defenseless victim." *Id.* at 514, 536–37.

10      Accordingly, summary judgment as to this subclaim is granted.

11    **12. Cumulative Prejudice**

12      Petitioner argues that "[w]hether considered singly or together, such [ineffectiveness of

13    trial counsel] undermines confidence in the outcome of this capital trial, and reversal is required."

14    Pet. at 228.  Petitioner's argument amounts to a claim of cumulative prejudice from multiple

15    deficiencies in the representation of Petitioner by Petitioner's trial counsel.

16      The Ninth Circuit has "previously recognized that 'prejudice may result from the

17    cumulative impact of multiple deficiencies.'" *Harris v. Wood*, 64 F.3d 1432, 1438 (9th Cir. 1995)

18    (quoting *Cooper v. Fitharris*, 586 F.2d 1325, 1333 (9th Cir. 1978) (en banc), *cert. denied*, 440

19    U.S. 974 (1979)).  Here, however, Petitioner has failed to establish any deficiencies, let alone

20    multiple deficiencies sufficient to show cumulative impact.  Thus, Petitioner fails to establish

21    cumulative prejudice from the above claims of ineffective assistance of trial counsel.

22      Accordingly, Respondent's motion for summary judgment as to claim 20 is GRANTED.

23    **C. Claim 30**

24      In claim 30, Petitioner contends that the pattern of prosecutorial misconduct in this case

25    cumulatively deprived Petitioner of Petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendment

26    rights.  The California Supreme Court rejected Petitioner's argument on the merits on habeas

27    review.

28
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

1       The only alleged instances of prosecutorial misconduct specifically identified in claim 30

2   are those that Petitioner previously alleged in claims 5, 7, 8, and 29.  The Court has already

3   rejected these claims as well as all of Plaintiff's prosecutorial misconduct claims.  *See* ECF Nos.

4   287; 271; 282.

5       Thus, because the Court has concluded that the California Supreme Court's rejection of

6   each of Petitioner's arguments for prosecutorial misconduct was neither contrary to nor an

7   unreasonable application of clearly established federal law, and that the California Supreme

8   Court's rulings were not based on an unreasonable determination of the facts, the Court likewise

9   rejects Petitioner's argument that these alleged acts of prosecutorial misconduct cumulatively

10   deprived Petitioner of his constitutional rights.

11       Accordingly, Respondent's motion for summary judgment as to claim 30 is GRANTED.

12   **IV.    CONCLUSION**

13       For the foregoing reasons, Respondent's motion for summary judgment as to claims 19,

14   20, and 30 is GRANTED.  In addition, because Petitioner's arguments as to claim 20 are

15   unavailing, Petitioner's request for an evidentiary hearing as to claim 20 is also DENIED.  *See*

16   *Sully*, 725 F.3d at 1075 ("[A]n evidentiary hearing is pointless once the district court has

17   determined that § 2254(d) precludes habeas relief.").

18   **IT IS SO ORDERED.**

19   Dated: September 1, 2016

20   _____

21   LUCY H. KOH
     United States District Judge

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS 19, 20, AND 30

*United States District Court*
*Northern District of California*