1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9
NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

10

CURTIS LEE ERVIN,                              Case  No. 00-CV-01228-LHK

11
                    Petitioner,

12                                             **ORDER GRANTING RESPONDENT'S**
         v.                                    **MOTION FOR SUMMARY JUDGMENT**
13                                             **ON CLAIM 25**

RON DAVIS, Warden, California State            Re: Dkt. No. 213
14  Prison at San Quentin,

15                  Respondent.

16

17          In 1991, Petitioner Curtis Lee Ervin ("Petitioner") was convicted of the murder of Carlene

18  McDonald and sentenced to death.  On September 7, 2007, Petitioner filed an amended petition

19  for a writ of habeas corpus before this Court, which included 37 claims in total.  ECF No. 97

20  ("Pet.").  Respondent filed a motion for summary judgment as to all 37 claims in Petitioner's

21  amended habeas petition.  ECF No. 213 ("Mot.").  Petitioner opposed Respondent's motion and

22  requested an evidentiary hearing on 15 of Petitioner's 37 claims.  This Court has ruled on 34 of the

23  37 claims.

24          This Order addresses claim 25 in Petitioner's amended habeas petition.  Petitioner requests

25  an evidentiary hearing on this claim.  For the reasons discussed below, Respondent's motion for

26  summary judgment as to claim 25 is GRANTED.  Petitioner's request for an evidentiary hearing

27  on claim 25 is DENIED.

28

1

United States District Court
Northern District of California

## I.      BACKGROUND

### A.  Factual Background[1]

On February 21, 1991, a jury convicted Petitioner of first-degree murder with the special circumstance finding of murder for financial gain.  Evidence presented at Petitioner's trial established that Robert McDonald ("McDonald"), the former spouse of Carlene McDonald ("Carlene"), had hired Petitioner and Arestes Robinson ("Robinson"), to kill Carlene for $2,500.

At trial, Armond Jack ("Jack") testified that he had driven with Petitioner to meet McDonald to negotiate the price for killing Carlene.  Jack also testified that he had driven Petitioner and Robinson to Carlene's apartment on November 7, 1986, the night of the murder.  While Petitioner, Robinson, and Jack were driving to Carlene's apartment, Petitioner asked for and received a knife from Robinson.  With the assistance of a BB gun, Petitioner and Robinson kidnapped Carlene and used Carlene's vehicle to take Carlene to Tilden Park, where Petitioner stabbed Carlene to death with Robinson's assistance.  A patrol officer found Carlene's body the following afternoon.

Petitioner and Robinson met with McDonald the day after Carlene's murder and presented McDonald with Carlene's driver's license as proof of the murder.  McDonald paid Petitioner $2,500, which Petitioner shared with Robinson and others to purchase cocaine.  A few weeks after Carlene's murder, McDonald paid Petitioner an additional $1,700.  Sharon Williams ("Williams"), Petitioner's girlfriend, testified that Petitioner gave Williams a watch and ring later identified as belonging to Carlene.  Petitioner also retained Carlene's vehicle, parking it and seeking to have it stripped, cleaned or burned shortly after the murder.

In addition to the physical evidence linking Petitioner to Carlene's murder, Petitioner also admitted various incriminating aspects of the crime to David Willis ("Willis"), Zane Sinnott ("Sinnott"), and the investigating police officer, Sergeant Dana Weaver ("Weaver").  According to

---

[1] The following facts are drawn from the California Supreme Court's opinion on Petitioner's direct appeal.  *People v. Ervin*, 22 Cal. 4th 48 (2000); *cf. Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

these witnesses, Petitioner admitted that he and Robinson had confronted Carlene, had pointed the BB gun at her, had forced her into her car, and had driven her to Tilden Park.  Petitioner further admitted to stabbing Carlene to death at Tilden Park while Robinson held her.  The prosecution also introduced testimony from Robinson's girlfriend, Gail Johnson ("Johnson"), who stated that Robinson had admitted to participating in Carlene's murder.

Robinson, McDonald, and Petitioner were tried together.  Petitioner made no claims of innocence, but sought to impeach the testimony of prosecution witnesses Jack, Sinnott, and Willis. In addition, Dr. Fred Rosenthal ("Rosenthal"), a psychiatrist, testified that Petitioner's cocaine consumption might have impaired Petitioner's thought process and that Petitioner thus did not appreciate the seriousness and finality of killing someone for money.  The jury found Petitioner's defenses unavailing and convicted Petitioner of first-degree murder.

During the penalty phase of Petitioner's trial, the prosecution introduced evidence of a prior bank robbery conviction and some jail disciplinary problems.  Petitioner introduced mitigating evidence regarding his character, employment, family, drug use, religious involvement, and musical skills.  McDonald and Robinson also introduced mitigating evidence.  The jury returned death verdicts for Petitioner and McDonald, but chose life imprisonment without parole for Robinson.

**B. Procedural History**

On January 6, 2000, the California Supreme Court affirmed Petitioner's conviction and sentence on direct appeal.  *Ervin*, 22 Cal. 4th at 66.  The United States Supreme Court denied certiorari on October 2, 2000.  *Ervin v. California*, 531 U.S. 842 (2000).  On November 12, 2002, Petitioner filed a federal habeas petition before this Court.  ECF No. 32.  On January 22, 2003, Petitioner filed a corrected federal habeas petition.  ECF No. 45.  That same day, the Court stayed all federal habeas proceedings so that Petitioner could exhaust his claims in state court.  Petitioner filed a state habeas petition on October 1, 2003, and on December 14, 2005, the California Supreme Court denied Petitioner's state habeas petition.

Following the California Supreme Court's decision, Petitioner filed an amended federal

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

United States District Court
Northern District of California

1  habeas petition.  ECF No. 97.  Respondent filed a response on March 7, 2008, ECF No. 110, and

2  Petitioner filed a traverse on November 13, 2008.  ECF No. 133.

3    On February 14, 2012, Respondent filed the instant motion for summary judgment.  On

4  January 8, 2013, Petitioner filed an opposition and a request for an evidentiary hearing.  ECF No.

5  249 ("Opp'n").  Respondent filed a reply on May 10, 2013, which included an opposition to

6  Petitioner's request for an evidentiary hearing.  ECF No. 259 ("Resp. Reply").  On August 16,

7  2013, Petitioner filed a reply to Respondent's opposition to Petitioner's request for an evidentiary

8  hearing.  ECF No. 266 ("Pet. Reply").  Petitioner's reply specified that Petitioner sought an

9  evidentiary hearing on claims 7–10, 20, 26–29, and 32–34.  *Id.* at 5.

10    On January 7, 2015, the instant action was reassigned from U.S. District Judge Claudia

11  Wilken to the undersigned judge.  ECF No. 268.  On March 16, 2015, the Court stayed

12  Petitioner's penalty phase claims pending the Ninth Circuit's decision of an appeal filed in *Jones*

13  *v. Chappell*, 31 F. Supp. 3d 1050 (C.D. Cal. 2014).  ECF No. 269.  The Ninth Circuit decided

14  *Jones* on November 12, 2015, and determined that the district court had erred in finding

15  California's post-conviction system of review in violation of the Eighth Amendment.  *Jones v.*

16  *Davis*, 806 F.3d 538 (9th Cir. 2015).  In the wake of the Ninth Circuit's decision in *Jones*, all of

17  Petitioner's claims are now ripe for review.

18    On December 11, 2015, this Court issued an order granting Respondent's motion for

19  summary judgment as to claims 1–5.  ECF No. 271.  On March 28, 2016, this Court issued an

20  order granting Respondent's motion for summary judgment as to claims 14–15 and 17–18.  ECF

21  No. 281.  On March 29, 2016, this Court issued an order granting Respondent's motion for

22  summary judgment as to claims 7–13.  On June 14, 2016, this Court issued an order granting

23  Respondent's motion for summary judgment as to claims 21, 35, and 36.  ECF No. 283.  On June

24  15, 2016, this Court issued an order granting Respondent's motion for summary judgment as to

25  claims 6 and 16.  ECF No. 284.  On June 16, 2015, this Court issued an order granting

26  Respondent's motion for summary judgment as to claims 22 and 23.  ECF No. 285.  On July 8,

27  2016, this Court issued an order granting Respondent's motion for summary judgment as to claims

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

United States District Court
Northern District of California

1    32 and 33.  ECF No. 286.  On August 15, 2016, this Court issued an order granting Respondent's

2    motion for summary judgment as to claims 28 and 29.  ECF No. 287.  On August 17, 2016, this

3    Court issued an order granting Respondent's motion for summary judgment as to claims 24 and

4    31.  ECF No. 288.  On September 1, 2016, this Court issued an order granting Respondent's

5    motion for summary judgment as to claims 19, 20 and 30.  ECF No. 289.  On September 7, 2016,

6    this Court issued an order granting Respondent's motion for summary judgment as to claims 26

7    and 27.  ECF No. 290.

8    **II.    LEGAL STANDARD**

9        **A.  Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2254(d))**

10           Because Petitioner filed his original federal habeas petition in 2002, the Anti-Terrorism

11   and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action.  *See Woodford*

12   *v. Garceau*, 538 U.S. 202, 210 (2003) (holding that AEDPA applies whenever a federal habeas

13   petition is filed after April 24, 1996).  Pursuant to AEDPA, a federal court may grant habeas relief

14   on a claim adjudicated on the merits in state court only if the state court's adjudication "(1)

15   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

16   established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

17   in a decision that was based on an unreasonable determination of the facts in light of the evidence

18   presented in the State court proceeding."  28 U.S.C. § 2254(d).

19           **1. Contrary To or Unreasonable Application of Clearly Established Federal Law**

20           As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs

21   have separate and distinct meanings.  *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section

22   2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas

23   relief with respect to a claim adjudicated on the merits in state court.").  A state court's decision is

24   "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to

25   that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case

26   differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts."  *Id*. at

27   412–13.

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

United States District Court
Northern District of California

A state court's decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). A state court's determination that a claim lacks merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Holdings of the U.S. Supreme Court at the time of the state court decision are the sole determinant of clearly established federal law. *Williams*, 529 U.S. at 412. Although a district court may "look to circuit precedent to ascertain whether [the circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam), "[c]ircuit precedent cannot refine or sharpen a general principle of [U.S.] Supreme Court jurisprudence into a specific legal rule," *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam) (internal quotation marks omitted).

## 2. Unreasonable Determination of the Facts

In order to find that a state court's decision was based on "an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (internal quotation marks omitted). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). That said, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

United States District Court
Northern District of California

United States District Court
Northern District of California

§ 2254(d)(2), a federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  In the event that a federal court "determine[s], considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts," the federal court evaluates the petitioner's claim *de novo*.  *Hurles*, 752 F.3d at 778.  If error is found, habeas relief is warranted if that error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  Petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  *Id.* at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

### B. Federal Evidentiary Hearing (28 U.S.C. § 2254(e))

Under *Cullen v. Pinholster*, habeas review under AEDPA "is limited to the record that was before the state court that adjudicated the claim on the merits."  563 U.S. at 180–81.  The Ninth Circuit has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on claims adjudicated on the merits in state court.  *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court has declined to decide whether a district court may ever choose to hold an evidentiary hearing *before* it determines that § 2254(d) has been satisfied . . . an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief.") (internal quotation marks and citation omitted).

### C. Summary Judgment

Summary judgment is appropriate if, when viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there

7

1    is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is

2    "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to

3    a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in

4    favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5         The moving party bears the initial burden of identifying those portions of the pleadings,

6    discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*

7    *Corp.*, 477 U.S. at 323.  Whereas the party opposing summary judgment will have the burden of

8    proof at trial, the party moving for summary judgment need only point out "that there is an

9    absence of evidence to support the nonmoving party's case." *Id.* at 325.  If the moving party

10   meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a

11   genuine issue for trial." *Anderson*, 477 U.S. at 250.

## III.    DISCUSSION

### A.   Claim 25

12        Claim 25 contains 10 subclaims alleging juror bias and various instances of juror

13   misconduct.  Petitioner requests an evidentiary hearing on this claim.  The California Supreme

14   Court denied claim 25 on the merits without a discussion.  *In re Ervin*, No. S119420 (Cal. Dec. 14,

15   2005).  Respondent contends that the California Supreme Court's decision was reasonable and that

16   a hearing is not warranted.  The Court will address each subclaim in turn.

### a)   Prejudicial Publicity

20        Petitioner alleges that on the morning of the final day of jury selection, jurors were

21   exposed to a prejudicial *Oakland Tribune* news article regarding the cost of Petitioner's trial.  This

22   subclaim reiterates allegations raised in claim 6.  In granting summary judgment on claim 6, this Court

23   determined that Petitioner failed to establish that the jurors actually read the *Oakland Tribune* article,

24   or that their impartiality was compromised by it.  ECF No. 284 at 11.  For the reasons outlined in this

25   Court's order granting summary judgment on claim 6, Petitioner's subclaim lacks merit.  Summary

26   judgment on subclaim (a) is granted.

### b)   Premature Deliberations Outside Jury Room

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

United States District Court
Northern District of California

United States District Court
Northern District of California

Petitioner alleges that he was denied the right to an impartial jury because jurors engaged in premature and improper discussions about his case outside of the deliberation room.  In support of his claim, he submits the declarations of juror Harvey Hendrix, ECF No. 33, Ex. 8, and alternate juror Rudolph Wilson, ECF No. 33, Ex. 9.  Hendrix states that he often knew his fellow jurors' thoughts about witnesses because during breaks, he "overheard their comments to each other on several occasions."  *Id.*, Ex. 8.  Wilson states that during breaks, jurors regularly engaged in discussions regarding matters such as the testimony of Petitioner's psychiatrist, the lack of evidence of Petitioner's substance abuse, the effectiveness of Petitioner's counsel, and evidence that Petitioner made pruno, the jailhouse alcohol.  Wilson further states that some of the comments he heard had "racial overtones."  *Id.*, Ex. 9.

The Sixth Amendment guarantees every criminal defendant a right to an impartial jury.  *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).  "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury."  *Tinsley v. Borg*, 895 F.2d 520, 523-24 (9th Cir. 1990) (internal quotation marks omitted).   Not every instance of juror misconduct, however, requires a new trial.  *United States v. Klee*, 494 F.2d 394, 396 (9th Cir. 1974).  The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.  *Id.*

In addressing allegations of juror misconduct, courts distinguish between outside contact influencing the verdict and pre-deliberation discussion among jurors.  In *Mattox v. United States*, 146 U.S. 140, 150 (1892),  the United States Supreme Court held that "[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear."   In contrast, premature deliberation among jurors gives rise to no such presumption because they are "not as serious as" private communication, outside contact, or tampering.  *Davis v. Woodford*, 384 F.3d 628, 653 (9th Cir. 2004).   "What is crucial is not that jurors keep silent with each other about the case but that each juror keep an open mind until the case has been submitted to the jury."  *Id.* (internal quotation marks omitted).

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

1    Here, assuming that the misconduct occurred, it did not violate Petitioner's right to an

2    impartial jury.  The jurors' alleged discussions do not suggest that the jurors had predetermined

3    Petitioner's guilt.  Rather, the discussions appear to pertain to the jurors' impressions of evidence

4    to which all the jurors were exposed.  *Cf. Belmontes v. Brown*, 414 F.3d 1094, 1124 (9th Cir.

5    2005), *overruled on other grounds by Ayers v. Belmontes*, 549 U.S. 7 (2006) (stating, without

6    deciding, that juror's pre-deliberation comments suggested that he had predetermined defendant's

7    guilt because juror uttered "[h]ere comes the killer" every time defendant entered courtroom).

8    Petitioner presents no evidence that the alleged misconduct prejudiced Petitioner, much less "to

9    the extent that he has not received a fair trial."  *Klee*, 494 F.2d at 396; *see also Anderson v.*

10   *Calderon*, 232 F.3d 1053, 1098 (9th Cir. 2000), *overruled on other grounds by Osband v.*

11   *Woodford,* 290 F.3d 1036, 1043 (9th Cir. 2002) (defendant's right to impartial jury not violated on

12   theory of premature deliberation based on juror's pre-deliberation note regarding sentencing to

13   judge, where it was unclear whether juror wrote note while deliberating, defendant did not contend

14   that jurors relied on evidence outside of record, and defendant did not assert that jurors decided on

15   death penalty before case was submitted to them).

16       Petitioner has failed to demonstrate that the California Supreme Court's denial of this

17   subclaim was contrary to, or constituted an unreasonable application of clearly established federal

18   law.  The state court's decision was not "so lacking in justification that there was an error well

19   understood and comprehended in existing law beyond any possibility for fairminded

20   disagreement."  *Richter*, 562 U.S. at 102.  Accordingly, summary judgment as to subclaim (b) is

21   granted.

22       **c)  Dictionary Use**

23       Petitioner alleges that the jurors committed misconduct by consulting a dictionary to define

24   ambiguous legal terms in the jury instructions.  Petitioner submits declarations from several jurors,

25   a defense investigator, and his co-defendants' attorneys in support of his claim.  ECF No. 33, Exs.

26   1, 2, 5, 6, 7 & 8.  Juror Robert Corneal's declaration states that juror Robert Van Wagner, a school

27   teacher, was their "resource person" and consulted his dictionary during deliberations.  *Id*. at 7.

28

10

Corneal has no recollection, however, of the terms Van Wagner looked up in his dictionary.  *Id.* The declaration of Alfons Wagner, co-defendant Arestes Robinson's counsel, states that one male juror related that "he had consulted a dictionary for the definition of either or both of the words 'aggravation' or 'aggravating.'"  *Id.*, Ex. 2.  The affidavit of juror Hendrix states that one of the jurors "might have looked up words in his dictionary."  *Id.*, Ex. 8.  The declaration of defense investigator Paz Garcia states that jurors Peters and Wykes "stated specifically that the jury consulted a dictionary during penalty phase deliberations."  *Id.*, Ex. 6.  Finally, Petitioner submits the declaration of Madelynn Kopple, a presenter at a death penalty conference in Monterey in 1992, who states that at a juror debriefing session at the conference, juror Van Wagner stated that he had consulted his dictionary for the definition of various terms during deliberations at Petitioner's trial. *Id.*, Ex. 1.  Juror Corneal, who was also present at the conference, confirmed Van Wagner's account.  *Id.*

The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence presented at trial.  *See Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965). Evidence not presented at trial is deemed "extrinsic."  *See Marino v. Vasquez*, 812 F.2d 499, 504 (9th Cir. 1987).  A petitioner is entitled to habeas relief only if it can be established that the exposure to extrinsic evidence had "'substantial and injurious effect or influence in determining the jury's verdict.'" *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

Here, nothing in the record demonstrates that the alleged dictionary use affected the jury's verdict.  In their declarations, none of the jurors recall the actual terms allegedly researched in the dictionary.  Only the declaration of Arestes Robinson's counsel, Alfons Wagner, relates the hearsay statement of a male juror, who stated that he researched the definitions of "aggravation" or "aggravating."  ECF No. 33, Ex. 2.  The California Supreme Court has found that "aggravating" is a commonly understood term that need not be defined for the jury.  *People v. Kirkpatrick*, 7 Cal. 4th 988, 1018 (1994).  Petitioner fails to establish that the jurors relied on any misleading definitions of these terms to his detriment.  *See*, *e.g.*, *United States v. Birges*, 723 F.2d 666, 671

1    (9th Cir. 1984) ("meager record . . . does not demonstrate that any prejudice occurred as a result of

2    the alleged introduction of a dictionary into the jury's deliberations" in a criminal trial); *see also*

3    *United States v. Steele*, 785 F.2d 743, 749 (9th Cir. 1986) (in copyright infringement case, record

4    demonstrated no reasonable probability that the jury's unauthorized use of dictionary affected

5    verdict); *United States v. Kupau*, 781 F.2d 740, 744 (9th Cir. 1986) (although trial judge erred in

6    giving dictionary to jury during deliberations in a criminal trial, error was harmless where in

7    addition to curative instructions, government submitted affidavits from jurors stating that

8    dictionary was consulted only for definition of words that were not critical to case); *Mendoza v.*

9    *Runnels*, 251 Fed. Appx. 406, 408 (9th Cir. 2007) (juror's misconduct in looking up "facilitate"

10   did not substantially and injuriously impact verdict); *People v. Karis*, 46 Cal. 3d 612, 644-45

11   (1988) (defendant was not prejudiced by jury's consideration of dictionary definition of

12   "mitigating" during penalty phase of capital murder trial where there was no indication that

13   dictionary definition misled jury).  Indeed, the record in the instant case does not demonstrate any

14   connection between the alleged dictionary use and the jury's verdict.  *Cf. Marino*, 812 F.2d at 505-

15   07 (juror's use of dictionary to define "malice" resulted in prejudice where it was uncontroverted

16   that juror who received definition had held out against a guilty verdict for 28 days, but changed

17   vote shortly after receiving definition).

18        Section 2254(d)'s "highly deferential standard for evaluating state-court rulings . . .

19   demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537

20   U.S. 19, 24 (2002) (citation and internal quotation omitted).  Under this deferential standard,

21   Petitioner fails to demonstrate that the California Supreme Court's denial of this subclaim was

22   contrary to, or constituted an unreasonable application of clearly established federal law.

23   Accordingly, summary judgment as to subclaim (c) is granted.

24        **d)  Juror's Personal Knowledge**

25        Petitioner contends that juror Corneal, a substance abuse counselor, injected his

26   personal knowledge into the deliberations in violation of Petitioner's constitutional rights.  In

27   support of this subclaim, Petitioner submits a declaration from Corneal stating that he told fellow

28   
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

United States District Court
Northern District of California

1    jurors to disregard the testimony of the psychiatrist testifying for the defense because the

2    psychiatrist "had no experience with drug addicts and did not know what he was talking about."

3    ECF No. 33, Ex. 7.  Petitioner contends that such injection of extrinsic evidence into the jury room

4    violated his constitutional rights.  Respondent contends that the California Supreme Court

5    reasonably denied this claim.

6         Petitioner fails to demonstrate that the rejection of this claim was contrary to, or

7    constituted an unreasonable application of clearly established federal law.  To the contrary, the

8    Ninth Circuit rejected a claim similar to this one in a case where the petitioner claimed that the

9    jury forewoman committed misconduct when, based on her experience as a physician, she told

10   other jurors during deliberations that the petitioner's mental disorders caused him to commit his

11   crime.  *Grotemeyer v. Hickman*, 393 F.3d 871, 878 (9th Cir. 2004).  The Ninth Circuit held that a

12   "juror's past personal experiences may be an appropriate part of the jury's deliberations."  *Id*.  The

13   Ninth Circuit further noted that the petitioner "has cited no Supreme Court case, and we have

14   found none, holding that such conduct amounts to a violation of his right of confrontation, of his

15   right to an impartial jury, or of any other constitutional rights."  *Id*.

16        In support of his claim, Petitioner cites United States Supreme Court cases that stand for

17   general propositions that a defendant is entitled to confront witnesses, *see*, *e.g.*, *Davis v. Alaska*,

18   415 U.S. 308, 317 (1974), or to rebut adverse evidence presented against him, *see*, *e.g.*, *Chambers

19   v. Mississippi*, 410 U.S. 284 (1973).  Like Grotemeyer, Petitioner fails to cite United States

20   Supreme Court authority, and this Court has found none, that holds that Corneal's statement

21   violates Petitioner's constitutional rights.  Thus, Petitioner fails to demonstrate that the California

22   Supreme Court's denial of this claim was contrary to, or an unreasonable application of clearly

23   established federal law.  The state court's decision was not "so lacking in justification that there

24   was an error well understood and comprehended in existing law beyond any possibility for

25   fairminded disagreement."  *Richter*, 562 U.S.at 102.  Accordingly, summary judgment on claim

26   (d) is granted.

27        **e)  Consideration of False Evidence**

28
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

1        Petitioner alleges that he was prejudiced by juror Judith Anderson-Locklear's

2   consideration of false information.  In support of this claim, Petitioner submits Anderson-

3   Locklear's declaration, in which she states her belief that Petitioner was involved in threatening

4   Gail Johnson, a witness for the prosecution.  ECF No. 33, Ex. 10.  Respondent contends that the

5   California Supreme Court reasonably denied this claim.

6        Anderson-Locklear's declaration states the following:

7            Another reason justifying a death verdict for Ervin was because
             during trial it was obvious that he had a direct hand in threatening a
8            female witness [Johnson] who because she was too scared to testify,
             got on the stand and claimed to have no memory of events about
9            which she was previously asked.  While the witness was on the
             stand, a large threatening looking man entered the courtroom.  I
10           noticed that Ervin nodded to the man when he entered.  Shortly
             thereafter, the brother of the female witness gave a note to the court
11           stating that his sister's life had been threatened.  As soon as the
             female witness left the stand, the threatening man left the courtroom.
12           I believe that Ervin was behind the threat.

13  ECF No. 33, Ex. 10.  Petitioner contends that Anderson-Locklear's account is false and

14  unsupported by the record.  According to Petitioner, the record reflects that Johnson failed to

15  recall her preliminary hearing testimony not because she was afraid, but because Prozac may have

16  affected her memory, that it was Johnson's brother who spoke to her during a recess in court

17  proceedings, and that Johnson testified that she had never been threatened in connection with her

18  testimony.  ECF No. 97 at 299-300.

19       As Respondent accurately points out, Petitioner's claim rests on a juror's thought process

20  and subjective reasoning, which under both federal and California law, may not be relied upon to

21  impugn a verdict.  Fed. R. Evid. 606(b) prohibits the admission of juror testimony to impeach a

22  jury verdict, but contains exceptions for testimony regarding "extraneous prejudicial information"

23  and "outside influence."  Fed. R. Evid. 606(b) provides:

24           During an inquiry into the validity of a verdict or indictment, a juror
             may not testify about any statement made or incident that occurred
25           during the jury's deliberations; the effect of anything on that juror's
             or another juror's vote; or any juror's mental processes concerning
26           the verdict or indictment. The court may not receive a juror's
             affidavit or evidence of a juror's statement on these matters.

27

28

                                        14

(2) Exceptions. A juror may testify about whether:

    (A) extraneous prejudicial information was improperly brought to the jury's attention;

    (B) an outside influence was improperly brought to bear on any juror; or

    (C) a mistake was made in entering the verdict on the verdict form.

*See also* Cal. Evid. Code § 1150(a) ("No evidence is admissible to show the effect of . . . [any] statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined"). Anderson-Locklear's declaration pertains to her deliberative process—she states that her belief that Petitioner was behind the purported threat to Johnson provided "another reason justifying a death verdict." ECF No. 33, Ex. 10. As such, her statements cannot be considered by reviewing courts. *See People v. Danks*, 32 Cal. 4th 269, 302 (2004) (court cannot consider reasons juror voted for death penalty); *Sassounian*, 230 F.3d at 1108-09 (9th Cir. 2000), *citing United States v. Bagnariol*, 665 F.2d 877, 884-85 (9th Cir. 1981) ("[jurors] may not be questioned about the deliberative process or subjective effects of extraneous information, nor can such information be considered by the trial or appellate courts").

    Petitioner counters that while evidence of a juror's thought process is generally inadmissible, Anderson-Locklear's statements fall within the exception for testimony regarding extraneous prejudicial information. ECF No. 249 at 116. Petitioner is mistaken. Anderson-Locklear's statements pertain to occurrences in the courtroom and therefore do not relate to extraneous prejudicial information. *See Raley v. Ylst*, 470 F.3d 792, 803 (9th Cir. 2006) ("what happened (or did not happen) in the courtroom was a part of the trial, not extrinsic to it").

    Petitioner fails to demonstrate that the California Supreme Court's rejection of this subclaim was contrary to, or an unreasonable application of clearly established federal law. Accordingly, summary judgment on subclaim (e) is granted.

### f) Racial Animus

    Petitioner alleges that race played a constitutionally impermissible role in the jury's

15

United States District Court
Northern District of California

1  penalty-phase decision-making.  In support of this subclaim, Petitioner submits numerous juror

2  declarations, discussed below.  The California Supreme Court rejected this claim on the merits in a

3  summary denial.  Respondent contends that the rejection of this subclaim was reasonable.

4      As previously noted, the Constitution guarantees a criminal defendant the right to a fair

5  trial by a panel of impartial, indifferent jurors.  *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  "A

6  touchstone of a fair trial is an impartial trier of fact—'a jury capable and willing to decide the case

7  solely on the evidence before it.'"  *United States v. Vilar*, 586 F.3d 76, 84 (1st Cir. 2009) (quoting

8  *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)).

9      The Court shall address the various declarations offered by Petitioner in turn.

10      **1)  Juror Hendrix's Reluctance to Impose Death Penalty**

11      Petitioner asserts that Harvey Hendrix, the sole African American juror, agreed to sentence

12  Petitioner to death only after the other jurors agreed to sentence McDonald to death as well.  In

13  support of this allegation, Petitioner offers Hendrix's declaration, which states that in Hendrix's

14  view, Petitioner should have received a lesser sentence than McDonald, but in order to "gain a

15  consensus for a death verdict on [Petitioner], [the jurors] . . . agreed to give McDonald a [death]

16  sentence."  ECF No. 33, Ex. 8.  The declaration of juror Corneal confirms that "to convince

17  [Hendrix] to change his vote to death, the rest of the jurors had to also agree to give McDonald

18  death."  ECF No. 33, Ex. 7; *see also* ECF No. 33, Ex. 10 (declaration of juror Anderson-

19  Locklear") ("the black juror was the sole hold-out on death").

20      The averments in the declarations of jurors Hendrix, Corneal and Anderson-Locklear

21  regarding Hendrix's initial reluctance to impose the death penalty on Petitioner unless McDonald

22  was also sentenced to death provide evidence of the jurors' disagreement regarding the relative

23  culpability of the defendants.  They do not reveal racial animus, as alleged by Petitioner.  In any

24  event, consideration of these statements is precluded by Fed. R. Evid. 606(b)(1), which prohibits

25  the receipt of affidavits regarding jurors' mental processes concerning the verdict.

26      **2)  Biased Comments During Breaks**

27      Petitioner asserts that jurors made racially biased comments during their breaks.  In

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

United States District Court
Northern District of California

1    support of this allegation, he submits Juror Hendrix's declaration, which states that Hendrix

2    overheard his fellow jurors' comments during breaks and was offended by their biased nature.

3    ECF No. 33, Ex. 8.  Alternate juror Rudolph Wilson's declaration states that some comments

4    made by jurors during breaks had "decidedly racial overtones, particularly in relation to the

5    discomfort many of them voiced about being in Oakland for trial."  ECF No. 33, Ex. 9.  Wilson

6    was "troubled that many of the jurors could not relate to the backgrounds of [Petitioner] and

7    Robinson, the African American defendants."  *Id.*

8         The declarations of juror Hendrix and alternate juror Wilson recall vague comments made

9    by fellow jurors during breaks, but do not disclose the actual content of the statements.   In *Fields*

10   *v. Woodford*, 315 F.3d 1062, 1063 (9th Cir. 2002), the Ninth Circuit found Fields' claim alleging

11   that jurors were racially biased to lack substantial evidence because the claim was based on vague

12   and speculative declarations that did "not show that any racist statements were made."

13   Petitioner's allegations similarly fail to set forth substantial evidence of racist statements.

14        Furthermore, as Respondent points out, to the extent that some jurors may have expressed

15   discomfort about being in Oakland, the California Supreme Court may have reasonably concluded

16   that such comments could have been made for any number of reasons, and did not evince bias

17   against Petitioner.  ECF No. 213 at 94.

18        **3)  Juror Stanley Wyke's Statements to Defense Investigator**

19        Petitioner asserts that juror Stanley Wyke, stated in an interview with defense investigator

20   Garcia that the articulation of Petitioner's African American counsel, Thomas Broome, negatively

21   affected the presentation of Petitioner's case.  ECF No. 33, Ex. 6 (Declaration of Paz Garcia).

22   Garcia's declaration states:

23              As for Mr. Broome, Juror Wyke found that his articulation
            negatively affected his presentation of the case, stating: 'Every time
24          he opened his mouth he irritated me with his ghetto talk, his
            pronunciation of po-lice and fo-teen.  I would recommend elocution
25          lessons.  His pronunciation got in the way.  I think it made him
            sound ignorant.  The pause broke the train of thought."  Wyke added
26          that "if [Broome's] pronunciation had been different it would have
            helped his client.'"

27

28
     Case No. 00-CV-01228-LHK
     ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

1    ECF No. 33, Ex. 6.

2         A "habeas court must determine what arguments or theories supported or . . . could have

3    supported, the state court's decision." *See Richter*, 562 U.S. at 786.  Here, the California Supreme

4    Court could have reasonably denied Petitioner's claim on the grounds that Paz's declaration was

5    inadmissible under Cal. Evid. Code § 1150(a) ("No evidence is admissible to show the effect of

6    . . . [any] statement, conduct, condition, or event upon a juror either in influencing him to assent to

7    or dissent from the verdict or concerning the mental processes by which it was determined").

8    Petitioner fails to establish that the application of state evidentiary rules such as Cal. Evid. Code

9    § 1150(a) to exclude evidence of a juror's racial bias runs afoul of United States Supreme Court

10   precedent.  In fact, case law indicates the contrary.  *See, e.g.*, *Williams v. Price*, 343 F.3d 223, 238

11   (3d Cir. 2003) (no "Supreme Court decision clearly establishes that it is unconstitutional for a state

12   to apply a 'no impeachment' rule that does not contain an exception for juror testimony about

13   racial bias on the part of jurors").

14        In the alternative, as Respondent points out, the California Supreme Court could

15   reasonably have interpreted Wyke's statements to express displeasure with defense counsel's

16   articulation, but not to show any impairment of Wyke's ability to weigh evidence and follow jury

17   instructions on account of racial bias.  *Richter*, 562 U.S. at 786 (state court's determination that a

18   claim lacks merit is not unreasonable so long as fairminded jurists could disagree on its

19   correctness).

20        In any event, to the extent that Wyke's statements, as recounted in Garcia's declaration,

21   pertain to Wyke's thought process in reaching a verdict, they may not be considered by this Court.

22   *See* Fed. R. Evid. 606(b); *see also United States v. Benally*, 546 F.3d 1230, 1236-68 (10th Cir.

23   2008) (district court abused discretion by admitting evidence of racial comments in jury room

24   under Fed. R. Evid. 606(b)'s exceptions); *Shilcutt v. Guignon*, 827 F.2d 1155, 1159 (7th Cir.

25   1987) (concluding that Fed. R. Evid. 606(b) was intended to prohibit evidence of racial slurs

26   during deliberations because courts cannot expunge from deliberations subjective opinions of

27   jurors); *but see United States v. Henley*, 238 F.3d 1111, 1119-20 (9th Cir. 2001) (implying in

28
Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

United States District Court
Northern District of California

1    dictum that evidence of racial discrimination might be exempt from Fed. R. Evid. 606(b)'s

2    restrictions if a juror's testimony concerns "any mental bias in matters unrelated to the specific

3    issues that the juror was called upon to decide") (quoting *Rushen v. Spain*, 464 U.S. 114, 121 n.5

4    (1983)).

5        Moreover, Wyke's comments, set forth as hearsay statements in investigator Garcia's

6    declaration executed eleven years after Petitioner's conviction, do not provide sufficient evidence

7    of juror misconduct.  *See Murtishaw v. Woodford*, 255 F.3d 926, 958-59 (9th Cir. 2001) (affidavit

8    obtained more than ten years after trial and based largely on hearsay is not sufficient evidence to

9    grant habeas relief based on *Brady* violation); *see also Herrera v. Collins*, 506 U.S. 390, 417-18

10   (1993) (holding that affidavits containing hearsay statements and obtained eight years after habeas

11   petitioner's trial were not sufficient to grant the petition).

12       Petitioner fails to demonstrate that the California Supreme Court's denial of this subclaim

13   was contrary to or an unreasonable application of federal law.  Summary judgment on subclaim (f)

14   is granted.

15       **g)  Juror Anderson-Locklear's Statement in Questionnaire**

16       Petitioner alleges that during voir dire, juror Anderson-Locklear provided a false

17   response in her questionnaire when she stated that she did not know any of the prospective jurors

18   in the case.  In support of this subclaim, Petitioner submits Anderson-Locklear's declaration, in

19   which Anderson-Locklear states: "During the trial, I realized that one of the jurors, Robert

20   Corneal, was a former co-worker of my mother, and another male juror had worked with my

21   father.  This did not affect my deliberations in the case."  ECF No. 33, Ex. 10.  Petitioner asserts

22   that Anderson-Locklear's failure to reveal her connection to the other jurors raises questions about

23   her impartiality.  Respondent contends that the California Supreme Court's summary denial of this

24   subclaim was reasonable.

25       As previously noted, the "Sixth Amendment guarantees criminal defendants a verdict by

26   impartial, indifferent jurors."  *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998).  If a defendant

27   can show that a juror "failed to answer honestly a material question on voir dire, and then further

28

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

United States District Court
Northern District of California

1   show that a correct response would have provided a valid basis for a challenge for cause," then a

2   defendant is entitled to a new trial. *Henley*, 238 F.3d at 1121 (quoting *McDonough Power*

3   *Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)). The presence of a biased juror is

4   structural error. *Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir. 2008). "The determination of

5   whether a juror is actually biased is a question of fact, and thus accorded deference under 28

6   U.S.C. § 2254." *Id.*[2]

7          Here, Petitioner fails to show that a correct response on Anderson-Locklear's questionnaire

8   would have provided a valid basis for a challenge for cause. "A prospective juror must be

9   removed for cause if his views would prevent or substantially impair the performance of his duties

10  as a juror." *Fields*, 309 F.3d at 1103. Petitioner has failed to establish that the fact that juror

11  Robert Corneal was a former co-worker of Anderson-Locklear's mother, and that another male

12  juror had worked with Anderson-Locklear's father, demonstrated bias warranting a challenge for

13  cause. Moreover, Petitioner does not claim that Anderson-Locklear's erroneous answer on her

14  questionnaire served to conceal any agenda she may have had. *See*, *e.g.*, *Dyer*, 151 F.3d at 979-83

15  (juror lied in order to preserve her status as a juror and to secure the right to pass on defendant's

16  sentence). Nor does Petitioner claim that Anderson-Locklear deliberately lied when she

17  completed her juror questionnaire. *See Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007)

18  ("honest yet mistaken answer to voir dire question rarely amounts to a constitutional violation").

19         Petitioner fails to demonstrate that the California Supreme Court's denial of subclaim (g)

20  was contrary to or an unreasonable application of federal law, or was based on an unreasonable

21  determination of the facts. Summary judgment on this subclaim is granted.

22         **h) Juror Confusion**

23         Petitioner alleges that jurors failed to consider relevant mitigating evidence because they

24  were confused by the penalty phase trial jury instructions. In support of this subclaim, Petitioner

25

26  [2] The Ninth Circuit has held that in "extraordinary cases, courts may presume bias based on the
    circumstances." *Dyer*, 151 F.3d at 981. The United States Supreme Court, however, has never

27  explicitly adopted or rejected the doctrine of implied bias. *Fields v. Woodford*, 309 F.3d 1095,
    1104 (9th Cir. 2002).

28
    Case No. 00-CV-01228-LHK
    ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

1  submits the declaration of defense investigator Garcia, who noted that "juror [Grace] Wilson

2  stated that she was leaning towards voting for life, but that she and the rest of the jurors had to

3  vote for death because the 'mitigating factors did not outweigh the aggravating factors.'  She

4  stated: 'We had no choice, we followed our instructions.'"  ECF No. 33, Ex. 6.  Petitioner alleges

5  that juror Hendrix held the incorrect belief that he could not consider Petitioner's background in

6  mitigation.  Petitioner submits Hendrix's declaration, which states: "I gave no consideration

7  whatsoever to the life history presentations in reaching verdicts in the penalty phase.  The only

8  relevant evidence for me was each man's level of involvement and responsibility for the crime."

9  ECF No. 33, Ex. 8.

10          Respondent correctly contends that Petitioner's allegations are based on evidence

11  pertaining to the jurors' thought processes, which is inadmissible under federal and state law.  Fed.

12  R. Evid. 606(b); Cal. Evid. Code § 1150.

13          Furthermore, to the extent that subclaim (h) alleges that the jurors erroneously believed

14  that their determination of the appropriate penalty for Petitioner was to be based solely on whether

15  the aggravating circumstances outweighed the mitigating circumstances, and that they did not

16  have discretion to determine whether death was the appropriate penalty in light of the evidence,

17  Petitioner's claim is without merit under *Boyde v. California,* 494 U.S. 370, 376-77 (1990).  In

18  *Boyde*, the United States Supreme Court upheld CALJIC No. 8.84.2, which stated: "If you

19  conclude that the aggravating circumstances outweigh the mitigating circumstances, you shall

20  impose a sentence of death.  However, if you determine that the mitigating circumstances

21  outweigh the aggravating circumstances, you shall impose a sentence of confinement in the state

22  prison for life without the possibility of parole."  *Id.*  The United States Supreme Court rejected

23  the argument that the mandatory "shall" language in CALJIC No. 8.84.2 prevented the jury from

24  making an individual assessment of the appropriateness of the death penalty.  *Id.*  The Court

25  explained:

26          Petitioner suggests that the jury must have the freedom to decline to
            impose the death penalty even if the jury decided that the

27          aggravating circumstances "outweigh" the mitigating circumstances.

28

21

United States District Court
Northern District of California

> But there is no such constitutional requirement of unfettered sentencing discretion in the jury, and States are free to structure and shape consideration of mitigating evidence "in an effort to achieve a more rational and equitable administration of the death penalty." Petitioner's claim that the "shall impose" language of CALJIC 8.84.2 unconstitutionally prevents "individualized assessment" is without merit.

*Id.* at 377.

Under *Boyde*, Petitioner's constitutional rights were not violated even if the jurors indeed understood the jury instructions to indicate that the determination of the appropriate penalty for Petitioner was to be based solely on whether the aggravating circumstances outweighed the mitigating circumstances. Contrary to Petitioner's allegations, "there is no . . . constitutional requirement of unfettered sentencing discretion in the jury." *Id.*

Petitioner fails to demonstrate that the California Supreme Court's denial of subclaim (h) was contrary to or an unreasonable application of federal law, or was based on an unreasonable determination of the facts. Summary judgment on this subclaim is granted.

### i)   Petitioner's Failure to Testify at Trial

Petitioner alleges that some jurors penalized him for not testifying during the penalty phase of trial. Petitioner relies on juror Corneal's declaration, in which Corneal states: "I felt it would have helped Mr. Ervin's case for life without parole if Mr. Ervin had testified at the penalty phase of trial." ECF No. 33, Ex. 7. Petitioner also relies on the declaration of investigator Paz, which states: "Some of the jurors noted that it would have been good to hear from Mr. Ervin himself."

The statements of juror Corneal and investigator Paz provide evidence of the jurors' thought processes and therefore may not be considered by reviewing courts. Fed. R. Evid. 606(b); Cal. Evid. Code § 1150; *see also Raley*, 470 F.3d at 803 (court may not inquire into jurors' deliberations regarding petitioner's failure to testify); *Belmontes*, 414 F.3d at 1124 (courts may not inquire into intrinsic jury processes).

Petitioner fails to demonstrate that the California Supreme Court's denial of subclaim (i) was contrary to or an unreasonable application of federal law. Summary judgment on this subclaim is granted.

Case No. 00-CV-01228-LHK
ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON CLAIM 25

1

**j. Cumulative Error**

Petitioner alleges that the cumulative effect of the various instances of juror misconduct rendered his guilt and penalty phase determinations unreliable.  Respondent counters that "there is no misconduct to accumulate."  ECF No. 213 at 97.

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned.  *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003).  Where there is no single existing constitutional error, nothing can accumulate to the level of a constitutional violation.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).  Here, Petitioner has failed to establish any single instance of juror misconduct.  Accordingly, there are no instances of juror misconduct to aggregate.  Petitioner's allegation of cumulative error lacks merit.  Summary judgment on subclaim (j) is granted.

As a final matter, because the California Supreme Court's denial of claim 25 was not contrary to or an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts, Petitioner's request for an evidentiary hearing on claim 25 is unavailing.  *See Sully*, 725 F.3d at 1075 ("[A]n evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief."). Petitioner's request for an evidentiary hearing on claim 25 is therefore DENIED.

## IV.   CONCLUSION

For the foregoing reasons, Respondent's motion for summary judgment as to claim 25 is GRANTED.  Petitioner's request for an evidentiary hearing on claim 25 is DENIED.

**IT IS SO ORDERED.**

Dated:  September 8, 2016.

_Lucy H. Koh_
LUCY H. KOH
United States District Judge